# Exhibit 36

Marc R. Ascolese, <mascolese@sidley.com> (Bar No. 251397)
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, California 94104
Telephone:    (415) 772-1200
Facsimile:    (415) 772-7400

*Counsel for Plaintiffs and Counterclaim-Defendants*
*eBay Inc. and Microsoft Corporation*

NOTE:  Additional counsel and Plaintiff listed on signature page

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| eBay Inc. and Microsoft Corporation, | No. 4:10-cv-4947-CW (filed Nov. 2, 2010) |
| | No. 4:10-cv-5106-CW (filed Nov. 10, 2010) |
| *Plaintiffs and Counterclaim-Defendants,* | No. 4:10-cv-5108-CW (filed Nov. 10, 2010) |
| | No. 4:11-cv-0502-CW (filed Feb. 2, 2011) |
| vs. | |
| | **PLAINTIFFS' MOTION FOR SUMMARY** |
| PartsRiver, Inc. and Kelora Systems, LLC, | **JUDGMENT OF INVALIDITY AND/OR** |
| | **NO LIABILITY BEFORE NOV. 2, 2010** |
| *Defendants and Counterclaim-Plaintiff.* | |
| | Hr'g Date:    Thursday, May 5, 2011 |
| Shopzilla, Inc., | Hr'g Time:    2:00 p.m. |
| | Place:    Courtroom 2, 4th Floor |
| *Plaintiff,* | |
| vs. | |
| Kelora Systems, LLC, | |
| *Defendant.* | |

**NOTICE**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:  Please take notice that Plaintiffs eBay Inc.; Microsoft Corporation; and Shopzilla, Inc. (collectively "Plaintiffs") hereby move for summary judgment that claims 1, 2, and 9 of the patent-in-suit (U.S. Patent No. 6,275,821) are invalid and/or cannot give rise to liability before November 2, 2010.  Judge Wilken is presently scheduled to hear this motion at 2:00 p.m. on May 5, 2011, in Courtroom 2 on the 4th Floor of the U.S. District Court at 1301 Clay Street, Oakland, California 94612.

This motion is based on (i) the Memorandum of Points and Authorities below and (ii) the attached Exhibits 1 to 33, all of which are being submitted today, March 31, 2011.

**RELIEF REQUESTED**

By this motion, Plaintiffs seek a summary judgment that this Court's judgment in Case No. 09-811 is binding against Kelora in the present actions, and either:

1. reexamined claims 1, 2, and 9 of the '821 patent *are* identical in scope to original claims 1 and 2, and thus they are invalid for the reasons previously found by this Court in Case No. 09-811, *or*

2. reexamined claims 1, 2, and 9 are *not* identical in scope to any original claim, and:

   a. under 35 U.S.C. § 252, there can be no liability for those claims before November 2, 2010, *and*

   b. under 35 U.S.C. § 305, those claims are invalid because they were broadened during reexamination.

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   ISSUES TO BE DECIDED ................................................................................. 3

III.  UNDISPUTED FACTS ....................................................................................... 3

    A.   The patent-in-suit:  U.S. Patent No. 6,275,821 to Danish et al ..................... 3

    B.   Screenshots from the first program to embody the '821 patent: the "AMP Navigator" .................................................................................................... 4

    C.   The first embodiment described in the '821 patent is a "local" embodiment, similar to the "AMP Navigator," where all steps are performed on a *stand-alone* computer ................................................................................................ 7

    D.   The second embodiment described in the '821 patent is an Internet embodiment with a "server" computer that performs some steps, and a "client" computer that performs other steps including the "accepting" step ............... 9

    E.   Plaintiffs' motion in Case No. 09-811 for summary judgment of non-infringement and invalidity ....................................................................... 10

    F.   Amendments made to claims 1, 2, and 9 of the '821 patent during reexamination ............................................................................................. 10

IV.   ARGUMENT ..................................................................................................... 13

    A.   This Court's summary judgment against PartsRiver is also binding against Kelora ......................................................................................................... 13

    B.   If reexamined claims 1, 2, and 9 are identical in scope to original claims 1 and 2, then they are invalid for the reasons previously found by this Court ..... 15

    C.   If reexamined claims 1, 2, and 9 are not identical in scope to any original claim, then under 35 U.S.C. § 252 there cannot be any liability for those claims before November 2, 2010 ................................................................... 15

        1.   Application of 35 U.S.C. § 252, ¶ 1 is a question of law ............................... 16

        2.   The applicants narrowed claims 1, 2, and 9 during reexamination to overcome rejections based on the Granacki prior-art reference ..................... 17

    D.   If claims 1, 2, and 9 were broadened in any way during reexamination, then they are invalid under 35 U.S.C. § 305 ......................................................... 19

        1.   The law on divided infringement ................................................................. 19

        2.   Original claims 1 and 2 required step (h) to be performed by a user on the client computer, not by the server ......................................................... 20

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Nos. 10-4947-CW, 10-5106-CW, 10-5108-CW, 11-502-CW

3.    Reexamined claims 1, 2, and 9 do not have the same divided infringement problem as original claims 1 and 2 .......................................... 23

4.    Reexamined claims 1, 2, and 9 claims are broader, and therefore invalid ......................................................................................... 24

V.    CONCLUSION ........................................................................................... 25

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Nos. 10-4947-CW, 10-5106-CW, 10-5108-CW, 11-502-CW

# TABLE OF AUTHORITIES

## Cases

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  629 F.3d 1311 (Fed. Cir. 2010)..................................................................... 20

*Anderson v. Int'l Eng'g & Mfg., Inc.*,
  160 F.3d 1345 (Fed. Cir. 1998)..................................................................... 24

*Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*,
  552 F. Supp. 2d 620 (N.D. Tex. 2008),
  *appeal dismissed*, No. 2009-1051, 2010 WL 2383807 (Fed. Cir. June 11, 2010)................ 17

*BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*,
  1 F.3d 1214 (Fed. Cir. 1993)........................................................................ 17

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*,
  402 U.S. 313 (1971)............................................................................. 1, 15

*Bloom Eng'g Co. v. N. Am. Mfg. Co.*,
  129 F.3d 1247 (Fed. Cir. 1997)............................................................ 1, 16, 18

*BMC Res., Inc. v. Paymentech, L.P.*,
  498 F.3d 1373 (Fed. Cir. 2007).............................................................. 19, 23

*Boston Scientific Corp. v. Johnson & Johnson*,
  No. 02-790, 2006 WL 6221554 (N.D. Cal. Sept. 19, 2006) (Illston, J.)............................ 22

*Dippin' Dots, Inc. v. Mosey*,
  476 F.3d 1337 (Fed. Cir. 2007)..................................................................... 15

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  535 U.S. 722 (2002)................................................................................. 18

*Fuji Photo Film Co. v. ITC*,
  386 F.3d 1095 (Fed. Cir. 2004)..................................................................... 22

*In re Freeman*,
  30 F.3d 1459 (Fed. Cir. 1994).............................................................. 3, 15, 24

*Int'l Nutrition Co. v. Horphag Research, Ltd.*,
  220 F.3d 1325 (Fed. Cir. 2000)..................................................................... 14

*Laitram Corp. v. NEC Corp.*,
  163 F.3d 1342 (Fed. Cir. 1998) ("*Laitram IV*").......................................... 2, 17, 18

*Mendenhall v. Barber-Greene Co.*,
  26 F.3d 1573 (Fed. Cir. 1994)................................................................. 1, 15

*Muniauction, Inc. v. Thomson Corp.*,
  532 F.3d 1318 (Fed. Cir. 2008),
  *cert. denied*, 129 S. Ct. 1585 (2009) ..................................................... 2, 19

*PA Advisors, LLC v. Google, Inc.*,
  706 F. Supp. 2d 739 (E.D. Tex. 2010) (Rader, C.J.) ........................................... 19

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (en banc) ......................................................... 20

*Quantum Corp. v. Rodime, PLC*,
  65 F.3d 1577 (Fed. Cir. 1995) .............................................................. 1, 19, 24

*Seattle Box Co. v. Indus. Crating & Packing, Inc.*,
  731 F.2d 818 (Fed. Cir. 1984) ........................................................................ 17

*Sharper Image Corp. v. Neotec, Inc.*,
  373 F. Supp. 2d 993 (N.D. Cal. 2005) (Wilken, J.),
  *appeal dismissed*, 171 Fed. Appx. 844 (Fed. Cir. Mar. 14, 2006) ................... 1, 24

*South Corp. v. United States*,
  690 F.2d 1368 (Fed. Cir. 1982) (en banc) ......................................................... 14

*Tennant Co. v. Hako Minuteman, Inc.*,
  878 F.2d 1413 (Fed. Cir. 1989) ........................................................................ 15

*Thermalloy, Inc., v. Aavid Eng'g, Inc.*,
  121 F.3d 691 (Fed. Cir. 1997) ........................................................................ 24

*Uniloc USA, Inc. v. Microsoft Corp.*,
  No. 2010-1035, ___ F.3d ____, 2011 WL 9738 (Fed. Cir. Jan. 4, 2011) ............. 23

*V-Formation, Inc. v. Benetton Group SpA*,
  401 F.3d 1307 (Fed. Cir. 2005) ....................................................................... 22

*Westvaco Corp. v. Int'l Paper Co.*,
  991 F.2d 735 (Fed. Cir. 1993) .................................................................... 16, 17

*Westwood Chem., Inc. v. United States*,
  525 F.2d 1367 (Ct. Cl. 1975) ..................................................................... 14, 15

## Statutes

35 U.S.C. § 102(b) ............................................................................. 3, 10, 14, 15

35 U.S.C. § 103 ................................................................................................. 15

35 U.S.C. § 112, ¶ 4 ........................................................................................... 17

35 U.S.C. § 252 ......................................................................................... passim

35 U.S.C. § 261 ................................................................................................. 13

35 U.S.C. § 305 ......................................................................................... passim

35 U.S.C. § 307(b) ..................................................................................... 1, 2, 16

American Inventors Protection Act of 1999,
     Pub. L. No. 106-113, 113 Stat. 1501A-552 ........................................................................ 16

## **Rules**

Fed. R. Civ. P. 56(a) ........................................................................................................ 13


## **Other Authorities**

*Restatement (Second) of Judgments* § 43(1) (1982) ........................................................ 14

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Nos. 10-4947-CW, 10-5106-CW, 10-5108-CW, 11-502-CW

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The purpose of this motion for summary judgment is to force Kelora and PartsRiver to stop flip-flopping about whether the amendments made to the '821 patent during reexamination changed the scope of the claims: They must concede either (i) the claims of the '821 patent amended during reexamination *are* identical in scope to the original claims, or (ii) the claims of the '821 patent amended during reexamination are *not* identical in scope to the original claims.  It must be either one or the other.

Regardless of which position they take, the consequences will be significant:  If the amended claims *are* identical in scope to the original claims, then the amended claims are invalid for the reasons already found by this Court in Case No. 09-811, *see* Ex. 12, and final judgment should be entered in favor of Plaintiffs in the present actions.  *See, e.g.*, *Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1577 (Fed. Cir. 1994) (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313 (1971)).

On the other hand, if the amended claims are *not* identical in scope to the original claims, then at a minimum there can be no liability for those claims before the reexamination certificate issued on November 2, 2010 — thus significantly reducing the potential damages and scope of discovery in these actions.  *See* 35 U.S.C. §§ 252, 307(b); *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1249–51 (Fed. Cir. 1997).

But that is not all.  To the extent the amended claims were *broadened* in any way during reexamination, then they are invalid and final judgment should be entered in favor of Plaintiffs in the present actions.  *See* 35 U.S.C. § 305; *Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1582–84 (Fed. Cir. 1995); *Sharper Image Corp. v. Neotec, Inc.*, 373 F. Supp. 2d 993, 996–98 (N.D. Cal. 2005) (Wilken, J.), *appeal dismissed*, 171 Fed. Appx. 844 (Fed. Cir. Mar. 14, 2006).

PartsRiver and Kelora have taken inconsistent positions on the question of whether the amended claims are identical in scope to the original claims.  PartsRiver originally argued to the Patent Office that "although the text of claim 1 has been altered by amendment, the claim scope is

1    *legally identical* to that of originally issued claim 1." Ex. 28 at 7 (May 20, 2010).[1]  More recently,

2    however, Kelora has argued that the "scope of the amended claims is *different* from the original

3    claims." Ex. 31 at 12 (Jan. 21, 2011); *see also id.* at 8 ("substantively different"); Ex. 33 at 27:24–

4    28:1 (Mar. 17, 2011) ("they're different").

5         It is Plaintiffs position that the amended claims are *narrower* than the original claims in some

6    respects, meaning there is no liability for those claims before November 2, 2010, *see* 35 U.S.C.

7    §§ 252, 307(b), but at the same time the reexamined claims are *broader* than the original claims in

8    other respects, and thus a final judgment of invalidity should be entered in favor of Plaintiffs, *see* 35

9    U.S.C. § 305.

10         In particular, the reexamined claims were *narrowed* by amendment during reexamination to

11    overcome repeated rejections by the Patent Office in light of the Granacki prior-art reference. *See*

12    Exs. 17, 19, 27 (rejections), 28 (amendment).  Indeed, the only reason the Patent Office allowed the

13    reexamination certificate to issue is because the reexamined claims were narrowed to overcome the

14    Granacki prior-art reference. *See* Ex. 29.  According to the Federal Circuit, "it is difficult to

15    conceive of many situations in which the scope of a rejected claim that became allowable when

16    amended is not *substantively changed* by the amendment." *Laitram Corp. v. NEC Corp.*, 163 F.3d

17    1342, 1348 (Fed. Cir. 1998) ("*Laitram IV*") (applying §§ 252, 307(b)).

18         At the same time, however, the reexamined claims were *broadened* to try to avoid the non-

19    infringement argument that Plaintiffs raised in Case No. 09-811.  In Case No. 09-811, Plaintiffs

20    argued that their websites could not infringe original claims 1 and 2 because at least the "displaying"

21    and "accepting" steps were performed on the *user*'s computers, not Plaintiffs' servers, thus creating

22    a "divided infringement" problem. *See* Ex. 9 at 1:11–:15, 11:10, 13:4–20:21 (citing *Muniauction,*

23    *Inc. v. Thomson Corp.*, 532 F.3d 1318, 1328–30 (Fed. Cir. 2008) (finding non-infringement as a

24    matter of law), *cert. denied*, 129 S. Ct. 1585 (2009)).  This Court agreed with Plaintiffs that

25    "[t]here's clearly interaction from the user," *see* Ex. 11 at 4:4; *see also id.* at 8:20–:23, but ultimately

26    this Court did not resolve Plaintiffs' motion for non-infringement because this Court found the

27

28    [1] Unless stated otherwise, all emphasis in quotes throughout this brief has been added.

claims invalid instead, *see* Ex. 12 at 13:15–:21.  PartsRiver apparently was concerned by the divided

infringement problems identified by Plaintiffs, so during reexamination, PartsRiver amended claim

1, and added claim 9, to change the "accepting" step from an action performed on the ***user***'s

computer to an action performed by the ***server*** computer.  *See* Ex. 28 at 4, 5–6.  As a result of these

amendments, claims 1, 2, and 9 no longer include an "accepting" step performed on the user's

computer, but that also means that claims 1, 2, and 9 were ***broadened*** with respect to the "accepting"

step and thus are invalid:  "A claim that is broader in ***any*** respect is considered to be broader than the

original claims even though it may be narrower in other respects."  *In re Freeman*, 30 F.3d 1459,

1464 (Fed. Cir. 1994) (internal quotation marks omitted) (holding that language added during

reexamination impermissibly broadened the claims, making them invalid).

## II.  ISSUES TO BE DECIDED

This motion presents the following issues for the Court to decide:

- Is this Court's summary judgment in Case No. 09-811 that claims 1 and 2 of the '821 patent are invalid under 35 U.S.C. § 102(b) due to the on-sale bar binding against Kelora in the present actions?  (Yes.)

- If reexamined claims 1, 2, and 9 ***are*** identical in scope to original claims 1 and 2, are they invalid for the reasons previously found by this Court?  (Yes.)

- If reexamined claims 1, 2, and 9 are ***not*** identical in scope to any original claim, then under 35 U.S.C. § 252 can there be any liability for those claims before November 2, 2010?  (No.)

- If reexamined claims 1, 2, and 9 are ***not*** identical in scope to any original claim, were those claims broadened in any way during reexamination, rendering them invalid under 35 U.S.C. § 305?  (Yes.)

## III.  UNDISPUTED FACTS

### A.  The patent-in-suit:  U.S. Patent No. 6,275,821 to Danish et al.

The patent-in-suit is U.S. Patent No. 6,275,821 (the "'821 patent"), which issued on August

14, 2001.  *See* Ex 1.  It is the third in a series of patents that all claim priority from an application

filed on October 14, 1994.  *See* Exs. 3, 4.  The title of the '821 patent is "Method and System for

Executing a Guided Parametric Search."  *See* Ex. 1.  According to the '821 patent, the prior-art

methods of searching had various deficiencies, such as failing "to guarantee a user that at least one

item will be identified" by the search. *Id.* at 3:31–:32. The solution claimed by the '821 patent is a "guided search," sometimes called a "parametric search" or a "faceted search."

**B.    Screenshots from the first program to embody the '821 patent: the "AMP Navigator"**

This Court has already determined that the "AMP Navigator" program was the first reduction to practice of the "guided search" method claimed by original claim 1 in the '821 patent. *See* Ex. 9 at 5:22–7:2; Ex. 12 at 11:9–:21. Thus the following screenshots from the "AMP Navigator" program illustrate the method of original claim 1. The screenshots come from Exhibit E to Plaintiffs' previous motion for summary judgment. *See* Ex. 9 at 3:12–5:21; Ex. 12 at 13:4–:9.

In the first screenshot, a user interested in connectors with a "square flanged receptacle" clicks on the button for "Sq. Flanged Receptacle":



*See* Ex. 10 at 4. If the user changes his mind, he can reject (or "undo") the selection of "square flanged receptacles" by clicking on the "Sq. Flanged Receptacle" button a second time.

Once the user is satisfied with the selection(s) he has made, he can accept his selection(s), and initiate a search based on his selection(s), by clicking on the "Search" button:

1

2

3

4

5

6

7

8

9

10

11



5

12 *See* Ex. 10 at 5.

13    The third screenshot shows the results of the search:

14

15

16

17



6

18

19

20

21

22

23

24

25 *See* Ex. 10 at 6.  As shown above in the third screenshot, there are 65 part numbers that match the

26 parameter "Sq. Flanged Receptacle."  The third screenshot also shows that the program greys-out

27 parameters that can no longer be selected, such as "Solid Feedthrough" and "with Tetraseal."

28

1    The program allows for iterative searching using the technique.  In the fourth screenshot, the

2    user further refines the search criteria by clicking on the button for "Metal":



14    *See* Ex. 10 at 7.

15    In the fifth screenshot, the user accepts his selection of "Metal" and initiates a search for a

16    "square flanged receptacle" ***and*** a "metal" shell type by clicking on the "Search" button:



*See* Ex. 10 at 8.  The sixth screenshot shows the results of the second search:

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Nos. 10-4947-CW, 10-5106-CW, 10-5108-CW, 11-502-CW

9

*See* Ex. 10 at 9.  As shown above in the sixth screenshot, there are now only 20 part numbers that match **both** parameters "Sq. Flanged Receptacle" and "Metal."  Additional parameters that can no longer be selected, such as "Size 16 VDE (Series 1)," are greyed-out.

 In this manner, Danish's program provides a "guided parametric search" to the user. Danish's program does not use a keyword search, nor does it use a hierarchical search.  Instead, Danish's program allows a user to select parameters, in any order, in a step-by-step fashion to find the item that matches all of the user's criteria.

 **C.**  **The first embodiment described in the '821 patent is a "local" embodiment, similar to the "AMP Navigator," where all steps are performed on a *stand-alone* computer**

 The '821 patent describes two embodiments.  *See* Ex. 12 at 2:18–:21.  The first embodiment, called the "local" embodiment, runs on a ***stand-alone*** computer, as opposed to a computer connected to a network such as the Internet.  *See* Ex. 1 at 7:4–:11.  The "local" embodiment described in the '821 patent is almost identical to Danish's "AMP Navigator" program shown above.  *Compare* Ex. 1 at 7:1–9:9 & figs. 7–9 (first embodiment of the '821 patent), *with* Ex. 10 (screenshots from Danish's "AMP Navigator" program).

Figures 7 to 9 of the '821 patent show screenshots from the "local" embodiment described in the patent. *See* Ex. 1. Reprinted below is Figure 8 of the patent, annotated with some of the terms used in the patent and the column and line number in the patent where each term is used:



The idea behind the "local" embodiment was that traditional paper catalogs could be replaced by electronic catalogs distributed on CD-ROM. *See* Ex. 1 at 1:42–:51. The CD-ROM would also contain a program, like that shown in Figure 8 above, that would allow a customer to search the CD-ROM on a **stand-alone** computer (not a computer connected to a network, such as the Internet).

**D.** **The second embodiment described in the '821 patent is an Internet embodiment with a "server" computer that performs some steps, and a "client" computer that performs other steps including the "accepting" step**

The second embodiment described in the '821 patent makes use of the Internet. *See* Ex. 1 at 18:10–19:35 & figs. 25–35. In the local embodiment described above, *all* the steps described in the '821 patent are performed on the local computer; no other computer is involved. In the Internet embodiment described below, by way of contrast, some steps of the method are performed by the website (the "server" computer), while other steps are performed on the user's computer (the "client" computer).

Of critical importance to this motion is that the patent and original claim 1 (before the amendments made during reexamination) require the "accepting" step to be performed on the *user*'s computer (i.e., the "client" computer), even in the Internet embodiment. Below is how the specification describes the Internet embodiment:



Fig. 25

> In an embodiment of the invention in an Internet environment, there is a ***server computer 125*** and a ***client computer 126***. . . .
>
> . . . .
>
> . . . . An example of the feature screen 9 on the Internet is shown in FIGS. 26 through 29. ***The user on the client, makes selections from among the available alternatives 7 generating a selection criteria 14 different from that which was se[n]t to it. The client 126 initiates a search with the modified selection criteria 14. The client 126 sends to the server 125, the ScreenNum 102 value sent to it by the server, and the modified selection criteria 14.*** The server 125 receives the ScreenNum 102 and the selection criteria 14. The server 125 executes the search operation as disclosed hereinabove using the revised selection criteria 14 and generates the feature screen status 127. The server 125 sends the feature screen status 127 that has been updated based on the modified selection criteria 14 to the client 126. The client

126 receives the feature screen status 127 and displays the updated feature screen 9. *This process may iterate similar to the local version to further narrow the subfamily as desired*.

Ex. 1 at 18:10–19:12.

### E. Plaintiffs' motion in Case No. 09-811 for summary judgment of non-infringement and invalidity

In Case No. 09-811, PartsRiver asserted original claims 1 and 2. *See* Ex. 12 at 2:22–3:27. In response, the Plaintiffs in the present actions (who were the defendants in Case No. 09-811) filed a motion for summary judgment of non-infringement and invalidity. *See* Ex. 9. Plaintiffs argued that their websites could not infringe original claims 1 and 2 because at least the "displaying" and "accepting" steps were performed on the ***user***'s computers, not Plaintiffs' servers, thus creating a "divided infringement" problem. *See* Ex. 9 at 1:11–:15, 11:10, 13:4–20:21. Plaintiffs also argued that original claims 1 and 2 were invalid under 35 U.S.C. § 102(b) due to the on-sale bar. *See* Ex. 9 at 5:22–7:14, 20:22–24:24.

With respect to non-infringement, this Court agreed with Plaintiffs that "[t]here's clearly interaction from the user," *see* Ex. 11 at 4:4; *see also id.* at 8:20–:23, but ultimately this Court did not resolve Plaintiffs' motion for non-infringement because this Court found the claims invalid instead, *see* Ex. 12 at 13:15–:21. Judgment was thus entered against PartsRiver. *See* Ex. 13.

### F. Amendments made to claims 1, 2, and 9 of the '821 patent during reexamination

Original claims 1 and 2 were also the subject of a reexamination by the Patent Office. *See generally* Exs. 14–29. A reexamination certificate issued on November 2, 2010, in which claim 1 was amended and new claim 9 was added. *See* Ex. 2.

The reexamination focused on a prior-art reference called Granacki et al., *A Component Library Management System and Browser*, ISI Research Report, ISI/RR-93-386, USC/Information Sciences Institute, April, 1993. *See* Ex. 14. The Patent Office repeatedly rejected original claims 1 and 2 in light of the Granacki prior-art reference. *See* Exs. 17, 19, 27. PartsRiver repeatedly argued that original claims 1 and 2 were not invalid in light of Granacki, *see* Exs. 18, 20, 21, 25, but the Patent Office repeatedly disagreed with PartsRiver's arguments. As a result, PartsRiver ***narrowed***

-10-

claims 1 and 2 to overcome the rejection based on the Granacki prior-art reference. *See* Ex. 28. At the same time, PartsRiver added new claim 9. *See id.* Reexamined claims 1 and 9 are very similar; PartsRiver told the Patent Office that "[t]he amendment of claim 1 . . . adjusts the claim language of claim 1 to correspond to that of allowed claim 9." *See id.* at 7. In response, the Patent Office withdrew its prior-art rejection and allowed claims 1, 2, and 9. *See* Ex. 29.

At the same time, however, PartsRiver **broadened** claims 1, 2, and 9 in certain respects to try to avoid the non-infringement argument that Plaintiffs had raised in Case No. 09-811. As noted above, Plaintiffs had argued in their summary judgment motion that their websites could not infringe original claims 1 and 2 because (among other reasons) the "accepting" step was performed on the ***user***'s computers, not Plaintiffs' servers, thus creating a "divided infringement" problem. *See supra* Part III.E, p. 10 (citing Ex. 9 at 1:11–:15, 11:10, 13:4–20:21). In response, PartsRiver amended claim 1 during reexamination, and added claim 9, to change the "accepting" step from an action performed on the ***user***'s computer to an action performed by the ***server*** computer, *see* Ex. 28 at 4, 5–6, thus removing the "divided infringement" problem with respect to the "accepting" step.[2]

Reprinted below is the text of original claim 1, reexamined claim 1, and reexamined claim 9, with additions to reexamined claims 1 and 9 (as compared to original claim 1) shown by underlining and deletions shown by ~~strikethrough~~. As discussed above, the method of original claim 1 is illustrated by the screenshots from the "AMP Navigator." *See supra* pp. 4–7; *see also* Ex. 10.

| Original Claim 1 | Reexamined Claim 1 | Reexamined Claim 9 |
|---|---|---|
| 1. A method for assisting a user in identifying a subfamily of items within a family of items, comprising the steps of: | 1. A method for assisting a user in identifying a subfamily of items within a family of items said method performed with a server connected to a client computer through a computer network, comprising the steps of: | 9. A method for assisting a user in identifying a subfamily of items within a family of items, the method comprising the following steps ~~of~~ which are performed with a server connected to a computer network: |

---

[2] There may still be a divided infringement problem with the "displaying" step, but that issue is not the subject of this motion.

| **Original Claim 1** | **Reexamined Claim 1** | **Reexamined Claim 9** |
|---|---|---|
| (a)  providing a computer readable data file of stored information representing at least one family of items, said data file identifying at least one alternative for each item, | (a)  providing a computer readable data file of stored information representing at least one family of items, said data file identifying at least one alternative for each item, | (a)  providing a computer readable data file of stored information representing at least one family of items, said data file identifying at least one alternative for each item, |
| (b)  reading said data file, | (b)  reading said data file, | (b)  reading said data file, |
| (c)  displaying a feature screen indicating said alternatives represented in the family, | (c)  displaying a feature screen indicating said alternatives represented in the family, | (c)  displaying a feature screen indicating said alternatives represented in the family, <u>wherein data is output to a client computer via said computer network,</u> |
| (d)  accepting a first selection criteria of at least one alternative, | (d)  accepting a first selection criteria of at least one alternative, | (d)  <u>receiving and</u> accepting a first selection criteria of at least one alternative <u>from said client computer, said first selection criteria being received by said server from said client computer via said computer network,</u> |
| (e)  determining a first subfamily of items wherein each said item in the first subfamily satisfies said first selection criteria, | (e)  determining a first subfamily of items wherein each said item in the first subfamily satisfies said first selection criteria, | (e)  determining a first subfamily of items wherein each said item in the first subfamily satisfies said first selection criteria, |
| (f)  determining available alternatives represented in the first subfamily, | (f)  determining available alternatives represented in the first subfamily, | (f)  determining available alternatives represented in the first subfamily, |
| (g)  revising said feature screen to indicate the available alternatives of the first subfamily, | (g)  revising said feature screen to indicate the available alternatives of the first subfamily, | (g)  revising <u>said data for</u> said feature screen to indicate the available alternatives of the first subfamily <u>and outputting said revised data for said feature screen to said client computer via said computer network,</u> |
| (h)  accepting a second selection criteria comprising the alternative or alternatives of the first selection criteria plus at least one alternative selected from the revised feature screen, | (h)  accepting a second selection criteria ~~comprising~~ <u>from the client computer via said computer network at said server wherein the second selection criteria comprises a resubmission to the server of</u> the alternative or alternatives of the first selection criteria plus at least one alternative selected from the revised feature screen, | (h)  <u>receiving and</u> accepting a second selection criteria ~~comprising~~ <u>from said client computer via said computer network, in which said second selection criteria comprises (1) a resubmission by said client computer of</u> the alternative or alternatives of the first selection criteria ~~plus~~ <u>along with (2)</u> at least one alternative selected from the revised feature screen, |

| **Original Claim 1** | **Reexamined Claim 1** | **Reexamined Claim 9** |
|---|---|---|
| (i) determining a second subfamily of items of the family wherein each item in the second subfamily satisfies said second selection criteria, | (i) determining a second subfamily of items of the family wherein each item in the second subfamily satisfies said second selection criteria, | (i) determining a second subfamily of items of the family wherein each item in the second subfamily satisfies said second selection criteria, |
| (j) determining available alternatives represented in the second subfamily, and | (j) determining available alternatives represented in the second subfamily, and | (j) determining available alternatives represented in the second subfamily, and |
| (k) revising said feature screen to indicate the available alternatives of the second subfamily. | (k) revising said feature screen to indicate the available alternatives of the second subfamily. | (k) revising <u>said data for</u> said feature screen to indicate the available alternatives of the second subfamily <u>and outputting said revised data for said feature screen to said client computer via said computer network</u>. |

## IV.   ARGUMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  As shown by the cases cited below, this motion presents questions of law that are routinely decided by summary judgment.

### A.   This Court's summary judgment against PartsRiver is also binding against Kelora

This Court's summary judgment against PartsRiver is also binding against Kelora.  In general, patents "have the attributes of personal property."  35 U.S.C. § 261.  One of the attributes of personal property is that judgments against an owner of property are binding on *subsequent* owners of that property:

**§ 43.  Effect of Judgment Determining Interests in Property on Successors to the Property**

A judgment in an action that determines interests in real or personal property:

(1) With respect to the property involved in the action:

      (a) Conclusively determines the claims of the parties to the action regarding their interests; and

      (b) ***Has preclusive effects upon a person who succeeds to the interest of a party to the same extent as upon the party himself.***

*Restatement (Second) of Judgments* § 43(1) (1982).

The Federal Circuit has endorsed this rule:  "[A] judgment with respect to a particular property interest may be binding on a third party based on a transfer of the property in issue to the third party after judgment."  *Int'l Nutrition Co. v. Horphag Research, Ltd.*, 220 F.3d 1325, 1329 (Fed. Cir. 2000) (citing *Restatement (Second) of Judgments* § 43 (1982)).  For example, in a case where a patent is found invalid, and a subsequent accused infringer wants to use that earlier judgment of invalidity as a defense, "[i]t is clear that, to the extent collateral estoppel is applicable, it is applicable also [against a subsequent assignee of the patents] as a successor in interest to the patents."  *Westwood Chem., Inc. v. United States*, 525 F.2d 1367, 1370 n.5 (Ct. Cl. 1975) (applying collateral estoppel of invalidity against assignee).[3]

This Court decided in Case No. 09-811 that claims 1 and 2 of the '821 patent were invalid under 35 U.S.C. § 102(b) due to the on-sale bar, *see* Ex. 12, and thus this Court entered judgment against PartsRiver, which owned the '821 patent at that time, *see* Ex. 13.  PartsRiver later assigned rights in the '821 patent to Kelora.  *See* Ex. 30.  Accordingly, the judgment of invalidity is now binding against Kelora for the reasons stated above.

---

[3] This decision is binding precedent on this Court because when the Federal Circuit was established, it adopted all prior decisions by the Court of Claims as precedent.  *See South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982) (en banc).

1

**B. If reexamined claims 1, 2, and 9 are identical in scope to original claims 1 and 2, then they are invalid for the reasons previously found by this Court**

2

3      PartsRiver suggested to the Patent Office that reexamined claims 1, 2 and 9 are "legally

4 identical"[4] in scope to original claims 1 and 2. *See* Ex. 28 at 7. If that is true, however, then

5 reexamined claims 1, 2, and 9 are invalid for the same reasons this Court found original claims 1 and

6 2 to be invalid in Case No. 09-811, *see* Ex. 12, meaning judgment should be entered against Kelora

7 in the present actions. *See, e.g.*, *Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1577 (Fed. Cir.

8 1994) (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313 (1971)).

9

**C. If reexamined claims 1, 2, and 9 are not identical in scope to any original claim, then under 35 U.S.C. § 252 there cannot be any liability for those claims before November 2, 2010**

10

11      On the other hand, if reexamined claims 1, 2, and 9 are ***not*** identical in scope to any original

12 claim,[5] then under 35 U.S.C. § 252 there cannot be any liability for those claims before November 2,

13 2010, as explained in more detail below.

14

---

15      [4] PartsRiver's choice of words was no accident. The phrase "legally identical" comes from the Federal Circuit's decision in *Tennant Co. v. Hako Minuteman, Inc.*, 878 F.2d 1413, 1417 (Fed. Cir. 1989) ("Claims amended during reexamination are entitled to the date of the original patent if they are without substantive change or are ***legally 'identical'*** to the claims in the original patent."). PartsRiver used the phrase "legally identical" in the hope that it could later argue that it is entitled to damages even *before* the reexamination certificate issued on November 2, 2010. *See generally infra* Part IV.C, pp. 15–18.

16

17

18      [5] Even if reexamined claims 1, 2, and 9 are ***not*** identical in scope to any original claim, this Court's prior judgment of invalidity is still binding against Kelora for the reasons discussed above, *see supra* Part IV.A, p. 13, and that judgment is still important to Plaintiffs' invalidity defense in this case: "[I]ssue preclusion, also called collateral estoppel . . . . does not include any requirement that the ***claim*** (or cause of action) in the first and second suits be the ***same***." *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994); *see also Westwood*, 525 F.2d at 1372 (same). In Case No. 09-811, the issues litigated included whether the invention was the subject of a "commercial offer for sale," *see* Ex. 12 at 8:21–10:25; whether the invention was "ready for patenting," *see id.* at 10:26–13:9; and whether "experimental use" was a defense, *see id.* at 10:17–:25, 11:22–12:6. Those issues are the same in the present actions regardless of whether the claims were amended during reexamination, and thus Kelora cannot relitigate those issues in the present actions. Furthermore, the amendments during reexamination at most changed *one* out of the *eleven* limitations in claim 1. *See* Ex. 2; *see also supra* p. 12. Kelora cannot relitigate this Court's judgment that the other *ten* limitations (i.e., all but step (h)) were in the prior art under § 102(b), *see* Ex. 12 at 11:9–:21, 12:22–13:9. This is important, because even if *one* limitation was changed during reexamination with the goal of narrowing claim 1 to the "Internet" embodiment disclosed in the patent, the claim may still be *obvious* in light of the *ten* limitations from the "local" embodiment that this Court held were in the prior art under § 102(b): "Prior art under the § 102(b) on-sale bar is ***also*** prior art for the purposes of obviousness under § 103." *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1344 (Fed. Cir. 2007) (affirming judgment of invalidity). Indeed, this Court noted the similarity between the two

19

20

21

22

23

24

25

26

27

*(Footnote continued)*

28

-15-

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Nos. 10-4947-CW, 10-5106-CW, 10-5108-CW, 11-502-CW

### 1.  Application of 35 U.S.C. § 252, ¶ 1 is a question of law

"The effect of a reexamined patent during the period before issuance of the reexamination certificate is governed by 35 U.S.C. § 307(b), which provides that the rules established in § 252 for reissued patents shall apply to reexamined patents."  *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1249 (Fed. Cir. 1997).  Under 35 U.S.C. §§ 252 & 307(b), if the scope of a claim is *changed* during reexamination, there are *three* consequences.  First, there is no infringement for acts before the issuance of the reexamination certificate:

> The surrender of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in so far as the claims of the original and reissued patents are *identical*, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are *identical* with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.

35 U.S.C. § 252, ¶ 1 (Supp. I 1996).[6]  "Once a determination is made that the claims are not 'identical' within the meaning of the first paragraph of section 252, the defense of intervening rights under the second paragraph of section 252 can be raised."  *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 742 (Fed. Cir. 1993).  Thus, a second consequence of a narrowing amendment during reexamination is "absolute intervening rights," meaning an accused infringer has the absolute right to sell or continue using anything that was made, used, or purchased before the issuance of the reexamination certificate.  *See* 35 U.S.C. § 252, ¶ 2, first sentence; *BIC Leisure Prods., Inc. v.*

---

embodiments disclosed in the patent:  "The local and internet embodiments of the '821 patent share the same underlying concept."  Ex. 12 at 12:17–:18.

[6] The current version of § 252 uses the phrase "substantially identical" instead of the word "identical," but that version does not apply to this case.  The word "substantially" was added by the American Inventors Protection Act of 1999, Pub. L. No. 106-113, § 4507(8), 113 Stat. 1501A-552, -566.  The effective date for this amendment is as follows:  "Sections 4502 through 4507, and the amendments made by such sections, shall take effect on the date that is 1 year after the date of the enactment of this Act [*i.e.*, November 29, 2000] and shall apply to all applications filed under section 111 of title 35, United States Code, on or after that date, and all applications complying with section 371 of title 35, United States Code, that resulted from international applications filed on or after that date."  *Id.* § 4508, 113 Stat. at 1501A-566 to -567.  The application for the '821 patent was filed on August 26, 1999, *see* Ex. 1, and thus the new law does not apply.  In any event, Plaintiffs contend that the new law would not change the outcome of this motion.

1    *Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1220–21 (Fed. Cir. 1993).  Third, if a claim is narrowed during

2    reexamination, this Court is permitted to grant "equitable intervening rights" for the protection of

3    investments made or business commenced before the issuance of the reexamination certificate.  *See*

4    35 U.S.C. § 252, ¶ 2, second sentence; *BIC Leisure*, 1 F.3d at 1221; *Seattle Box Co. v. Indus.*

5    *Crating & Packing, Inc.*, 731 F.2d 818, 830 (Fed. Cir. 1984) (suggesting possible equitable

6    remedies).

7         This motion only seeks a determination with respect to the ***first*** of the three issues outlined

8    above,[7] since that issue is a question of law:  "A determination of whether the scope of a . . . claim is

9    ***identical*** with the scope of the original claim is a question of law."  *Westvaco*, 991 F.2d at 741

10   (emphasis added) (reversing and finding claim not "identical" as a matter of law); *see also Laitram*

11   *Corp. v. NEC Corp.*, 163 F.3d 1342, 1346–47 (Fed. Cir. 1998) ("*Laitram IV*") (same); *Aspex*

12   *Eyewear, Inc. v. E'Lite Optik, Inc.*, 552 F. Supp. 2d 620, 624 (N.D. Tex. 2008) (granting summary

13   judgment), *appeal dismissed*, No. 2009-1051, 2010 WL 2383807 (Fed. Cir. June 11, 2010).

### 2. The applicants narrowed claims 1, 2, and 9 during reexamination to overcome rejections based on the Granacki prior-art reference

16        Reexamined claims are "identical" to their original counterparts if they are "without

17   substantive change."  *Laitram IV*, 163 F.3d at 1346.  As shown below, reexamined claims 1 and 9

18   ***differ*** from original claim 1 at least because step (h) has been amended to require that the second

19   selection criteria is accepted by a ***server*** computer, and because the second selection criteria must

20   comprise a ***"resubmission"*** of the previously selected alternative(s):[8]

21

---

22        [7] Kelora argued to this Court that discovery would be needed before the Court could decide this
     motion:  "I can tell you right now that we would definitely need discovery, because it's an equitable
23   decision . . . ."  Ex. 33 at 30:23–:24.  However, this motion does not raise the issues of absolute or
     equitable intervening rights — the second and third issues outlined above — and thus discovery is
24   not needed for Kelora to respond to this motion.  Again, this motion only raises the question of
     whether the scope of amended claims 1, 2, and 9 is identical to the scope of any original claim,
25   which is a question of law as explained above.

26        [8] Dependent claim 2 itself was not amended during reexamination, but it includes the
     amendments to reexamined claim 1 because it depends from claim 1.  *See* 35 U.S.C. § 112, ¶ 4 ("A
27   claim in dependent form shall be construed to incorporate by reference all the limitations of the
     claim to which it refers.").

28

| **Original Claim 1** | **Reexamined Claim 1** | **Reexamined Claim 9** |
|---|---|---|
| (h) accepting a second selection criteria comprising the alternative or alternatives of the first selection criteria plus at least one alternative selected from the revised feature screen, | (h) accepting a second selection criteria ~~comprising~~ from the client computer via said computer network at said server wherein the second selection criteria comprises a resubmission to the server of the alternative or alternatives of the first selection criteria plus at least one alternative selected from the revised feature screen, | (h) receiving and accepting a second selection criteria ~~comprising~~ from said client computer via said computer network, in which said second selection criteria comprises (1) a resubmission by said client computer of the alternative or alternatives of the first selection criteria ~~plus~~ along with (2) at least one alternative selected from the revised feature screen, |

The "resubmission" amendments above were required by the Patent Office to overcome the rejections based on the Granacki prior-art reference. *See generally supra* Part III.F, pp. 10–12. The Federal Circuit has repeatedly held that amending a claim to overcome the prior art — as happened in this case — substantively changes the scope of the claim. *See Laitram IV*, 163 F.3d at 1347–49; *Bloom*, 129 F.3d at 1250–51. Indeed, "it is difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not ***substantively changed*** by the amendment." *Laitram IV*, 163 F.3d at 1348. It does not matter that PartsRiver accompanied its original presentation of claim 9 with a self-serving statement that it "includes alternative language that reflects the construction of limitations already present in claim 1, as discussed at the interview on July 16, 2009," Ex. 21 at 7. The Federal Circuit has rejected such arguments. *See Bloom*, 129 F.3d at 1250–51. Furthermore, the Supreme Court has held in a related context that "[a patentee's] decision to forgo an appeal and submit an amended claim is taken as a ***concession*** that the invention as patented ***does not*** reach as far as the original claim." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734 (2002). Indeed, notwithstanding the previous arguments by PartsRiver, Kelora now appears to concede that the "scope of the amended claims is ***different*** from the original claims." Ex. 31 at 12; *see also id.* at 8 ("substantively different"); Ex. 33 at 27:24–28:1 ("they're different").

Thus, if reexamined claims 1, 2, and 9 are not identical in scope to any original claims, then under 35 U.S.C. § 252 there can be no liability for claims 1, 2, and 9 before November 2, 2010.

**D.** **If claims 1, 2, and 9 were broadened in any way during reexamination, then they are invalid under 35 U.S.C. § 305**

Kelora has argued that the issues above concerning § 252 require claim construction, at least with respect to step (h), the "accepting" step. *See* Ex. 33 at 31:14–:17. This Court has indicated that it is prepared to construe the claims to the extent necessary to resolve the issues above concerning § 252. *See id.* at 32:3–:6. If the Court construes step (h), then the Court should also decide whether the amendments to step (h) *broadened* the claim in any respect. During reexamination, claims are only supposed to be *narrowed*. *See* 35 U.S.C. § 305. If claims are broadened during reexamination, then they are invalid. *See, e.g.*, *Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1582–84 (Fed. Cir. 1995) (invalidating claims broadened during reexamination). Whether the scope of a claim has been impermissibly broadened during reexamination is a matter of claim construction and thus a question of law for the Court. *See id.* at 1580.

It is Plaintiffs' position that step (h) in the reexamined claims is *broader* than in the original claims in at least one respect, and thus a final judgment of invalidity should be entered in favor of Plaintiffs. In particular, step (h) in the reexamined claims was *broadened* to try to avoid the "divided infringement" arguments that Plaintiffs raised with respect to original claim 1 in Case No. 09-811, *see* Ex. 9 at 1:11–:15, 11:10, 13:4–20:21, as explained in more detail below.

### 1. The law on divided infringement

In general, "[d]irect infringement requires a party to perform or use *each and every step* or element of a claimed method or product." *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007) (emphasis added) (affirming summary judgment of non-infringement); *accord Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1328–30 (Fed. Cir. 2008) (finding non-infringement as a matter of law), *cert. denied*, 129 S. Ct. 1585 (2009); *PA Advisors, LLC v. Google, Inc.*, 706 F. Supp. 2d 739, 747–48 (E.D. Tex. 2010) (Rader, C.J.) (finding accused websites non-infringing because of claim that required steps to be performed at the client computer).

If no single party performs all the claimed steps of a method claim, then a plaintiff may resort to a theory of "joint infringement." But the Federal Circuit has severely limited the scope of "joint infringement": "This court therefore holds as a matter of Federal Circuit law that there can only be

-19-

joint infringement when there is an agency relationship between the parties who perform the method steps or when one party is contractually obligated to the other party to perform the steps." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 629 F.3d 1311, 1320 (Fed. Cir. 2010) (affirming JMOL of non-infringement).

Without either "joint infringement" or a single party that performs all the claimed steps of a method claim, there cannot be infringement. Plaintiffs fully briefed the issue of divided infringement with respect to original claims 1 and 2 in their motion for summary judgment in Case No. 09-0811, but they focused on the "displaying" step rather than the "accepting" step because there was no dispute as to the proper construction for "displaying." *See* Ex. 9 at 1:11–:15, 11:10, 13:4–20:21. In the end this Court did not resolve Plaintiffs' motion for non-infringement because this Court found the claims invalid instead. *See* Ex. 12 at 13:15–:21.

**2.    Original claims 1 and 2 required step (h) to be performed by a user on the client computer, not by the server**

Step (h) in original claim 1 requires the "accepting" step to be performed by a user on the client computer, not by a server. This can be seen in the fifth screenshot of the "AMP Navigator" program, where the user performs the "accepting" step by clicking on the "Search" button. *See supra* p. 6. This is also required by the proper construction of "accepting," as explained below.

It is well settled that the words of a claim limitation are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention, *i.e.*, as of the effective filing date of the patent application. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). Claim terms are not only read in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification. *See id.* at 1313. The sources of information available to determine the meaning of claim terms include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art. *See id.* at 1314.

***Claim language***: The claim term "accepting" implies a choice ***by the user***, not an action by a server. In particular, the user can either "accept" or "reject" his selection criteria. For example,

1  after a user has clicked on the "Metal" button, the user can *reject* this selection by clicking on the

2  "Metal" button a second time, or the user can *accept* this selection by clicking on the "Search"

3  button.  *See supra* p. 6.

4      *Specification*:  The word "accepting" appears only once in the specification of the '821

5  patent, as part of the "Summary of the Invention."  *See* Ex. 1 at 3:56.  However, the specification is

6  consistent with the conclusion that the "accepting" step takes place on the *user*'s computer (e.g.,

7  when the user clicks on the "Search" button):

8      &bull;  [In Figure 7–9, p]ositioning the interactive pointer 39 and clicking the mouse once,
   toggles a radiobutton 23 or listbox entry 16 to select ("on") or deselect ("off") an

9             alternative 6.  While in the feature screen 9, the user may select and deselect turning
   radiobuttons 23 and listbox entries 16 "on" and "off" as desired.  *In response to a*

10            *user initiated signal to perform a search*, the system retrieves information
   concerning which user selectors 16, 23 are turned "on" and to which alternatives 6 the

11            user selectors 16, 23 that are turned "on" relate.  The alternatives 6 turned "on" are
   the selected alternatives 37 and constitute the selection criteria 14 used in the search

12            to generate a subfamily 2.

13     &bull;  *When the user initiates a search via the search pushbutton 208 or a double mouse*
   *click*, the system gathers the selection criteria 14 from the user selectors 16, 23 that

14            are toggled "on", indicating the selected alternatives 37.

15     &bull;  [In the "Internet" embodiment, t]he user on the client, makes selections from among
   the available alternatives 7 generating a selection criteria 14 different from that which

16            was se[n]t to it.  *The client 126 initiates a search with the modified selection criteria*
   *14.*  The client 126 sends to the server 125, the ScreenNum 102 value sent to it by the

17            server, and the modified selection criteria 14.

18  Ex. 1 at 7:38–:49, 8:6–:9, 18:64–19:2.

19     *Prosecution history*:  The prosecution history of the '821 patent also confirms Plaintiffs'

20  construction of the "accepting" step.  In the Examiner's initial rejection of original claim 1, the

21  Examiner argued that the "accepting" step was taught by U.S. Patent No. 5,544,360 to Lewak.  *See*

22  Ex. 6 at 3.  The cited portion of Lewak states:

23            The user initiates definition of a search filter by, for example, clicking
   the mouse on a "Set Categories" button.  The user then selects the pre-

24            defined category descriptions for the files which the user wants to find.
   In the illustrated embodiment, this is done in the same way as when

25            categorizing a file: the user clicks the mouse on each applicable

26            category description.

27

28

Ex. 5 at 10:41–:47.[9]  Not coincidentally, this disclosure by Lewak is essentially the same as the disclosure in the '821 patent with respect to how a user initiates a search.  Thus, the Examiner interpreted "accepting" to mean the user initiates a search by clicking with his mouse.

Tellingly, the applicant **never** disagreed with the Examiner's interpretation of "accepting."  *See* Ex. 7 at 4–6.  This is significant because "[s]tatements about a claim term made by an examiner during prosecution of an application may be evidence of how one of skill in the art understood the term at the time the application was filed."  *Boston Scientific Corp. v. Johnson & Johnson*, No. 02-790, 2006 WL 6221554, at *8 (N.D. Cal. Sept. 19, 2006) (Illston, J.) (internal quotation marks omitted).  If the applicant believed that "accepting" was an action performed by the **server**, then the applicant should have said so during prosecution.  "[A]s between the patentee who had a clear opportunity to negotiate broader claims but did not do so, and the public at large, it is the patentee who must bear the cost of its failure to seek protection for particular subject matter."  *Fuji Photo Film Co. v. ITC*, 386 F.3d 1095, 1100 (Fed. Cir. 2004) (internal quotation marks omitted).

**Comments by the Court**:  Finally, this Court has already commented that original claim 1 requires actions by the user:  "There's clearly interaction from the user."  Ex. 11 at 4:4.  Indeed, that was the basis for Plaintiffs' motion for summary judgment of non-infringement.  However, Plaintiffs' non-infringement motion focused on the "displaying" step rather than the "accepting" step because there was no dispute as to the proper construction for "displaying."  *See* Ex. 9 at 1:11–:15, 11:10, 13:4–20:21.  At the hearing, the Court suggested that it believed the "accepting" step created a "divided infringement" problem, but the Court recognized that Plaintiffs' motion was not based on the "accepting" step:  "But you're not relying for your divided infringement on the argument that it's the user who controls — who gives input, who interacts, who participates."  *Id.* at 8:20–:23.  In the end this Court did not resolve Plaintiffs' motion for non-infringement because this Court found the

---

[9] Because Lewak was cited during prosecution, Lewak is **intrinsic** evidence (just like the specification and prosecution history of the '821 patent):  "This court has established that 'prior art cited in a patent or cited in the prosecution history of the patent constitutes intrinsic evidence.'"  *V-Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1311 (Fed. Cir. 2005).  Accordingly, Lewak's teachings regarding what constitutes "accepting" should be considered — along with the specification and prosecution history — in construing step (h) in the '821 patent.

1  claims invalid instead.  *See* Ex. 12 at 13:15–:21.  The Court's comments, however, left little doubt
2  that it believed the "accepting" step required action by the ***user***, thus creating a "divided
3  infringement" problem.

4  For all of these reasons, step (h) in original claim 1 requires the "accepting" step to be
5  performed by a user on the client computer, not by a server.

### 3.  Reexamined claims 1, 2, and 9 do not have the same divided infringement problem as original claims 1 and 2

8  Shortly after the Court's comments suggesting that there was a "divided infringement"
9  problem with the "accepting" step in original claim 1, *see* Ex. 11 at 4:4, 8:20–:23 (July 16, 2009),
10 PartsRiver attempted to add new claim 9 during reexamination to circumvent that "divided
11 infringement" problem with the "accepting" step, *see* Ex. 21 at 5–7 (Aug. 4, 2009).  Indeed, the
12 Federal Circuit has held that the "divided infringement" problem is simply a function of how the
13 claims are drafted, and thus "[a] patentee can usually structure a claim to capture infringement by a
14 single party" by "focus[ing] on one entity."  *BMC*, 498 F.3d at 1381; *accord Uniloc USA, Inc. v.*
15 *Microsoft Corp.*, No. 2010-1035, ___ F.3d ____, 2011 WL 9738, at *12 (Fed. Cir. Jan. 4, 2011).

16 PartsRiver ultimately amended claim 1 and added new claim 9 during reexamination in an
17 effort to circumvent the "divided infringement" problem with the "accepting" step.  *See* Ex. 28 at 4–
18 7.  In particular, claims 1 and 9 were amended during reexamination to change "accepting" from an
19 act performed by the ***user*** on a client computer to an act performed by the ***server***.  Reexamined
20 claim 1 now reads:  "***accepting*** a second selection criteria from the client computer via said
21 computer network ***at said server*** . . . ."  *Id.* at 4.  Reexamined claim 9 similarly requires "[a] method
22 . . . comprising the following steps which are performed with a ***server*** connected to a computer
23 network: . . . ***receiving and accepting*** a second selection criteria from said client computer via said
24 computer network."  *Id.* at 5–6.  The patent owner further represented that "the claim language of
25 claim 1 [corresponds] to that of allowed claim 9."  *Id*. at 7.

26 These amendments were designed for one purpose: overcoming the divided infringement
27 problem presented by step (h) of original claim 1.

28

4. **Reexamined claims 1, 2, and 9 claims are broader, and therefore invalid**

Although the amendments during reexamination may have solved the "divided infringement" problem with respect to the "accepting" step, they created a new problem: claims *broadened* during reexamination are invalid. *See* 35 U.S.C. § 305; *Quantum*, 65 F.3d at 1582–84 (affirming summary judgment of invalidity as a result of claims enlarged during reexamination); *see also Thermalloy, Inc., v. Aavid Eng'g, Inc.*, 121 F.3d 691 (Fed. Cir. 1997) (same). This Court has previously granted summary judgment of invalidity under 35 U.S.C. § 305. *See Sharper Image Corp. v. Neotec, Inc.*, 373 F. Supp. 2d 993, 996–98 (N.D. Cal. 2005) (Wilken, J.), *appeal dismissed*, 171 Fed. Appx. 844 (Fed. Cir. Mar. 14, 2006).

Under section 305, a claim is "broader in scope than the original claims if it contains within its scope *any* conceivable apparatus or process which would not have infringed the original patent." *In re Freeman*, 30 F.3d 1459, 1464 (Fed. Cir. 1994). Furthermore, "[a] claim that is broader in *any* respect is considered to be broader than the original claims even though it may be narrower in other respects." *Id.*

Reexamined claims 1, 2, and 9 are broader than original claim 1 because original claim 1 could not be infringed by a *server*, given that the "accepting" step in original claim 1 required action by the *user*, whereas reexamined claims 1, 2,[10] and 9 have been changed to *remove* the requirement that the user performs the "accepting" step, thus *broadening* the claim to encompass servers that perform the "accepting" step. The Federal Circuit has specifically rejected the argument that *adding* language to a claim necessarily *narrows* the claim; to the contrary, the added language can *change* the meaning of the claim, and thus *broaden* the claim by encompassing an apparatus or method that previously could not have infringed the original patent. *See In re Freeman*, 30 F.3d at 1464–65

---

[10] Although reexamined claim 2 was not itself amended, it depends from reexamined claim 1 and therefore includes all of the same limitations — including the broader "accepting" limitation. Dependent claim 2 therefore shares the same fate as independent claim 1. *See, e.g.*, *Anderson v. Int'l Eng'g & Mfg., Inc.*, 160 F.3d 1345, 1350 (Fed. Cir. 1998) (invalidating dependent claims along with independent claim).

1   (holding that the amendments during reexamination "attempt[ed] an end run" around a narrow claim

2   construction).  That is what happened here.

3   **V.    CONCLUSION**

4           For all of these reasons, Plaintiffs' motion should be GRANTED as set forth in the Proposed

5   Order.

6

7   Dated:  March 31, 2011                    By:  /s/ Richard A. Cederoth

8                                                  David T. Pritikin (*pro hac vice*)
                                                       <dpritikin@sidley.com>
9                                                  Richard A. Cederoth (*pro hac vice*)
                                                       <rcederoth@sidley.com>
10                                                 SIDLEY AUSTIN LLP
                                                   One S. Dearborn Street
11                                                 Chicago, Illinois  60603
                                                   Telephone:    (312) 853-7000
12                                                 Facsimile:    (312) 853-7036

13                                                 Theodore W. Chandler (Bar No. 219456)
                                                       <tchandler@sidley.com>
14                                                 SIDLEY AUSTIN LLP
                                                   555 West Fifth Street, Suite 4000
15                                                 Los Angeles, California  90013
                                                   Telephone:    (213) 896-6000
16                                                 Facsimile:    (213) 896-6600

17                                                 Marc R. Ascolese (Bar No. 251397)
                                                       <mascolese@sidley.com>
18                                                 SIDLEY AUSTIN LLP
                                                   555 California Street, Suite 2000
19                                                 San Francisco, California  94104
                                                   Telephone:    (415) 772-1200
20                                                 Facsimile:    (415) 772-7400

21                                                 <Kelora-Microsoft-eBay@sidley.com>

22

23                                                 *Counsel for Plaintiff and Counterclaim-
                                                   Defendant eBay Inc.*

24

25

26

27

28

Dated: March 31, 2011

By: /s/ Richard A. Cederoth

David T. Pritikin (*pro hac vice*)
&lt;dpritikin@sidley.com&gt;
Richard A. Cederoth (*pro hac vice*)
&lt;rcederoth@sidley.com&gt;
SIDLEY AUSTIN LLP
One S. Dearborn Street
Chicago, Illinois  60603
Telephone:    (312) 853-7000
Facsimile:    (312) 853-7036

Theodore W. Chandler (Bar No. 219456)
&lt;tchandler@sidley.com&gt;
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California  90013
Telephone:    (213) 896-6000
Facsimile:    (213) 896-6600

Marc R. Ascolese (Bar No. 251397)
&lt;mascolese@sidley.com&gt;
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, California  94104
Telephone:    (415) 772-1200
Facsimile:    (415) 772-7400

&lt;Kelora-Microsoft-eBay@sidley.com&gt;

David E. Killough (Bar No. 110719)
&lt;davkill@microsoft.com&gt;
MICROSOFT CORPORATION
One Microsoft Way, 8/2076
Redmond, Washington  98052
Telephone:    (425) 703-8865
Facsimile:    (425) 869-1327

*Counsel for Plaintiff and Counterclaim-Defendant Microsoft Corporation*

Dated: March 31, 2011

By: /s/ Jordan Trent Jones

Jordan Trent Jones (Bar No. 166600)
<jtjones@jordanjonesiplaw.com>
LAW OFFICES OF JORDAN TRENT JONES
100 Spear Street, 18th Floor
San Francisco, California 94105
Telephone:  (415) 357-8940
Facsimile:  (415) 371-0500

James G. Gilliland Jr. (Bar No. 107988)
<jgilliland@kilpatricktownsend.com>
KILPATRICK TOWNSEND & STOCKTON LLP
Two Embarcadero Center, Eighth Floor
San Francisco, California 94111
Telephone:  (415) 576-0200
Facsimile:  (415) 576-0300

Eric M. Hutchins (Bar No. 245462)
<ehutchins@kilpatricktownsend.com>
Hogene L. Choi (Bar No. 256617)
<hchoi@kilpatricktownsend.com>
KILPATRICK TOWNSEND & STOCKTON LLP
379 Lytton Avenue
Palo Alto, California 94301
Telephone:  (650) 326-2400
Facsimile:  (650) 326-2422

*Counsel for Plaintiff Shopzilla, Inc.*

## **SIGNATURE ATTESTATION**

Pursuant to General Order No. 45(X)(B), I hereby certify that concurrence in the filing of this document has been obtained from each of the other signatories shown above.

_____ /s/ Marc R. Ascolese _____

**EXHIBITS**

Ex. 1:     The patent-in-suit:  U.S. Patent No. 6,275,821

Ex. 2:     The C1 Reexamination Certificate to the '821 patent-in-suit (issued Nov. 2, 2010)

Ex. 3:     The parent to the patent-in-suit:  U.S. Patent No. 5,983,219

Ex. 4:     The grandparent to the patent-in-suit:  U.S. Patent No. 5,715,444

Ex. 5:     U.S. Patent No. 5,544,360 to Lewak et al. (effectively filed Nov. 23, 1992)

Ex. 6:     Non-final rejection by the Patent Office during prosecution of the '821 patent (Jan. 4, 2000)

Ex. 7:     Response by patent owner to rejection during prosecution of the '821 patent (July 5, 2000)

Ex. 8:     Notice of allowability by the Patent Office (July 25, 2000)

Ex. 9:     Defendants' motion for summary judgment of non-infringement and invalidity due to the on-sale bar (May 28, 2009) [Case No. 09-811, Docket No. 201]

Ex. 10:    Screenshots of the AMP Navigator, which PartsRiver and Danish contend was the first reduction to practice of claims 1–2 of the '821 patent-in-suit, from Exhibit E to Defendants' motion for summary judgment of non-infringement and invalidity due to the on-sale bar (May 28, 2009) [Case No. 09-811, Docket No. 201-3]

Ex. 11:    Transcript of hearing on Defendants' motion for summary judgment (July 16, 2009) [Case No. 09-811, Docket No. 250]

Ex. 12:    Summary judgment of invalidity by this Court finding claims 1 and 2 of the '821 patent invalid due to the on-sale bar (Aug. 21, 2009) [Case No. 09-811, Docket No. 234]

Ex. 13:    Judgment in favor of Defendants (Aug. 21, 2009) [Case No. 09-811, Docket No. 235]

Ex. 14:    John Granacki et al., *A Component Library Management System and Browser*, Research Report ISI/RR-93-386, USC/Information Sciences Institute, April 1993

Ex. 15:    Request to the Patent Office for an *ex parte* reexamination of the validity of claims 1 and 2 of the '821 patent (Oct. 28, 2008)

Ex. 16:    Order by the Patent Office granting an *ex parte* reexamination of the validity of claims 1 and 2 of the '821 patent (Dec. 22, 2008)

Ex. 17:    Initial rejection by the Patent Office finding claims 1 and 2 of the '821 patent invalid in light of Granacki (May 1, 2009)

Ex. 18:    Patent owner's response to the Patent Office's non-final rejection of claims 1 and 2 of the '821 patent in light of Granacki (June 5, 2009)

Ex. 19:    Final rejection by the Patent Office finding claims 1 and 2 of the '821 patent invalid in light of Granacki (June 18, 2009)

Ex. 20:    Examiner interview summary (July 16, 2009)

Ex. 21: After-final proposed amendment by patent owner to add new claim 9 (Aug. 4, 2009)

Ex. 22: Advisory action by the Patent Office stating new claim 9 would be allowable (Sept. 8, 2009)

Ex. 23: Patent owner's notice of appeal to the Board of Patent Appeals and Interferences (Sept. 18, 2009)

Ex. 24: Second after-final amendment by patent owner to add new claim 9 (Nov. 3, 2009)

Ex. 25: Patent owner's brief on appeal to the Board of Patent Appeals and Interferences (Nov. 18, 2009)

Ex. 26: Advisory action by the Patent Office refusing to allow new claim 9 during the patent owner's appeal (Mar. 19, 2010)

Ex. 27: Examiner's brief on appeal to the Board of Patent Appeals and Interferences (Mar. 29, 2010)

Ex. 28: Patent owner's voluntary request to the Patent Office to amend claims 1 and 2 of the '821 patent "for the purpose of terminating the present reexamination to avoid lengthy appeal proceedings," but at the same time arguing that the scope of the amended claims is *"legally identical"* to that of the original claims (May 20, 2010)

Ex. 29: Decision by the Patent Office to dismiss the patent owner's appeal as moot, and to issue a Notice of Intent to Issue Reexamination Certificate allowing claims 1 and 2, as amended, and new claim 9 (June 24, 2010)

Ex. 30: Assignment of at least some rights in the '821 patent from PartsRiver to Kelora (Oct. 7, 2010)

Ex. 31: Kelora's brief in Wisconsin stating that "scope of the amended claims is *different* from the original claims," No. 3:10-cv-00683 (W.D. Wis. Jan. 21, 2011)

Ex. 32: Joint Case Management Statement in this action (Mar. 10, 2011)

Ex. 33: Transcript of Initial Case Management Conference in this action (Mar. 17, 2011)

# Exhibit 37

MANATT, PHELPS & PHILLIPS, LLP
ROBERT D. BECKER (Bar No. CA 160648)
E-mail: rbecker@manatt.com
RONALD S. KATZ (Bar No. CA 085713)
E-mail: rkatz@manatt.com
SHAWN G. HANSEN (Bar No. CA 197033)
E-mail: shansen@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

*Attorneys for Defendants*
PARTSRIVER, INC., & KELORA SYSTEMS, LLC

### IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| eBay Inc. and Microsoft Corporation, <br><br> *Plaintiffs and Counterclaim-Defendants,* <br><br> vs. <br><br> PartsRiver, Inc. and Kelora Systems, LLC, <br><br> *Defendants and Counterclaim-Plaintiff.* | No. 4:10-cv-4947-CW (filed Nov. 2, 2010) <br> No. 4:10-cv-5106-CW (filed Nov. 10, 2010) <br> No. 4:10-cv-5108-CW (filed Nov. 10, 2010) <br> No. 4:11-cv-0502-CW (filed Feb. 2, 2011) <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND/OR NO LIABILITY BEFORE NOV. 2, 2010** <br><br> Hearing Date: May 5, 2011 <br> Hearing Time: 2:00 p.m. <br> Hearing Location: Courtroom 2, 4th Floor |
| Shopzilla, Inc., <br><br> *Plaintiff,* <br><br> vs. <br><br> Kelora Systems, LLC, <br><br> *Defendant.* | |

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II. RESPONSE TO PLAINTIFFS' STATEMENT OF ISSUES TO BE DECIDED............. 4

III. DISPUTED FACTS .......................................................................................................... 5

    A. Motion To Strike Unsupported Evidence ................................................. 5

    B. Embodiments of the '821 Patent ................................................................ 5

    C. The "AMP Navigator" Software Is Not Part of The Patent and Is Not an example of the Internet Version of the invention.................................. 10

IV. ARGUMENT .................................................................................................................. 10

    A. Legal Standards for Summary Judgment ................................................. 10

    B. Plaintiffs' Burden on Summary Judgment is High ................................. 11

    C. Plaintiffs Have Not Established that the Court's Prior Order Granting Summary Judgment against PartsRiver is binding on Kelora.............................. 11

    D. Plaintiffs Have Failed To Show That Reexamined Claims 1, 2 or 9 are Invalid by Reason of an on-sale bar...................................................... 13

    E. Plaintiffs Have Failed To Show That They Are Entitled To Intervening Rights ............................................................................... 15

    F. The Amendments to the '821 Patent During Reexamination Did Not Enlarge The Scope of the Claims................................................................... 18

    G. Defendants Should be Permitted to Conduct Relevant Claim Construction Discovery before the Court Adjudicates Plaintiffs' Broadening Arguments........ 22

V. CONCLUSION .............................................................................................................. 24

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

# TABLE OF AUTHORITIES

Page

## CASES

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.*,
725 F.2d 1350 (Fed. Cir. 1984).................................................................... 11, 13

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) .................................. 10, 11

*Aqua Marine, Inc. v. AIM Machining, Inc.*,
247 F.3d 1216 (Fed. Cir. 2001).................................................................... 13

*Bloom Eng'g Co. v. N. Am. Mfg. Co.*,
129 F.3d 1247 (Fed. Cir. 1997).................................................................... 17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ....................................................................................... 10

*Creo Prods., Inc. v. Presstek, Inc.*,
305 F.3d 1337 (Fed. Cir. 2002).................................................................... 18

*Custom Accessories, Inc. v. Jeffery-Allan Indus., Inc.*,
807 F.2d 955 (Fed. Cir. 1986)....................................................................... 11, 13

*Durkin v. Shea & Gould*,
92 F.3d 1510 (9th Cir.1996).......................................................................... 13

*Hockerson-Halberstadt, Inc. v. Converse Inc.*,
183 F.3d 1369 (Fed. Cir. 1999).................................................................... 18

*Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.*,
401 F.3d 1367 (Fed. Cir. 2005).................................................................... 10

*In re Yamamoto*,
740 F.2d 1569 (Fed. Cir. 1984).................................................................... 4

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
424 F.3d 1374 (Fed. Cir. 2005).................................................................... 11, 13

*Kinstley v. City & County of San Francisco*,
No. C 07-2323-SBA, 2009 U.S. Dist. LEXIS 130352 (N.D. Cal. July 8, 2009) ...................... 5

*Laitram Corp. v. NEC Corp.*,
163 F.3d 1342 (Fed. Cir. 1998).................................................................... 16, 17

*Markman v. Westview Instruments, Inc.*,
116 S. Ct. 1384 (1996) .................................................................................. 16

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ......................................... 11

*PartsRiver, Inc. v. Shopzilla, Inc.*,
No. 2009-1591, 2010 U.S. App. LEXIS 26721 (Fed. Cir. Nov. 3, 2010) ............................ 6

*Pfaff v. Wells Electronics Inc.*,
525 U.S. 55 (1998) ......................................................................................... 14

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

# TABLE OF AUTHORITIES
(continued)

Page

*Pharmacia & Upjohn Company v. Mylan Pharmaceuticals, Inc.*,
170 F.3d 1373 (Fed. Cir. 1999) ................................................................. 11

*Plumtree Software, Inc. v. Datamize, LLC*,
473 F.3d 1152 (Fed. Cir. 2006) .......................................................... 14, 15

*Predicate Logic, Inc. v. Distributive Software, Inc.*,
544 F.3d 1298 (Fed. Cir. 2008) .......................................................... 16, 18

*Providence Health Plan v. McDowell*,
384 F.3d 1168 (9th Cir. 2004) ................................................................. 12

*Schumer v. Lab. Computer Sys.*,
308 F.3d 1304 (Fed. Cir. 2002) ................................................................. 11

*Stewart v. U.S. Bancorp*,
297 F.3d 953 (9th Cir. 2002) ................................................................. 12

*Technology Licensing Corporation v. Thomson, Inc.*,
738 F.Supp.2d 1096 (E.D. Cal. 2010) ....................................................... 12

*Trevino v. Gates*,
99 F.3d 911 (9th Cir.1996) ....................................................................... 13

*TriMed, Inc. v. Stryker Corp.*,
608 F. 3d 1333 (Fed. Cir. 2010) .................................................... 2, 11, 13

## STATUTES

35 U.S.C. § 102(b) .......................................................................... passim

35 U.S.C. § 251 ........................................................................................ 18

35 U.S.C. § 252 ................................................................................... 4, 16

35 U.S.C. § 282 ........................................................................................ 11

35 U.S.C. § 305 ........................................................................................ 18

35 U.S.C. § 307 ........................................................................................ 16

Civil L.R. 7-5(a) .................................................................................. 1, 5

Fed. R.Civ.P. 56 .................................................................................. 1, 5

Fed. R.Civ.P. 56(c) ................................................................................ 10

Fed. R.Civ.P. 56(d) ......................................................................... 4, 19, 23

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

-ii-

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

# I. **INTRODUCTION AND SUMMARY OF ARGUMENT**

Kelora and PartsRiver ("Defendants")[1] respectfully submit this Opposition to Plaintiffs' Motion for Summary Judgment of Invalidity and/or No Liability Before Nov. 2, 2010 ("Plaintiffs' Motion").[2]

Plaintiffs' Motion is improper and should be denied in all respects. There is no authority for the remarkable positions advanced in Plaintiffs' Motion. Plaintiffs seek summary judgment on defenses that are made in virtually every patent case, *viz.*, (1) invalidity and (2) intervening rights, but the moving papers filed in support of the motion fail to address necessary issues, including claim construction; fail to show that there is no genuine issue as to any material fact; and fail to show that the Plaintiffs, or any of them, are entitled to judgment as a matter of law. It is insufficient to baldly state that Defendants Kelora and PartsRiver must choose between validity and intervening rights. The Plaintiffs had the burden of proof on the issues of invalidity and intervening rights, and as to each defense they failed to carry their burdens.

The parties agree on at least one issue. After the court ruled that claims 1 and 2 of the '821 patent were invalid by reason of an on-sale bar, the claims were amended and allowed in reexamination. The issue date for the reexamined claims is November 2, 2010. Plaintiffs'. Ex. 2.[3] The issues presented in this motion concern the claims that issued on November 2, 2010, and not the original claims that were surrendered in the reexamination initiated by Plaintiffs. The Federal Circuit recently ruled that those claims no longer exist and the Defendants have moved to vacate the prior judgment concerning them.

---

[1] Although PartsRiver joins in this Opposition, it has no claim of infringement of the '821 patent to pursue against anyone, past or present, and thus there is no jurisdiction over PartsRiver in Cases No. 4:10-cv-4947-CW, 4:10-cv-5106-CW, 4:10-cv-5108-CW, and 4:11-cv-0502-CW. *See* PartsRiver's motions to dismiss in the first three cases (Doc. 17, Doc. 22, and Doc. 19 in the respective dockets). PartsRiver is not a party to 4:11-cv-0502-CW.

[2] For convenience of reference, all references to court filings herein refer to filings in Case No. 10-4947.

[3] For convenience of reference, Defendants cite to exhibits submitted with Plaintiffs' Motion. Such citations are subject to and do not waive Defendants' objection to all of the alleged factual evidence submitted with Plaintiffs' Motion on the grounds that it is not supported by a declaration as required under Civil L.R. 7-5(a) and Fed. R. Civ. P. 56.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

1

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

On the subject of Plaintiffs' invalidity defense, Plaintiffs have failed to show that they are entitled to judgment as a matter of law. The method claims identified in Plaintiffs' Motion (Claims 1, 2, and 9 of the '821 patent) recently emerged from reexamination and are entitled to an especially weighty presumption of validity. The burden of overcoming that presumption is a heavy one. According to the Federal Circuit, a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise. *See TriMed, Inc. v. Stryker Corp.*, 608 F. 3d 1333 (Fed. Cir. 2010).

Although it is difficult to discern the legal basis for Plaintiffs' first invalidity defense, the only validity statute mentioned in Plaintiffs' Motion is 35 U.S.C. § 102(b) (also known as the "on-sale bar"). *See* Plaintiffs' Motion 10, 15. However, with respect to the inventions set forth in reexamined claims 1, 2, and 9, Plaintiffs make no effort to introduce evidence of any commercial offer for sale before the critical date, as required under 35 U.S.C. § 102(b). As such, Plaintiffs have not met their burden of proof on the issue of invalidity under 35 U.S.C. § 102(b) and the burden has not shifted to Defendants to prove there is a genuine issue of material fact precluding summary judgment. Nonetheless, as set out in the Declaration of Sherif Danish in Support of Defendants' Opposition to Plaintiffs' Motion ("Danish Decl."), reexamined claims 1, 2, and 9 have limitations that were not the subject of any commercial sale or offer for sale, including "accepting a second selection criteria from said client computer via said computer network at said server wherein the second selection criteria comprises a resubmission to the server of the alternative or alternatives of the first selection criteria plus at least one alternative selected from the revised feature screen". Plaintiffs'. Ex. 2; Danish Decl. ¶ 17. There can be no invalidity under these circumstances.

Likewise, Plaintiffs' Motion does not show that there was a broadening amendment during the reexamination. In support of this argument, Plaintiffs present a highly contrived and limiting definition of the term "accepting" that includes a location based limitation that was not and is not in the claims. More specifically, Plaintiffs contend the original claims required accepting "by a user on a client computer" even though there was no such limitation in the

1    claims.  That definition of accepting is at odds with the written description that shows that users

2    "select" whereas "selection criteria" generated from the user selections are accepted by the

3    system either locally or at a server in the case of the Internet embodiment.  Moreover, the test for

4    broadening is whether the amended claim would ensnare methods that otherwise would not have

5    been ensnared by the original language of the claim.  Plaintiffs have not attempted to demonstrate

6    this and could not.  The original claim language requires "*accepting* **selection criteria**", but did

7    not specify where the accepting was to take place.  The amended claim language likewise

8    requires "*accepting*" **selection criteria**, but also specifies that the "accepting" selection criteria

9    take place on a server.

10          On the subject of intervening rights, the parties agree that the claims were amended during

11   reexamination.  The resulting claims include claim language that was not considered by the Court

12   during the prior action, including "accepting a second selection criteria from said client computer

13   via said computer network at said server wherein the second selection criteria comprises a

14   resubmission to the server of the alternative or alternatives of the first selection criteria plus at

15   least one alternative selected from the revised feature screen."  Plaintiffs'. Ex. 2 (Claim 1,

16   Element (h)).  Indeed, Plaintiffs at one point admit that this language narrowed the claims.

17   Plaintiffs' Motion at 2:10. Given that Plaintiffs further argue that the claims are invalid under

18   section 102(b) only "*if*" they are "identical in scope to original claims 1 and 2" (Plaintiffs'

19   Motion 15), Plaintiffs have admitted that the claims are not invalid and have thus failed to carry

20   their burden of proof on invalidity.  Plaintiffs further contend, however, that if the reexamined

21   claims are not identical in scope to the original claims, then intervening rights necessarily apply.

22   However, this is not the law and Plaintiffs have not carried their burden by presenting the Court

23   with this false dichotomy.  It does not necessarily follow that intervening rights apply.[4]

24   _____
     [4] Plaintiffs accuse Defendants of "flip-flopping" (*See e.g.*, Plaintiffs' Motion 1:3-4), but this
25   accusation is only made to further Plaintiffs' own false dichotomy (note that Plaintiffs engage in
     the very same flip-flopping in Plaintiffs' Motion).  Contrary to the accusation, Defendants have
26   consistently argued that the claims have been improperly treated in a broad fashion, and that they
     are actually much narrower by virtue of either implied limitations based on file history estoppels
27   or express limitations added during reexamination.  The post-allowance statement in the
     reexamination file history regarding the claims as amended, which are improperly submitted and
28   thus not in evidence and may not be considered here, concerns the disagreement that
     reexamination counsel had with the patent examiner over whether certain comments from the file

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

3

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

1    In order to carry their burden on intervening rights, Plaintiffs had the burden to show that

2    the claims of the reexamined patent are not "substantially identical" with the claims of the

3    original patent. This requires an examination of the original claims in view of the prosecution

4    history. Plaintiffs made no effort to do so even though the Court never construed the original

5    claims and has not construed the amended claims. As such, Plaintiffs have failed to carry their

6    burden and it has not shifted to Defendants.

## II.    RESPONSE TO PLAINTIFFS' STATEMENT OF ISSUES TO BE DECIDED

8    Defendants respond as follows to the statement of issues to be decided at page 3 of

9    Plaintiffs' Motion:

- The Court's summary judgment in Case No. 09-811, which concerns claims that no longer exist, is not binding against Kelora. Reexamined claims 1, 2, and 9 issued after the date of this Court's summary judgment in Case No. 09-0811, contain new claim language not previously considered by the court, and are not otherwise identical for purposes of collateral estoppel. Plaintiffs assert privity between PartsRiver and Kelora, but otherwise make no effort to show how or why the prior order would be binding.

- Plaintiffs have failed to carry their burden of proof to show that there is an on-sale bar to the patenting of the reexamined claims under 35 U.S.C. § 102(b). Reexamined method claims 1, 2, and 9 contain new claim language not previously considered by the court and Plaintiffs have made no effort to show that those limitations, or any of the other claim limitations, were the subject of an on-sale bar.

- Plaintiffs have failed to show that they are entitled to intervening rights. Under 35 U.S.C. § 252 and Federal Circuit precedent, to the extent amended claims are "substantially identical" to the original claims, the patent is to have continuous effect from the date of the original patent. Plaintiffs have asserted that the claims textually differ, but have not shown, based on undisputed fact, that they are not substantially identical. Indeed, Plaintiffs take no position on whether the claims are "substantially identical."

- Finally, Defendants dispute that Plaintiffs' Motion presents any issues of undisputed material fact regarding whether the amendments to the claims of the '821 patent during reexamination enlarged the scope of the claims, and Defendants affirmatively assert under Rule 56(d) that discovery and claim construction are required to fully oppose the broadening amendments portion of Plaintiffs' Motion.

---

history of the original examination were sufficient to limit the claims without making the limitations express. The Patent Office disagreed, in part because during reexamination, examiners must give claims their broadest reasonable interpretation without regard to estoppels, contrary to the rules that the district courts must follow. *See In re Yamamoto*, 740 F.2d 1569, 1571 (Fed. Cir. 1984) (affirming that during reexamination claims should be given "their broadest reasonable interpretation, consistent with the specification, in reexamination proceedings," unlike in district court). Reexamination counsel ultimately amended the claims to make limitations express. His follow-up "identical" statement was not for the purpose of expressing a view that the reexamined claims were as broad as the examiner had treated them before the amendment, but rather that they were at least as narrow as counsel had been asserting all along.

### III.    DISPUTED FACTS

#### A.    Motion To Strike Unsupported Evidence

Plaintiffs' evidence regarding the inventions of the patent-in-suit is disputed.  Although Plaintiffs occasionally reference the patent, the factual support does not come from the patent.  Rather, the support comes from screen shots created by counsel from software operated by counsel for purposes of the litigation.  *See* Plaintiffs' Motion 4:5 - 7:18; Danish Decl. ¶¶ 6, 15.  These screen shots and the accompanying comments are attorney argument, not evidence, and do not inform the patent.  Danish Decl. ¶¶ 6, 15.  Defendants hereby move to strike all of the screenshot evidence, including the entire Section III.B of Plaintiffs' Motion.

In addition, no facts alleged in Plaintiffs' Motion are supported by a declaration as required under Fed. R.Civ. P. 56 and Civil L.R. 7-5.  The absence of properly submitted factual support is itself sufficient grounds for denying Plaintiffs' Motion.  *See Kinstley v. City & County of San Francisco*, No. C 07-2323-SBA, 2009 U.S. Dist. LEXIS 130352, at *4-5 (N.D. Cal. July 8, 2009) (quoting Civil L.R. 7-5 and refusing to consider non-compliant opposition to summary judgment motion).  Defendants respectfully request that all unsupported evidence be stricken and the motion denied for failing to comply with Fed. R.Civ. P. 56 and Civil L.R. 7-5.

#### B.    Embodiments of the '821 Patent.

The claims of the '821 patent, as amended in reexamination, include limitations directed to a so-called Internet embodiment.  In that embodiment, all program and data files from a "local embodiment" of the invention reside on a server.  A server receives and accepts first and second selection criteria that are "generated" based on user selections.  *See* Danish Decl. ¶13.  It is the generated selection criteria that is received and accepted by the system to assist the user.  *Id.*  Prior to the amendments in reexamination, the claims did not include express language specifying where the accepting of the generated selection criteria took place.  Steps (d) and (h) of reexamined claim 1, with amendments shown, are set forth here:

> 1.   A method for assisting a user in identifying a subfamily of items within a family of items said method performed with a server connected to a client computer through a computer network, comprising the steps of:
>
> ...

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

(d) accepting a first selection criteria of at least one alternative,

...

(h) accepting a second selection criteria ~~comprising~~ from said client computer via said computer network at said server wherein the second selection criteria comprises a resubmission to the server of the alternative or alternatives of the first selection criteria plus at least one alternative selected from the revised feature screen,

....

The amended claims issued in a reexamination certificate dated November 2, 2010. The Federal Circuit has ruled that the claims previously adjudicated by addressed by the Court no longer exist. *PartsRiver, Inc. v. Shopzilla, Inc.*, No. 2009-1591, 2010 U.S. App. LEXIS 26721, at *2-7 (Fed. Cir. Nov. 3, 2010) (Document 253 in related Case No. 4:09-cv-0811-CW) ("PartsRiver moved to withdraw this appeal as moot, since original claims 1 and 2 no longer exist." … "IT IS ORDERED THAT: (1) the motion to dismiss the appeal is granted.").

The patent describes two basic embodiments, an Internet embodiment and a local embodiment. As can be seen, in each embodiment, software is provided to perform each step. In the Internet environment, all program and data files reside on the server. The patent provides, with emphasis added:

### SUMMARY OF THE INVENTION

It is a feature of the present invention that a user is assisted in identifying a subfamily of items within a family of items by: providing a computer readable data file of stored information representing at least one family of items, the data file identifying at least one alternative for each item, reading the data file, displaying a feature screen indicating said alternatives represented in the family, **accepting selected alternatives**, determining the subfamily of items where each item in the subfamily satisfies the selected alternatives, determining available alternatives represented in the subfamily and unavailable alternatives unrepresented in the subfamily, and revising the feature screen indicating the available alternatives as distinct from the unavailable alternatives.

...

It is a feature of the invention that the process may be implemented in a server and client configuration for use on the Internet.

It is an advantage of the invention that an Internet configuration may be used as an electronic catalog, providing an electronic alternative to updating and distributing product and/or service information.

Plaintiffs'. Ex. 1, 3:35-4:10.

...

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

6

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

# DETAILED DESCRIPTION OF THE INVENTION

...



Fig. 25

**In an embodiment of the invention in an Internet environment, there is a server computer 125 and a client computer 126. All of the program files and data files described in the local embodiment reside on the server 125.** In the Internet embodiment, the server 125 comprises a computer having a minimum of 8 Mbytes of RAM and 50 MBytes of available hard disk memory and an Intel Pentium processor running Microsoft Windows 3.1. ...   The client 126 is a computer having a minimum of 4 MBytes of RAM and an Intel 80386 processor running Microsoft Windows 3.1 and having a display device, keyboard, and mouse. ....

A preferred embodiment of the Internet embodiment of the electronic catalog application mirrors the user flow in the local embodiment as much as possible. Based upon certain restrictions inherent in current Internet capabilities with respect to building an interactive screen, the feature screen 9 for the Internet embodiment has a layout that is slightly different from the local embodiment. ....

The client 126 initiates a request to the server 125 for the electronic catalog searching application via the Internet. The server 125 detects the request. Receipt of the request executes the requested application on the server 125 that permits a user on the client 126 to select a family 1 or subfamily 2. Example of Main Menu, Alphabetical search, Picture Search, and View Part Number screens are shown in FIGS. 31 through 35. When the family 1 or subfamily 2 is chosen, the server 125 sends a feature screen status 127 to the client 126. The feature screen status 127 comprises a feature screen code, ScreenNum 102 in a preferred embodiment, all features 5 appropriate to the feature screen 9 specified in ScreenNum 102, all available alternatives 7, all unavailable alternatives 8, and the selection criteria 14. As the selection criteria 14 is always sent, it may comprise zero selected alternatives 37. It is apparent, therefore, that the server 125 sends all of the information necessary to define the current subfamily 2 to the client 126. The information, therefore, need not be retained in memory on the server 125. This particular feature renders it particularly appropriate for an Internet environment. The client 126 receives the feature screen status 127 and displays the feature screen 9 accordingly. An example of the feature screen 9 on the Internet is shown in FIGS. 26 through 29. **The user on the client, makes selections from among the available alternatives 7 generating a selection criteria 14 different from**

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

7

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

**that which was set to it.** The client 126 initiates a search with the modified selection criteria 14. **The client 126 sends to the server 125**, the ScreenNum 102 value sent to it by the server, and **the modified selection criteria 14**. **The server 125 receives the ScreenNum 102 and the selection criteria 14**. The server 125 executes the search operation as disclosed hereinabove using the revised selection criteria 14 and generates the feature screen status 127. The server 125 sends the feature screen status 127 that has been updated based on the modified selection criteria 14 to the client 126. The client 126 receives the feature screen status 127 and displays the updated feature screen 9. This process may iterate similar to the local version to further narrow the subfamily as desired.

Plaintiffs'. Ex. 1, Fig. 25 and 18:32-19:11.

As can be seen from the description above, in the preferred Internet embodiment disclosed in the specification, the program and data files all reside on a server. These files, which were all stored locally in the local embodiment, are responsible for the steps in the claimed methods. Thus, contrary to Plaintiffs' unsupported statement on page 9 of Plaintiffs' Motion, the patent does not teach that accepting must take place on the user's computer. *See* Plaintiffs' Motion 9:4-9.

Further, as can be seen from the description in the patent, the program files "receive" selection criteria generated by the system. In the Internet embodiment, for example, the server receives generated selection criteria. In this context, it can be seen that the patent uses "receive" and "accept" nearly synonymously: a server may receive data for a variety of purposes, but the claim term "accepting" means "accepting for processing."[5]

As explained by inventor Sherif Danish, the "term 'accepting' in the '821 patent refers to acceptance *of a selection criteria by the system* so that a search can be performed.

13.     The term "accepting" in the '821 patent claims refers to the acceptance of selection criteria by the system so that a search can be performed.  In the embodiments described and claimed in the '821 patent, a user "selects."  The user selections are used to "generate" a selection criteria which in turn is received and accepted by the system.  In the Internet embodiment, where all program files "reside on the server," the generated selection criteria is transmitted over a computer network to a server, where it is received and accepted for use in a search. As explained by the '821 patent, "The user on the client, makes selections from among the available alternatives 7 generating a selection criteria 14".    This selection criteria is sent from the client to the server where it is accepted for purposes of performing a search: "The client 126 sends to the server 125 the ...

---

[5] There is a dispute on this issue preventing summary judgment.  In the previous motion for summary judgment, Plaintiffs admitted that "the parties dispute the proper construction of "accepting"."  Plaintiffs' Ex. 9 at 13:14.  A dispute remains today.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1    modified selection criteria 14. The server 125 receives ... the selection criteria 14.
2    The server 125 executes the search operation ... using the revised selection criteria
     14." See Ex. A, Col. 18:64-19:6.

3    Danish Decl. ¶ 13.

4        Inventor Danish further makes clear that the "term 'accepting' in the '821 patent does not
5    refer to selecting actions by the user.

6        14.    It is clear from the '821 patent that the user act is not accepting, but
     selecting. The results of the selecting are used to generate a "selection criteria",
7    which in the Internet embodiment is transmitted to the server. In the original
     claims, the server was neither required nor excluded. Nonetheless, the claims
8    made it clear that the "accepting" step was something that was done after the
     "selection criteria" was "generated" from user selections. It was this selection
9    criteria that was received and accepted by the system. Element (d) and (h) of the
     claims, for example, have always required "accepting a first/second selection
10   criteria." The selection criteria is generated by the system and that generated
     selection criteria is what is received and accepted by the system for processing a
11   search. Depending on the embodiment, the generated selection criteria is either
     received and accepted by the system locally or received and accepted on a server
12   after transmission over a computer network for use in a search to assist the user as
     claimed.

13
14       15.    The "search" button described in Plaintiffs' Motion with reference to the
     AMP Navigator is not where the accepting occurs in the method. Indeed, the
15   search button described in their motion is from the AMP Navigator program and
     not the embodiments shown in the '821 patent. In the local embodiment described
16   in the '821 patent, the system gathers the selection criteria 14 to perform a search:
     "When the user initiates a search via the search pushbutton 208 or a double mouse
17   click, the system gathers the selection criteria 14 from the user selectors 16, 23 that
     are toggled "on", indicating the selected alternatives 37." Ex. A. Col. 8:6-9. As
18   can be seen, it is the system that gathers the selection criteria. In the Internet
     embodiment, the selection criteria are "sent" to the server where they are received
19   and accepted. See Ex. A. Col. 18:66-19:11. See also figure 25, which graphically
     illustrates that the selection criteria 14 is transmitted to and accepted by the server
20   125.

21   Danish Decl. ¶¶14-15.

22       Further, contrary to Plaintiffs' assertions, it is clear that the user *selects* criteria that are in

23   turn received *or accepted* by the program files of the invention. In the Internet embodiment,

24   those files are located on a server. *See, e.g.*, Pls. Ex. 1, 18:64-19:3. ("The user on the client,

25   makes selections from among the available alternatives 7 generating a selection criteria 14

26   different from that which was set to it. The client 126 initiates a search with the modified

27   selection criteria 14. The client 126 sends to the server 125, the ScreenNum 102 value sent to it

28   by the server, and the modified selection criteria 14. The server 125 receives the ScreenNum 102

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

9

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

and the selection criteria 14.").

## C.   The "AMP Navigator" Software Is Not Part of The Patent and Is Not an example of the Internet Version of the invention

The "AMP Navigator" was an early demonstration program designed to illustrate some of the concepts disclosed in the '821 patent.. Danish Decl. ¶ 5. "The AMP Navigator program ... was designed to run on a single computer.  It was not written to run over the Internet or in any other client-server configuration (although, like many programs, it may be run on a computer connected to a network such as the Internet).  It was not a server and there was no code provided for communicating between a client and server.  There also was no code that would allow the software to interact with other software through a computer network.  The AMP Navigator did not accept selection criteria from a client computer via a computer network, and did not send selection criteria to a server via a computer network. Danish Decl. ¶ 16

The AMP Navigator has not been, and could not be, made to function as an Internet embodiment and could not be, and has not been, used to perform the methods of the amended claims.  *See* Danish Decl. ¶¶ 16, 17.

## IV.   ARGUMENT

### A.   Legal Standards for Summary Judgment

Summary judgment is proper only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c), *see also Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.*, 401 F.3d 1367, 1370 (Fed. Cir. 2005), citing Fed. R. Civ. P. 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the nonmoving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Id.* at 256, 106 S.Ct. 2505.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

10

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

1    The Court must view any inferences drawn from the underlying facts in the light most

2    favorable to Kelora. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587,

3    106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  The Court also may not engage in credibility

4    determinations or weigh the evidence, for these are jury functions. *Anderson*, 477 U.S. at 255,

5    106 S.Ct. 2505.

6    **B.     Plaintiffs' Burden on Summary Judgment is High**

7    35 U.S.C. § 282 creates a presumption that the patents-in-suit are valid and imposes the

8    burden of proving invalidity on Plaintiffs by clear and convincing evidence.  *See* 35 U.S.C. § 282;

9    *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984);

10   *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379 (Fed. Cir. 2005).  "The burden of

11   proving invalidity on summary judgment is high."  *Schumer v. Lab. Computer Sys.*, 308 F.3d

12   1304, 1316 (Fed. Cir. 2002).  According to the Federal Circuit, a moving party seeking to

13   invalidate a patent at summary judgment must submit such clear and convincing evidence of facts

14   underlying invalidity that no reasonable jury could find otherwise. *See TriMed, Inc. v. Stryker*

15   *Corp.*, 608 F. 3d 1333 (Fed. Cir. 2010).  Moreover, a PTO decision upholding the validity of

16   reexamined patent claims makes that burden heavier, because that decision must be given weight.

17   *Custom Accessories, Inc. v. Jeffery-Allan Indus., Inc.*, 807 F.2d 955, 961 (Fed. Cir. 1986).  "When

18   determining the validity of the claims of a patent, each claim must be separately considered."

19   *Schumer*, 308 F.3d at 1316.

20   **C.     Plaintiffs Have Not Established that the Court's Prior Order Granting**
     **Summary Judgment against PartsRiver is binding on Kelora.**
21

22   Plaintiffs request an adjudication that the Court's prior Summary Judgment Order be

23   deemed binding against Kelora.  But in requesting this adjudication, Plaintiffs conspicuously omit

24   any reference to res judicata, the legal doctrine that would permit such relief.  Quite simply,

25   Plaintiffs fail to demonstrate that the Summary Judgment Order is entitled to any preclusive effect

26   under applicable law.

27   Whether a judgment of patent invalidity is entitled to preclusive effect is a matter of

28   procedure subject to the law of the circuit in which the district court sits. *Pharmacia & Upjohn*

11

*Company v. Mylan Pharmaceuticals, Inc.,* 170 F.3d 1373, 1381, n.4 (Fed. Cir. 1999)(holding that because principles of collateral estoppel are not matters within exclusive jurisdiction of Federal Circuit, law of the circuit must be applied). Res judicata, or claim preclusion, bars legal claims that were raised or could have been raised in a prior lawsuit. *Stewart v. U.S. Bancorp,* 297 F.3d 953, 956 (9th Cir. 2002). Thus, in the Ninth Circuit, a party asserting res judicata must satisfy the following three elements: (1) an identity of claims; (2) the previous action must have resulted in a final judgment on the merits; and (3) the current action must involve the same parties or persons in privity therewith. *Providence Health Plan v. McDowell*, 384 F.3d 1168, 1173-1174 (9th Cir. 2004).

Here, Plaintiffs have not submitted any admissible evidence satisfying the necessary elements of res judicata. As a threshold matter, the Summary Judgment Order was based on the original claims of the '821 Patent, claims that indisputably no longer exist. For that reason alone, the Summary Judgment Order should not be entitled to any preclusive effect in this matter. Analogously, Plaintiffs cannot establish that Defendants could have sued for infringement of the '821 Patent as reexamined in the prior litigation. Plaintiffs are not entitled to summary judgment of invalidity based on res judicata if they fail to establish one of the necessary elements as a matter of law. *See e.g., Technology Licensing Corporation v. Thomson, Inc.,* 738 F.Supp.2d 1096, 1100-1101 (E.D. Cal. 2010)(District Court denying summary judgment of invalidity based on res judicata because claims of re-issued patents could not have been asserted in prior litigation and defendants failed to satisfy element of identicality of claims).

Nor have the Plaintiffs demonstrated that the Summary Judgment Order is entitled to any preclusive effect under the doctrine of collateral estoppel. In their Motion, Plaintiffs cite authority that "to the extent collateral estoppel is applicable, it is applicable also [against a subsequent assignee of the patents] as a successor in interest to the patents." Motion, p. 14: 14-15 (citations omitted). But the Summary Judgment Order could have preclusive effect only if Plaintiffs underline{actually} establish that collateral estoppel <u>is</u> applicable, something which they have failed to do in their Motion.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

12

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

In the Ninth Circuit, a party asserting collateral estoppel, or issue preclusion, must satisfy the following elements: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated by the party against whom preclusion is asserted in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action. *Trevino v. Gates,* 99 F.3d 911, 926 (9th Cir.1996). Moreover, the party resisting claim preclusion must have had a full and fair opportunity to litigate." *Durkin v. Shea & Gould,* 92 F.3d 1510, 1515 (9th Cir.1996). Here, Plaintiffs have failed to demonstrate that the issues at stake (invalidity of <u>reexamined</u> claims based on on-sale bar) are identical to the issues alleged in the prior litigation (on-sale bar as to <u>original</u> patent claims). Moreover, even if Plaintiffs had demonstrated that the issues were the same, Defendants did not have a full and fair opportunity to litigate the Court's Summary Judgment Order because PartsRiver's appeal was dismissed as moot by the Federal Circuit. *See e.g., Aqua Marine, Inc. v. AIM Machining, Inc.,* 247 F.3d 1216, 1221 (Fed. Cir. 2001)(Court dismissing appeal of judgment of invalidity on mootness grounds, noting that "Aqua Marine raises nonfrivolous questions regarding whether the district court properly applied the on-sale bar rule. In a future action, it is possible that Aqua Marine could avoid collateral estoppel by arguing that it did not have a full and fair opportunity to litigate the issue of invalidity."

### D. **Plaintiffs Have Failed To Show That Reexamined Claims 1, 2 or 9 are Invalid by Reason of an on-sale bar.**

The claims identified in Plaintiffs' Motion (Claims 1, 2, and 9) recently emerged from reexamination and are entitled to an especially weighty presumption of validity. *Invitrogen Corp.*, 424 F.3d at 1379; *Custom Accessories, Inc.*, 807 F.2d at 961; *American Hoist & Derrick Co.*, 725 F.2d at 1360. According to the Federal Circuit, a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise. *See TriMed, Inc. v. Stryker Corp.*, 608 F. 3d 1333 (Fed. Cir. 2010).

Plaintiffs do not clearly articulate any reason why the claims are invalid by reason of the on-sale bar, other than to suggest that they are invalid for the reasons previously found by the

1   court *"If"* they are "identical in scope" to the claims as described in that motion. In this regard,

2   Plaintiffs argue that the claims are invalid under section 102(b) only if they are "identical in scope

3   to original claims 1 and 2". Plaintiffs' Motion 15. However, given that Plaintiffs also argue that

4   amendments in reexamination *narrowed* the claims ("As a result, PartsRiver *narrowed* claims 1

5   and 2 to overcome the rejection based on the Granacki prior-art reference." Pls. Motion 10:28-

6   11:1.), this argument fails as a matter of law and the burden does not shift to Defendants.

7          Moreover, it is clear that Plaintiffs have not otherwise carried their burden. The on-sale

8   bar requires that there be a commercial offer for sale before the critical date and that the

9   invention be ready for patenting before the critical date. *Pfaff v. Wells Electronics Inc.*, 525 U.S.

10  55, 65 (1998). The Federal Circuit has said that there are two ways to satisfy the first prong of

11  commercial offer for sale: it "could demonstrate that before the critical date" Defendants "made a

12  commercial offer to perform the patented method (even if the performance itself occurred after

13  the critical date)" or it "could demonstrate that before the critical date" Defendants "in fact

14  performed the patented method for a promise of future compensation." *Plumtree Software, Inc. v.

15  Datamize, LLC*, 473 F.3d 1152, 1162 (Fed. Cir. 2006).

16         Although the parties dispute whether the prior order has any preclusive effect regarding

17  whether there was a commercial offer for sale before the critical date and whether the invention

18  was ready for patenting before the critical date (*see* Plaintiffs' Motion 15, n.5), and Defendants

19  contend that neither prong was satisfied previously, Plaintiffs have failed to carry their burden

20  regarding those elements in this motion. Plaintiffs have offered no evidence to show that anyone

21  connected with the patent offered to perform the patented methods set out in the reexamined

22  claims, including amended step (h), before the critical date or that anyone did in fact perform

23  those methods before the critical date. It is undisputed that the AMP Navigator was never used to

24  perform the reexamined methods and could not have been used to perform those methods.

25         Mr. Danish flatly denies that this took place and there is no evidence to suggest it did.

26  Danish Decl. ¶¶ 16-17. Indeed, Mr. Danish confirms that the AMP Navigator relied on by

27  Plaintiffs did not include code that would allow the software to run in a client-server environment

28  and there was no code for communicating between a client and a server as required by

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

14                    DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

reexamined step (h).  *Id.*  In this context, it is not sufficient to show that counsel for Plaintiffs is able to perform methods using the AMP Navigator software.  The claims are directed to specific methods and the Plaintiffs have failed to show that Sherif Danish or anyone else connected with the patent offered to perform the patented methods set out in the reexamined claims before the critical date or that he or anyone else did in fact perform those methods before the critical date.

Simply put, Plaintiffs have introduced no evidence as to either of the theories described in *Plumtree Software*.  They have introduced no evidence of a commercial offer to perform the reexamined methods made before the critical date.  Plaintiffs are therefore not entitled to summary judgment of invalidity on 35 U.S.C. § 102(b) grounds.

**E.      Plaintiffs Have Failed To Show That They Are Entitled To Intervening Rights**

It is undisputed that claim 1 of the '821 patent was amended during the recent reexamination proceeding and that claims 1, 26 and 9 of the '821 patent are different from the original claims of the '821 patent that existed before the reexamination.[7]  The resulting claims include limitations that were not considered by the Court during the prior action, including "accepting a second selection criteria from said client computer via said computer network at said server wherein the second selection criteria comprises a resubmission to the server of the alternative or alternatives of the first selection criteria plus at least one alternative selected from the revised feature screen."   As Defendants' counsel stated during the March 17, 2011, Case Management Conference ("CMC"), "everybody agrees there are different words in [the claims], so they're different."  Plaintiffs' Ex. 33, CMC Tr. at 27:25-28:1.

---

[6] Claim 2 of the '821 patent was not itself amended during the reexamination, but claim 2 depends from claim 1 and therefore includes the amendments to claim 1.

[7] Indeed, the original claims 1 and 2 of the '821 patent that were at issue in the prior case (Case No. 09-811) no longer exist, as the Court noted during the CMC.  Plaintiffs' Ex. 33, Tr. at 7:20-21.)  In response to Plaintiffs' counsel's comments regarding their interest in invalidating the original '821 patent, the Court stated: "You don't have to invalidate the one that was in that [09-811] case, because that patent doesn't exist anymore."

With respect to the Court's prior Order Granting Defendants' Motion for Summary Judgment (Docket No. 234) and Judgment (Docket No. 235) in Case No. 09-811, PartsRivers, Inc.'s Motion to Vacate Judgment in Case No. 09-811 (Docket No. 260) is fully briefed and ready for the Court's decision.  If that motion is granted, then the Court's prior order will have no effect whatsoever.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

15

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

However, it does not necessarily follow that intervening rights apply. In order to carry their burden on intervening rights, Plaintiffs had to show that the claims of the reexamined patent are not "substantially identical" with the original patent. Plaintiffs have failed to carry that burden.

Under 35 U.S.C. § 307, a claim that is amended in reexamination has the same relative effect as a claim that is amended in reissue proceedings under 35 U.S.C. § 252. Under 35 U.S.C. § 252, a reissued patent is enforceable against infringing activity that occurred after the issuance of the original patent, "to the extent that its claims are substantially identical" to the claims of the original patent. *Predicate Logic, Inc. v. Distributive Software, Inc.*, 544 F.3d 1298, 1304-1305 (Fed. Cir. 2008); *Laitram*, 163 F.3d at 1347.[8]

According to the Federal Circuit, "to determine whether a claim change is substantive it is necessary to analyze the claims of the original and the reexamined patents in light of the particular facts, including the prior art, the prosecution history, other claims, and any other pertinent information." *Id.*

Plaintiffs contend element (h) was amended during reexamination "to require that the second selection criteria is accepted by a server computer, and because the second selection criteria must comprise a "resubmission" of the previously selected alternative(s)." Plaintiffs' Motion 17:17-20. Plaintiffs contend that these are "substantive" changes (*see* Plaintiffs' Motion at 17, citing *Laitram IV*, 163 F.3d at 1346), but they have failed to show that they are entitled to intervening rights.

The critical failing of Plaintiffs' presentation is that they have made no effort to construe the claims as originally filed, in view of the patent and its file history, as required under Supreme Court precedent and to compare the properly construed claims with the reexamined claims. *See Markman v. Westview Instruments, Inc.*, 116 S. Ct. 1384 (1996) (three primary sources are to be

---

[8] Plaintiffs contend that the prior version of section 252 did not include the word "substantially." However, even before the 2000 amendments to Section 252 adding the word "substantially" to "identical" in the statute, it was the law of the Federal Circuit "that a claim amendment made during reexamination following a prior art rejection is not per se a substantive change." *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998). *See* Plaintiffs' Motion 16, n.6

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1   considered in ascertaining the meaning of a patent claim: the claim language itself, the patent's

2   specification, and the patent's administrative record in the U.S. Patent & Trademark Office, often

3   referred to as the prosecution or file history).

4        Plaintiffs acknowledge that amendments were made to the claims, and that the file history

5   indicates that this was done to reflect "the construction of limitations already present in claim 1,

6   as discussed at the interview on July 16, 2009." Plaintiffs' Mtn. 18 (citing Plaintiffs' Ex. 21 at 7).

7   These limitations, including the "resubmission" of previously selected alternatives, were the

8   subject of prior arguments made to the examiner that limited the claims by implication.  (See

9   Danish Decl. at ¶ 10).  These prior arguments limit the claims.  However, Plaintiffs made no

10  effort to construe the claims in view of those comments.  Indeed, although Plaintiffs argue that it

11  would be difficult to conceive of "many situations in which the scope of a rejected claim that

12  became allowable when amended is not substantively changed by the amendment" (Plaintiffs'

13  Motion at 18, citing *Laitram*), Plaintiffs take no position themselves on whether the amendments

14  cited make the claims substantially or substantively different.  As such, Plaintiffs have failed to

15  carry their burdens.

16       Plaintiffs' citation to *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1249-51 (Fed.

17  Cir. 1997) is not availing.  In *Bloom*, claims were likewise amended, but it was found that the

18  amendments were not made to reflect limitations already in the claim by implication; rather, the

19  court found that the limitation was improperly imported from the specification:

20       The district court held that addition of the words "separate from the combustion air
         stream" was a substantive change in the scope of claims 2 and 13. Bloom argues
21       that this change merely clarified the nature of the gas stream as described in the
         specification and drawings, and that original claims 2 and 13, correctly construed,
22       were implicitly limited in the way that was made explicit by this amendment.

23       Bloom states that it was compelled to add these words to the claims because the
         reexamination examiner gave the "nozzle means" in original claim 13 an unduly
24       broad construction, in accordance with examination practices that have been
         approved by this court, thereby obliging Bloom to amend the claims to state
25       explicitly that the gas stream was separate from the combustion air stream. Bloom
         states that the separate gas steam was always an implicit limitation in the claims,
26       for that is the only method of operation illustrated in the specification. Bloom
         argues that in accordance with § 112 p 62 the "nozzle means" was already so
27       limited without its explicit recitation in claim 13, and thus its addition to claim 13
         was not a substantive change in scope.

28

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

The district court did not agree with Bloom's analysis. Nor do we. The specification describes the injected gas stream as a "source, which may include air, POC [products of combustion] or gaseous fuel." A separate gas stream was not a necessary limitation as set forth in the patent, and was not included in original claims 2 and 13. The amendment narrowed the claims to exclude an injected gas stream that includes combustion air, and to require a separate combustion air stream. This change was necessary in order to distinguish Bloom's injected stream from that shown in the British patent. The British patent was newly cited prior art, and the claims were narrowed and limited in view of that patent. The district court correctly viewed this as a substantive change in claim scope.

**F.      The Amendments to the '821 Patent During Reexamination Did Not Enlarge The Scope of the Claims**

Plaintiffs' Motion does not show by clear and convincing evidence that there was a broadening amendment during the reexamination.  The premise of Plaintiffs' argument that the "accepting" step originally required action by a user at a client computer is contrary to the language of the claims, the specification and the file history of the patent.

The test for determining whether a reexamined claim is broader than an original claim under 35 U.S.C. § 305 is the same as that in 35 U.S.C. § 251, last paragraph, for determining whether reissue claims filed more than two years after issuance of the original patent are broader than the original claims.  *Predicate Logic*, 544 F.3d at 1303, quoting *Quantum*, 65 F.3d at 1582 n.4.  "A claim of a reissue [or reexamination] application is broader in scope than the original claims if it contains within its scope any conceivable apparatus or process which would not have infringed the original patent." *Predicate Logic*, 544 F.3d at 1303, quoting *Hockerson-Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369, 1374 (Fed. Cir. 1999).

Plaintiffs assert that the claims originally ***required*** action by a user, whereas claims 1, 2 and 9 were amended to remove the requirement that the user perform the "accepting" step, thus broadening the claim to encompass servers that perform the "accepting" step.  Plaintiffs' Motion at 24.  "Whether amendments made during reexamination enlarge the scope of a claim is a matter of claim construction." *Creo Prods., Inc. v. Presstek, Inc.*, 305 F.3d 1337, 1344 (Fed. Cir. 2002). Such claim construction entails underlying factual findings regarding the original prosecution and the

reexamination proceedings, for which discovery is needed.[9] Nonetheless, Defendants

offer, at this early stage, a preliminary construction of "accepting" as used in the original

claims.

**Claim Language:**

The definition of "accepting" asserted by Plaintiffs is clearly contrary to law.

Claim construction starts with the language of the claims. Here, the original claim

language requires "*accepting"* a "**selection criteria"**, but did not specify where the

accepting was to take place. The amended claim likewise language requires "*accepting"*

*a* "**selection criteria"**, but also specifies that the "accepting" selection criteria take place

on a server. Steps (d) and (h) of reexamined claim 1, which include the disputed term

"accepting", are set forth here with amendments shown:

> 1. A method for assisting a user in identifying a subfamily of items within a family of items said method performed with a server connected to a client computer through a computer network, comprising the steps of:
>
> ...
> (d) accepting a first selection criteria of at least one alternative,
>
> ...
> (h) accepting a second selection criteria ~~comprising~~ <u>from said client computer via said computer network at said server wherein the second selection criteria comprises a resubmission to the server of</u> the alternative or alternatives of the first selection criteria plus at least one alternative selected from the revised feature screen,

As can be seen, the claims did not include any limitation specifying that the

accepting step be performed by a user at a client computer. The claim merely specifies

that the method include the steps of accepting a first and a second selection criteria. The

later amendment did not broaden the claim.

_____

[9] Plaintiffs' argument is without merit in claim construction law, requires discovery of underlying facts, and violates the Court's directive during the CMC that Plaintiffs' Motion should not require discovery or claim construction beyond the question of whether the scope of the original and amended claims is substantially identical. Plaintiffs' Ex. 33. at 30:16-18, 32: 5-6.) Accordingly, below, Kelora submits its request under Rule 56(d) for discovery and claim construction regarding the claim scope enlargement issues, as well as Kelora's objections to the same as being in violation of the Court's instructions during the CMC regarding the permissible content of Plaintiffs' Motion.

1    Plaintiffs argue that the claim language implies a choice by the user, but that is not

2    present in the claim language.  The examples of a user accepting or rejecting a selection

3    are not part of the claim and do not support Plaintiffs' argument.  As discussed below,

4    accepting in the context of the patent claims is not a user selection (or rejection), but

5    rather "accepting a selection criteria."  The selection criteria is something that is generated

6    from user selections.  Accepting necessarily takes place after the generation of the

7    selection criteria as it is the accepting of the selection criteria.  *See* Danish Decl. ¶¶ 13-14.

8    Finally, Plaintiffs' arguments go against the basic rules of claim construction,

9    which require that one not import limitations form the specification into the claims, and

10    that claim terms are used consistently.  Here, Plaintiffs are attempting to import

11    limitations into the claim and to define the term "accepting" in one fashion for the original

12    claims and in another fashion for the claims after reexamination.

13    **Specification:**

14    A key failing in Plaintiffs' argument is the incorrect assumption that accepting

15    corresponds to user selections.  For example, Plaintiffs state that users may accept or

16    reject selections by pushing on buttons one or two times, respectively.  Plaintiffs' Motion

17    at 20:27-21:3.  However, the claim specifically refers to accepting a first/second

18    "selection criteria".  The specification makes clear, however, that the selection criteria is

19    something that is generated from user selections.  The selection criteria, in turn, is what is

20    "accepted" by the system.

21    
22    **In an embodiment of the invention in an Internet environment, there is a server computer 125 and a client computer 126. All of the program files and data files described in the local embodiment reside on the server 125.**. ....

23    The client 126 initiates a request to the server 125 for the electronic catalog searching application via the Internet. The server 125 detects the request. Receipt of the request executes the requested application on the server 125 that permits a user on the client 126 to select a family 1 or subfamily 2. Example of Main Menu, Alphabetical search, Picture Search, and View Part Number screens are shown in FIGS. 31 through 35. When the family 1 or subfamily 2 is chosen, the server 125 sends a feature screen status 127 to the client 126. The feature screen status 127 comprises a feature screen code, ScreenNum 102 in a preferred embodiment, all features 5 appropriate to the feature screen 9 specified in ScreenNum 102, all available alternatives 7, all unavailable alternatives 8, and the selection criteria 14. As the selection criteria 14 is always sent, it may comprise zero selected alternatives 37. It is apparent, therefore, that the server 125 sends all of the

information necessary to define the current subfamily 2 to the client 126. The information, therefore, need not be retained in memory on the server 125. This particular feature renders it particularly appropriate for an Internet environment. The client 126 receives the feature screen status 127 and displays the feature screen 9 accordingly. An example of the feature screen 9 on the Internet is shown in FIGS. 26 through 29. **The user on the client, makes selections from among the available alternatives 7 generating a selection criteria 14 different from that which was set to it.** The client 126 initiates a search with the modified selection criteria 14. **The client 126 sends to the server 125**, the ScreenNum 102 value sent to it by the server, and **the modified selection criteria 14**. **The server 125 receives the ScreenNum 102 and the selection criteria 14**. The server 125 executes the search operation as disclosed hereinabove using the revised selection criteria 14 and generates the feature screen status 127. The server 125 sends the feature screen status 127 that has been updated based on the modified selection criteria 14 to the client 126. The client 126 receives the feature screen status 127 and displays the updated feature screen 9. This process may iterate similar to the local version to further narrow the subfamily as desired.

Plaintiffs' Ex. 1 ('821 Patent), Fig. 25 and 18:32-19:11

As can be seen from the description above, in the Internet embodiment, the program and data files all reside on a server. These files, which were all stored locally in the local embodiment, are responsible for the steps in the claimed methods. No claimed steps in the Internet embodiment are required to be performed on the user's computer.

Further, as can be seen from the description in the patent, the program files "receive" "selection criteria." In the Internet embodiment, the server receives selection criteria 14. In this context, it can be seen that the patent uses "receive" and "accept" nearly synonymously: a server may receive data for a variety of purposes, but the claim term "accepting" means "accepting for processing."

**Prosecution History**:

There is nothing in the prosecution history that could be used to limit the original claims with the requirement that the user perform the "accepting" step as Plaintiffs claim. Although Plaintiffs contend that the user may have been involved in the prior art, the issue is whether Defendants argued that the claims of the patent required that the user perform the accepting step in the file history. They did not.

**Testimony from one of skill in the art:**

Inventor Danish further makes clear that the "term 'accepting' in the '821 patent does not refer to selecting actions by the user.

It is clear from the '821 patent that the user act is not accepting, but selecting. The results of the selecting are used to generate a "selection criteria", which in the Internet embodiment is transmitted to the server. In the original claims, the server was neither required nor excluded. Nonetheless, the claims made it clear that the "accepting" step was something that was done after the "selection criteria" was "generated" from user selections. It was this selection criteria that was received and accepted by the system. Element (d) and (h) of the claims, for example, have always required "accepting a first/second selection criteria." The selection criteria is generated by the system and that generated selection criteria is what is received and accepted by the system for processing a search. Depending on the embodiment, the generated selection criteria is either received and accepted by the system locally or received and accepted on a server after transmission over a computer network for use in a search to assist the user as claimed.

Danish Decl. at ¶ 14.

**Divided Infringement:**

Finally, the divided infringement issue is a red herring. The broadening issue is only concerned with whether the scope of the claims has been broadened. They clearly were not.[10]

## G. Defendants Should be Permitted to Conduct Relevant Claim Construction Discovery before the Court Adjudicates Plaintiffs' Broadening Arguments.

As noted above, Plaintiffs' request for an adjudication of invalidity based on their broadening arguments violates the Court's instructions regarding the limited scope of the permitted early summary judgment motion. Moreover, those broadening arguments are not ripe for summary judgment because the Court has not yet conducted a claim construction hearing in this matter. In order to determine whether Defendants improperly broadened the scope of the

---

[10] The problem that Plaintiffs allege the original claims suffered from because of the "accepting" term was never ruled on by the Court. Plaintiffs' Motion 10:14-17. Nor, despite Plaintiffs' statements to the contrary, did the Court ever comment "that original claim 1 requires actions by the user". Plaintiffs' Motion 22:14-15. In Case No. 09-811, Plaintiffs filed a summary judgment motion in which they raised the issue of a potential divided infringement problem with the original claims. Plaintiffs' Ex. 9 at 13:12-16. During the hearing on that motion, the Court stated "There's clearly interaction from the user". Plaintiffs' Ex. 11 at 4:2. But, after an interruption by Plaintiffs' counsel, the Court continued:

> …the user -- I mean, they don't just hijack my computer and tell me what AMP parts I might want. The user has to ask for them. And then the user has to say what features they're interested in and all of that.

Contrary to Plaintiffs' claim, the Court does not appear to be endorsing a theory of divided infringement with respect to "accepting". Instead, the Court appears to be acknowledging this user action was ancillary to the performance of the claimed method: the entering of the alternatives which comprise the selection criteria accepted by the server when the method is performed.

1 claims during reexamination, as Plaintiffs assert, this Court must perform two claim constructions

2 – one for the original claims and another for the claims as amended.  It is wholly improper for

3 Defendants to have to oppose a motion for summary judgment of invalidity on a broadening

4 argument at this stage of the litigation.  Accordingly, the Court should dismiss Plaintiffs' motion

5 for summary judgment on the broadening arguments as premature, or else continue the matter

6 until the claim construction hearing in this case,

7      Alternatively, if the Court is inclined to consider Plaintiffs' broadening arguments at this

8 juncture, pursuant to Rule 56(d), Defendants respectfully requests that it be permitted to conduct

9 relevant claim construction discovery and to supplement its opposition to the broadening

10 arguments after the completion of such discovery.  Good cause exists for this request.  First, this

11 case is still at the outset.  The initial case management conference was conducted less than a

12 month ago and, as of the date of this Opposition, no case management scheduling order has yet

13 been issued.  Hansen Decl., ISO Opposition to Plaintiffs' Motion for Summary Judgment

14 ("Hansen Decl."), ¶2.  Similarly, the parties have not yet commenced any discovery in this case.

15 Hansen Decl., ¶ 3.

16      Fact discovery may be relevant to claim construction matters.  For example, the deposition

17 of the examiner during the reexamination proceedings is clearly relevant to claim construction

18 briefing and would be probative of Plaintiffs' arguments that the claims of the '821 Patent were

19 impermissibly broadened.   At a minimum, Defendants should be permitted to conduct this

20 unquestionably relevant discovery before the Court adjudicates Plaintiffs' motion with respect to

21 their broadening arguments.

22

23

24 ///

25 ///

26 ///

27 ///

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

23

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

1   **V.**   **CONCLUSION**

2           Defendants accordingly request the Court to deny Plaintiffs' Motion in its entirety.

3

4           DATED: April 14, 2011                MANATT, PHELPS & PHILLIPS, LLP

5
                                                By:  _/s/ Robert D. Becker_
6                                               Robert D. Becker
                                                Ronald S. Katz
7                                               Shawn G. Hansen

8                                               *Attorneys for Defendants*
                                                KELORA SYSTEMS, LLC
9                                               PARTSRIVER, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

24

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 14, 2011, all counsel of record who are deemed to have consented to electronic service are being served, via the Court's CM/ECF system pursuant to L.R. 5-4 and General Order 45, with a copy of the foregoing DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND/OR NO LIABILITY BEFORE NOV. 2, 2010.

By:  */s/ Robert D. Becker*
Robert D. Becker

300239796.5

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

25

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

# Exhibit 38

1    Marc R. Ascolese, <mascolese@sidley.com> (Bar No. 251397)
     SIDLEY AUSTIN LLP
2    555 California Street, Suite 2000
     San Francisco, California 94104
3    Telephone:   (415) 772-1200
     Facsimile:   (415) 772-7400
4

5    *Counsel for Plaintiffs and Counterclaim-Defendants*
     *eBay Inc. and Microsoft Corporation*

6    NOTE: Additional counsel and Plaintiff listed on signature page

7

8                      UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                         OAKLAND DIVISION

| | |
|---|---|
| eBay Inc. and Microsoft Corporation, | No. 4:10-cv-4947-CW (filed Nov. 2, 2010) |
| | No. 4:10-cv-5106-CW (filed Nov. 10, 2010) |
| *Plaintiffs and Counterclaim-Defendants,* | No. 4:10-cv-5108-CW (filed Nov. 10, 2010) |
| | No. 4:11-cv-0502-CW (filed Feb. 2, 2011) |
| vs. | |
| | **PLAINTIFFS' REPLY IN SUPPORT OF** |
| Kelora Systems, LLC, | **SUMMARY JUDGMENT OF INVALIDITY** |
| | **AND/OR NO LIABILITY BEFORE NOV. 2,** |
| *Defendant and Counterclaim-Plaintiff.* | **2010** |
| | |
| Shopzilla, Inc., | Hr'g Date:    Thursday, May 5, 2011 |
| | Hr'g Time:    2:00 p.m. |
| *Plaintiff and Counterclaim-Defendant,* | Place:        Courtroom 2, 4th Floor |
| vs. | |
| Kelora Systems, LLC, | |
| *Defendant and Counterclaim-Plaintiff.* | |

# **TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................. 1

II.  ARGUMENT ................................................................................................... 2

    A.  Kelora's evidentiary objections are baseless ...................................... 2

        1.  This Court has already determined that the screenshots in Exhibit E accurately show the operation of the AMP Navigator program ...................... 2

        2.  Plaintiffs' motion was properly supported by an exhibit list, without need for a declaration ............................................................ 3

    B.  Plaintiffs' motion for summary judgment rests only on issues of law, not any questions of fact ................................................................ 6

    C.  Kelora is collaterally estopped from relitigating issues decided by this Court's summary judgment in Case No. 09-811 ........................................ 6

    D.  Amended claims 1, 2, and 9 are not identical in scope to any original claim, and thus under 35 U.S.C. § 252 there cannot be any liability for those claims before November 2, 2010 .............................................................. 8

    E.  Reexamined claims 1, 2, and 9 are broader than the original claims in at least one respect, and thus under 35 U.S.C. § 305 they are invalid .................................. 10

    F.  Kelora's request to depose the Patent Office examiner is improper and thus fails to justify delaying resolution of this motion pursuant to Rule 56(d) ................. 12

III.  CONCLUSION ............................................................................................. 13

# TABLE OF AUTHORITIES

## Cases

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002)..................................................................................................9

*Fortel Corp. v. Phone-Mate, Inc.*,
    825 F.2d 1577 (Fed. Cir. 1987)...................................................................1, 9, 10

*Hartley v. Mentor Corp.*,
    869 F.2d 1469 (Fed. Cir. 1989)...................................................................8

*Hoffer v. Microsoft Corp.*,
    405 F.3d 1326 (Fed. Cir. 2005)...................................................................2, 12

*Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*,
    540 F.3d 1337 (Fed. Cir. 2008)...................................................................2, 12

*In re Freeman*,
    30 F.3d 1459 (Fed. Cir. 1994)...................................................................1, 7

*Kim v. Earthgrains Co.*,
    No. 01-3895, 2010 WL 625220 (N.D. Ill. Feb. 18, 2010) .........................9

*Kinstley v. City & County of San Francisco*,
    No. 07-2323, 2009 WL 1974607 (N.D. Cal. July 8, 2009) (Armstrong, J.) ...........5

*Laitram Corp. v. NEC Corp.*,
    163 F.3d 1342 (Fed. Cir. 1998) ("*Laitram IV*")...................................9

*Las Vegas Sands, LLC v. Nehme*,
    632 F.3d 526 (9th Cir. 2011) ...................................................................4

*Orr v. Bank of America, NT & SA*,
    285 F.3d 764 (9th Cir. 2002) ...................................................................4, 5

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc)...................................................12

*Providence Health Plan v. McDowell*,
    385 F.3d 1168 (9th Cir. 2004) ...................................................................7

*St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc.*,
    No. 2009-1052, 2011 WL 66166 (Fed. Cir. Jan. 10, 2011) (unpublished)...........4

*Standard Havens Prods., Inc. v. Gencor Indus. Inc.*,
    897 F.2d 511 (Fed. Cir. 1990)...................................................................4

*Trevino v. Gates*,
    99 F.3d 911 (9th Cir. 1996) ...................................................................8

*W. Elec. Co., Inc. v. Piezo Tech., Inc.*,
    860 F.2d 428 (Fed. Cir. 1988)...................................................................2, 13

### Statutes

35 U.S.C. § 252, ¶ 1 ................................................................................ 1, 6, 9, 10

35 U.S.C. § 252, ¶ 2 ................................................................................ 9

35 U.S.C. § 305 ........................................................................................ 1, 10, 12

35 U.S.C. § 307(b) .................................................................................... 6

### Rules

Civil L.R. 7-5 ............................................................................................ 4, 5

Fed. R. App. P. 42 .................................................................................... 8

Fed. R. Civ. P. 56(c)(4) ............................................................................ 4, 5

Fed. R. Civ. P. 56(d) ................................................................................ 2, 12, 13

Fed. R. Civ. P. 56(e) ................................................................................ 4, 5

Fed. R. Civ. P. 56(f) ................................................................................ 13

Fed. R. Civ. P. 83(a)(1) ............................................................................ 5

Fed. R. Evid. 201(b) .................................................................................. 5

Fed. R. Evid. 901(b) .................................................................................. 4, 5

Fed. R. Evid. 902 ...................................................................................... 5

### Other Authorities

Manual of Patent Examining Procedure (MPEP) § 1701.01 ...................... 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Kelora[1] has not shown that the amended claims 1, 2, and 9 are "identical" in scope to any original claim. To the contrary, its opposition brief admits that the amended claims are "different" from the original claims, *see* Defs.' Mem. at 15:12, which is consistent with its previous admission that the "*scope* of the amended claims is *different* from the original claims," Ex. 31 at 12.[2] In light of Kelora's repeated admissions that the amended claims are different, "[n]o further discussion is necessary." *Fortel Corp. v. Phone-Mate, Inc.*, 825 F.2d 1577, 1581 (Fed. Cir. 1987) (affirming summary judgment under 35 U.S.C. § 252, ¶ 1). Under 35 U.S.C. § 252, ¶ 1, there can be no liability for claims 1, 2, and 9 before the reexamination certificate issued on November 2, 2010.

Although the amended claims are different from the original claims, this Court's summary judgment invalidating the original claims is still binding on Kelora and precludes it from relitigating the same *issues* that were previously decided by the Court. "[I]ssue preclusion . . . . does not include any requirement that the *claim* (or cause of action) in the first and second suits be the *same*." *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994). Only the *issues* must be the same. Thus, for example, Kelora's evidentiary objections to the screenshots used in Plaintiffs' opening brief must be overruled because this Court's summary judgment ruling has already concluded that there is no genuine dispute that those screenshots accurately show the operation of the AMP Navigator program (the first reduction to practice of original claim 1 in the '821 patent). *See* Ex. 12 at 13:5–:8 (Order granting summary judgment); *see also* Ex. 11 at 19:11–21:13 (transcript of hearing where the screenshots were discussed). Issue preclusion prevents Kelora from relitigating previously-decided issues such as this.

With respect to invalidity under 35 U.S.C. § 305, the dispute boils down to whether the "accepting" step in the *original* claims had to be performed on the *user*'s computer. If so, it is undisputed that the *amended* claims (which admittedly require the "accepting" step to be performed

---

[1] The Court recently dismissed PartsRiver from Case Nos. 10-4947, 10-5106, and 10-5108. *See* Case No. 10-1947, Docket No. 61.

[2] Unless stated otherwise, all emphasis in quotes throughout this brief has been added.

on the **server**) would be broader, and thus invalid under § 305, because they could encompass activity that previously could not have infringed the original patent. The **intrinsic** evidence (i.e., the patent and prosecution history) confirms that the "accepting" step in the original claims had to be performed on the **user**'s computer. Kelora's opposition relies heavily on a self-serving declaration by Danish (the first-named inventor, CEO of PartsRiver, and managing member of Kelora), but **extrinsic** evidence like that is entitled to essentially no weight: "The testimony of an inventor 'cannot be relied on to change the meaning of the claims.'" *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1346 (Fed. Cir. 2008).

Finally, Kelora argues that resolution of Plaintiffs' motion for summary judgment should be delayed under Rule 56(d) so that Kelora can depose the Patent Office examiner who conducted the reexamination proceedings. This argument is meritless. "[T]he party seeking discovery must show that the evidence sought could preclude the grant of summary judgment." *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1332 (Fed. Cir. 2005). It is impermissible to depose an examiner about his thoughts on claim construction, *see W. Elec. Co., Inc. v. Piezo Tech., Inc.*, 860 F.2d 428, 432 (Fed. Cir. 1988) (precluding depositions concerning an examiner's "bases, reasons, mental processes, analyses or conclusions"), and thus there is nothing the examiner would say that could possibly preclude Plaintiffs' motion for summary judgment.

## II.  ARGUMENT

### A.  Kelora's evidentiary objections are baseless

Tellingly, Kelora tries to avoid the merits of Plaintiffs' motion with baseless evidentiary objections.

#### 1.  This Court has already determined that the screenshots in Exhibit E accurately show the operation of the AMP Navigator program

First Kelora argues that the screenshots in Exhibit 10 to Plaintiffs' motion (which was Exhibit E to the motion for summary judgment in Case No. 09-811) should be stricken on the basis that the screenshots are "attorney argument, not evidence." Defs.' Mem. at 5:7. To the contrary, this Court has already determined that there is no genuine dispute that the screenshots in Exhibit E accurately show the operation of Danish's AMP Navigator program:

> Defendants also submitted CDs containing a copy of the actual demo program. Defs. Exs. Q & R (Doc. Nos. 228 & 229). The demo program recreates the snapshots provided in Defendants' Exhibit E, including step 1(h).

Ex. 12 at 13:5–:8 (Order granting summary judgment); *see also* Ex. 11 at 19:11–21:13 (transcript of hearing where the screenshots in Exhibit E were discussed). As explained in Plaintiffs' motion, this Court's summary judgment ruling has preclusive effect in this action, *see* Pls.' Mot. at 13:16–14:22 & 15 n.5, and thus Kelora cannot relitigate this Court's determination that the screenshots in Exhibit E are accurate.

In any event, the screenshots are ***evidence***, not merely attorney argument. When the screenshots were originally filed as Exhibit E in Case No. 09-811, they were supported by a declaration that explained exactly how the screenshots were made:

> I used the "AMP Navigator" program on Exhibit R to create the screenshots shown in Exhibit E. In particular, I created the directory "C:\CPC" on a personal computer running Windows XP; I copied the files from the "CPC" directory on Exhibit R to the directory "C:\CPC" on the personal computer; I launched the program "NAVIGATE.EXE"; and I used the "PrtScn" button on my keyboard to capture screenshots of the program while running on the personal computer. I then cropped those screenshots, annotated them with red arrows and circles, and added page numbers, as shown in Exhibit E.

Chandler Decl. ¶ 6 (May 28, 2009) [Case No. 09-811, Docket No. 224].[3] To avoid any doubts, Plaintiffs are resubmitting this declaration from Case No. 09-811 along with this reply brief. Thus this Court may once again verify for itself — just as it did in Case No. 09-811 — that the screenshots accurately show the operation of Danish's AMP Navigator program, notwithstanding the suggestions to the contrary by Kelora.

### 2. <u>Plaintiffs' motion was properly supported by an exhibit list, without need for a declaration</u>

Next Kelora argues that the exhibits to Plaintiffs' motion should be stricken — and Plaintiffs' motion denied on evidentiary grounds — because "no facts alleged in Plaintiffs' Motion are

---

[3] The exhibits to this declaration originally were filed under seal on May 28, 2009, in Case No. 09-811, *see* Docket Nos. 202–03, but the parties to that case later agreed that nothing in the declaration was confidential, so the entire declaration (including exhibits) was re-filed as a public document on July 7, 2009, *see* Docket No. 224.

1   supported by a declaration as required under Fed. R. Civ. P. 56 and Civil L.R. 7-5." Defs.' Mem. at

2   5:10–:11. Kelora does not dispute the authenticity of the exhibits (all of which came from the public

3   record); it just argues that the exhibits had to be attached to a declaration.

4          To the contrary, declarations are not required to support a motion for summary judgment:

5              Federal Rule of Civil Procedure 56(e)[4] does **not** require that all
               documents be authenticated through personal knowledge when
6              submitted in a summary judgment motion. Such a requirement is
               limited to situations where exhibits are introduced by being attached to
7              an affidavit. *Compare* Fed. R. Civ. P. 56(e) (bearing the heading
               "Form of Affidavits"), *with* Fed. R. Evid. 901(b) (providing ten
8              methods to authenticate evidence). For instance, documents attached
               to an ***exhibit list*** in a summary judgment motion could be
9              authenticated by review of their contents if they appear to be
               sufficiently genuine. *See* Fed. R. Evid. 901(b)(4).

10  *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 778 n.24 (9th Cir. 2002). Indeed, the Ninth Circuit

11  has specifically rejected the argument that a motion for summary judgment must be supported by a

12  ***declaration***. *See Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011) (reversing

13  district court that excluded summary judgment evidence on the mistaken belief that "evidence must

14  be authenticated by a competent witness with personal knowledge of their authenticity").

15         Plaintiffs' motion was properly supported by an ***exhibit list***, rather than a declaration. The

16  exhibits to Plaintiffs' motion — the patent-in-suit, the prosecution history to the patent-in-suit, and

17  the filings from this case and the earlier Case No. 09-811 — all came from the public record, which

18  this Court may take judicial notice of. *See Standard Havens Prods., Inc. v. Gencor Indus. Inc.*, 897

19  F.2d 511, 514 n.3 (Fed. Cir. 1990) (taking judicial notice of public records); *St. Clair Intellectual*

20  *Prop. Consultants, Inc. v. Canon Inc.*, No. 2009-1052, 2011 WL 66166, at *5 n.1 (Fed. Cir. Jan. 10,

21  2011) (unpublished) ("this court can take judicial notice of the reexamination record").

22         Indeed, most of the exhibits to Plaintiffs' motion were from the *ex parte* reexamination of the

23  patent-in-suit[5] — which by definition neither Plaintiffs nor their attorneys had personal involvement

24

25          [4] In 2009, Rule 56 was amended such that the section on "Affidavits" now appears at Rule
        56(c)(4).

26          [5] The papers from the *ex parte* reexamination of the patent-in-suit are available on the Patent
27      Office's website, <http://portal.uspto.gov/external/portal/pair>, by searching for Application No.
        90/009,316 and then clicking on "Image File Wrapper."

28

with — and thus it would have been **improper** to try to introduce those documents by way of a **declaration**:

> Because Orr attempted to introduce Exhibit M by attaching it to [her attorney's] affidavit, Federal Rule of Civil Procedure 56(e) requires that [the attorney] have personal knowledge of the letter. Had Orr submitted the letter by attaching it to an **exhibit list** (rather than to [the attorney's] affidavit), the alternative means to authentication permitted by Federal Rule of Evidence 901(b) and 902 would have to be considered.

*Orr*, 285 F.3d at 777–78 (footnotes omitted) (affirming exclusion of evidence attached to affidavit).

PartsRiver and Kelora participated in the reexamination of the patent-in-suit, and submitted many of the same documents to this Court in support of PartsRiver's motion to vacate, *see* Case No. 09-811, Docket No. 261, so they have no good-faith basis for any evidentiary objections to Plaintiffs' exhibits. Indeed, Kelora never disputes the authenticity of any of the exhibits. The sole basis for Kelora's objection appears to be that Civil L.R. 7-5(a) states that "[f]actual contentions made in support of or in opposition to any motion must be supported by an affidavit or declaration." But "[a] local rule must be consistent with . . . federal statutes and rules," Fed. R. Civ. P. 83(a)(1), and as explained above the federal rules do not require a motion for summary judgment to be supported by an affidavit or declaration — and they actually would preclude Plaintiffs from trying to use a declaration to introduce the documents from the *ex parte* reexamination of the patent-in-suit — and thus Civil L.R. 7-5(a) cannot be interpreted in the manner suggested by Kelora. Nor does the case cited by Kelora support its objection. That case merely quoted Civil L.R. 7-5 and warned a *pro se* litigant that the photographs she submitted in opposition to a motion for summary judgment did not comply with either Rule 56 or Civil L.R. 7-5. *See Kinstley v. City & County of San Francisco*, No. 07-2323, 2009 WL 1974607, at *2 (N.D. Cal. July 8, 2009) (Armstrong, J.). The exhibits to Plaintiffs' motion, by way of contrast, comply with Rule 56 and Federal Rules of Evidence 201(b) and 901(b)(4) & (7).

<div align="center">*     *     *     *     *</div>

For all of these reasons, Kelora's evidentiary objections are without merit.

**B.**     **Plaintiffs' motion for summary judgment rests only on issues of law, not any questions of fact**

Throughout its opposition, Kelora argues that there are factual disputes, *see* Defs.' Mem. at 8 n.5, and that Plaintiffs have a burden of "clear and convincing evidence," Defs.' Mem. at 11:8, 13:20–:26.  But Plaintiffs' motion only raises questions of law.  Plaintiffs' motion for summary judgment does not raise any questions of fact, and thus the "clear and convincing" standard is not relevant to any issue the Court must decide.

**C.**     **Kelora is collaterally estopped from relitigating issues decided by this Court's summary judgment in Case No. 09-811**

Kelora does not dispute the legal principle that judgments against an owner of property (e.g., PartsRiver) are binding on *subsequent* owners of that property (e.g., Kelora).  *Compare* Pls.' Mot. at 13:16–14:17, *with* Defs.' Mem. at 11:20–13:17.  Instead Kelora argues that this Court's summary judgment in Case No. 09-811 has no preclusive effect whatsoever because original claims 1 and 2 of the '821 patent allegedly "no longer exist."  Defs.' Mem. at 12:12.

With respect to claim preclusion (sometimes called res judicata), the question is not whether the original claims still "exist."  The question is whether the amended claims are "identical" in scope to original claims 1 and 2.  If so, then as a legal matter the amended claims are treated as if they were original claims 1 and 2:

> [I]n so far as the claims of the original and reissued patents are identical, [the issuance of the reissued patent] ***shall not affect any action then pending nor abate any cause of action then existing***, and the reissued patent, to the extent that its claims are identical with the original patent, shall constitute a continuation thereof and ***have effect continuously from the date of the <u>original</u> patent***.

35 U.S.C. § 252, ¶ 1 (Supp. I 1996); *see also* 35 U.S.C. § 307(b) (applying § 252 to reexamined claims).

If the amended claims are "identical" in scope to original claims 1 and 2, then all the elements of claim preclusion would be present: (i) an identity of claims, (ii) the previous action must have resulted in a final judgment on the merits (*see* Exs. 12–13), and (iii) the current action must involve the same parties or persons in privity therewith (a point that Kelora does not dispute, as discussed above).  *See* Defs.' Mem. at 12:6–:9 (citing *Providence Health Plan v. McDowell*, 385

-6-

F.3d 1168, 1173–74 (9th Cir. 2004) (applying claim preclusion)).  In that case, Plaintiffs would be entitled to final judgment, as Kelora would be reasserting claims already invalidated by this Court in the prior action.

Regardless of whether the amended claims are "identical," however, *issue* preclusion (also known as collateral estoppel) prevents Kelora from relitigating the issues already decided by this Court's summary judgment in Case No. 09-811.  *See* Pls.' Mot. at 15 n.5.  Unlike claim preclusion, "issue preclusion . . . . does not include any requirement that the *claim* (or cause of action) in the first and second suits be the *same*."  *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994).  Only the *issues* must be the same.  Thus, for example, Kelora is precluded in this action from relitigating the following issues that were actually decided by this Court's summary judgment in Case No. 09-811:

- Original claims 1 and 2 of the '821 patent were "on sale" in the United States before October 14, 1993.  *See* Ex. 12 at 13:10–:14.

- The AMP Navigator program was a reduction to practice of each and every limitation of original claims 1 and 2 of the '821 patent.  *See id.* at 11:9–:21.

- The AMP Navigator program was the subject of a "commercial offer for sale" before October 14, 1993.  *See id.* at 8:21–10:25.

- The AMP Navigator program was "ready for patenting" before October 14, 1993.  *See id.* at 10:26–13:9.

- The AMP Navigator was not an "experimental use."  *See id.* at 10:17–:25, 11:22–12:6.

- The screenshots in  Exhibit E to the motion for summary judgment in Case No. 09-811 (which is the same as Exhibit 10 to this motion) accurately show the operation of the AMP Navigator program.  *See id.* at 12:22–13:8.

Already Kelora is trying to relitigate the last point — that the screenshots in Exhibit 10 accurately show the operation of Danish's AMP Navigator program.  *See supra* Part II.A.1, p. 2.  And it is clear from Kelora's gratuitous discussion of the requirements for the "on sale" bar that Kelora hopes to re-litigate at trial each and every one of the issues above.  *See* Defs.' Mem. at 14:7–15:9.  But all the elements of issue preclusion are present: (i) the issue at stake must be identical to the one alleged in

PLAINTIFFS' REPLY IN SUPPORT OF SUMMARY JUDGMENT
Nos. 10-4947-CW, 10-5106-CW, 10-5108-CW, 11-502-CW

the prior litigation (see the issues listed above), (ii) the issue must have been actually litigated by the party against whom preclusion is asserted in the prior litigation (a point that Kelora does not dispute, as discussed above), and (iii) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action (see the issues listed above, all of which were necessary to this Court's summary judgment ruling). *See* Defs.' Mem. at 13:2–:6 (citing *Trevino v. Gates*, 99 F.3d 911, 923 (9th Cir. 1996) (applying collateral estoppel)). Thus issue preclusion prevents Kelora from relitigating the previously-decided issues listed above.

Finally, Kelora argues that issue preclusion should not apply because PartsRiver — the previous owner of the patent — "did not have a full and fair opportunity to litigate the Court's Summary Judgment Order because PartsRiver's appeal was dismissed as moot by the Federal Circuit." Defs.' Mem. at 13:11–:12. To the contrary, PartsRiver ***voluntarily*** dismissed its own appeal pursuant to Federal Rule of Appellate Procedure 42 on the eve of oral arguments before the Federal Circuit, and thus Kelora cannot point to any determination by the Federal Circuit that the appeal was moot. *See* Ascolese Decl. Ex. A at 13:12–14:21 (Feb. 24, 2011) [Case No. 10-4947, Docket No. 31]. In the words of this Court, "PartsRiver, ***by its own acts***, circumvented appellate review of the Court's judgment." Ex. 34 at 6:2–:3 (denying PartsRiver's motion to vacate). PartsRiver's "voluntary relinquishment of [its] right to appeal" certainly does not provide a basis for avoiding the doctrine of issue preclusion. *Hartley v. Mentor Corp.*, 869 F.2d 1469, 1472 (Fed. Cir. 1989) (applying Ninth Circuit law and affirming that prior summary judgment of invalidity due to the on-sale bar precluded relitigation of the same issues). PartsRiver had a full and fair opportunity to litigate, both in this Court and before the Federal Circuit. Accordingly, Kelora — as the subsequent owner of PartsRiver's patent — is precluded from relitigating the same issues all over again.

**D.     Amended claims 1, 2, and 9 are not identical in scope to any original claim, and thus under 35 U.S.C. § 252 there cannot be any liability for those claims before November 2, 2010**

Kelora concedes that amended claims 1, 2, and 9 are "***different*** from the original claims of the '821 patent." Defs.' Mem. at 15:12–:13. But at the same time — in an attempt to preserve a claim to damages before the reexamination certificate issued on November 2, 2010 — Kelora argues

that amended claims 1, 2, and 9 are "substantially *identical*"[6] to the original claims under 35 U.S.C. § 252 ¶ 1[7] simply because Plaintiffs allegedly have failed to prove otherwise.  *See id.* at 16:1–:4.

Kelora has it backwards.  If Kelora want to pursue infringement and damages before November 2, 2010, then *it* has the burden of showing that amended claims 1, 2, and 9 are identical in scope to the original claims under 35 U.S.C. § 252, ¶ 1:  "[The patentee] has the burden of proving patent infringement at trial and thus has the burden of proving the possibility of patent infringement to avoid summary judgment.  Furthermore, the patent-holder has the burden to establish the reason for amendments made during patent prosecution."  *Kim v. Earthgrains Co.*, No. 01-3895, 2010 WL 625220, at *3 (N.D. Ill. Feb. 18, 2010) (footnotes omitted) (granting summary judgment to the accused infringer because the patentee failed to establish that the scope of the claims remained unchanged when the claims were amended during reexamination).

Kelora has failed to show that the amendments made during reexamination to overcome the rejections based on the Granacki prior art did *not* change the scope of those claims.  To the contrary, the record shows that the Patent Office required *narrowing* amendments to the claims, *see* Exs. 19, 27; otherwise the Patent Office would not have allowed the amended claims over the Granacki prior art, *see* Ex. 29.  According to the Federal Circuit, "it is difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not *substantively changed* by the amendment."  *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1348 (Fed. Cir. 1998) ("*Laitram IV*").  And the Supreme Court has held in a related context that "[a patentee's] decision to forgo an appeal and submit an amended claim is taken as a *concession* that the invention as patented *does not* reach as far as the original claim."  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734 (2002).

---

[6] As explained in Plaintiffs' opening motion, the version of 35 U.S.C. § 252 ¶ 1 that applies to this case uses the word "identical" rather than the phrase "substantially identical."  *See* Pls.' Mot. at 16 n.6.  Kelora does not dispute this.  *See* Defs.' Mem. at 16 n.8.

[7] Kelora refers to "intervening rights" throughout its brief, *see, e.g.*, Defs.' Mem. at 15:10, 16:1–:2, but Plaintiffs' motion does not concern intervening rights.  "The doctrine [of intervening rights] is codified in the *second* paragraph of section 252."  *Fortel Corp. v. Phone-Mate, Inc.*, 825 F.2d 1577, 1580 (Fed. Cir. 1987).  Plaintiffs' motion only concerns the *first* paragraph of section 252.  *See* Pls.' Mot. at 16:2–17:8 & n.7.

Instead of showing that the amended claims are "identical" in scope to the original claims, Kelora has admitted that the amended claims are "different." Defs.' Mem. at 15:12; *see also* Ex. 31 at 12 (Jan. 21, 2011) ("*scope* of the amended claims is *different* from the original claims."); *id.* at 8 ("substantively different"); Ex. 33 at 27:24–28:1 (Mar. 17, 2011) ("they're different"). In light of Kelora's repeated admissions, "[n]o further discussion is necessary." *Fortel Corp. v. Phone-Mate, Inc.*, 825 F.2d 1577, 1581 (Fed. Cir. 1987) (affirming summary judgment under 35 U.S.C. § 252, ¶ 1).

**E.     Reexamined claims 1, 2, and 9 are broader than the original claims in at least one respect, and thus under 35 U.S.C. § 305 they are invalid**

The parties agree that step (h) in the *amended* claims is performed by the *server*. *Compare* Pls.' Mot. at 23:18–:25, *with* Defs.' Mem. at 19:8–:10. Thus for purposes of this motion, the only claim construction question is whether step (h) in the *original* claims must be performed by the *user* on a client computer. If so, then Kelora does not dispute that the amended claims are invalid under 35 U.S.C. § 305 because they are broader than the original claims in at least one respect. *Compare* Pls.' Mot. at 24:3–25:2, *with* Defs.' Mem. at 22:10–:12.

Step (h) in original claim 1 states: "*accepting* a second selection criteria comprising the alternative or alternatives of the first selection criteria plus at least one alternative selected from the revised feature screen." *See* Ex. 1 at 19:56–:60.

Kelora argues that "accepting" can be performed by the computer, rather than the user, but there is no support in the patent for that conclusion. The act of "accepting" implies a *choice* of either "accepting" or "rejecting" the selection criteria. There is no disclosure in the patent of the *computer* ever deciding whether to "accept" or "reject" the selection criteria; to the contrary, the patent discloses that the computer *always* performs a search on the selection criteria it receives. The only decision whether to "accept" or "reject" the selection criteria is made by the *user*. In particular, the user can select and deselect as many criteria (or alternatives) as the user desires. After the user is satisfied with all his choices, he *accepts* the criteria he has selected (i.e., the "selection criteria") by clicking on the "search" button (208). As shown in Figure 7 below, the "search" button 208 has a

-10-

"check mark" on it, thus highlighting where the user must click to "accept" the criteria he has

selected:



Positioning the interactive pointer 39 and clicking the mouse once, toggles a radiobutton 23 or listbox entry 16 to *select* ("on") or *deselect* ("off") an alternative 6. While in the feature screen 9, the user may *select* and *deselect* turning radiobuttons 23 and listbox entries 16 "on" and "off" as desired. In response to a user initiated signal to perform a search, the system retrieves information concerning which user selectors 16, 23 are turned "on" and to which alternatives 6 the user selectors 16, 23 that are turned "on" relate. The alternatives 6 turned "on" are the selected alternatives 37 and constitute the selection criteria 14 used in the search to generate a subfamily 2.

. . . .

Erasure pushbutton 206 resets all currently selected alternatives 37. . . . *Search pushbutton 208 performs a search according to the selection criteria 14*.

Ex. 1 at 7:38–:49, 8:1–:5 & fig.7.

The AMP Navigator program (which this Court found was a reduction to practice of original

claim 1, *see* Ex. 12 at 11:9–:21) operates in the same way: a user can select and deselect as many

criteria (alternatives) as the user desires. After the user is satisfied with his choices, he *accepts*

the criteria he has selected (i.e., the "selection criteria") by clicking on the "Search" button. The Court may run the AMP Navigator software for itself to verify this feature. *See* Chandler Decl. ¶ 6 (explaining how to run the AMP Navigator software on a Windows computer).

Kelora does not cite anything in the claims, specification, or prosecution history that compels a different conclusion. *See* Defs.' Mem. at 19:4–21:25. In the end, Kelora resorts to a declaration written by Danish (the first-named inventor) to support its proposed construction. But claim construction is an issue of law for the Court to decide based primarily on the intrinsic evidence (e.g., the patent and its prosecution history), and thus a declaration by an inventor or expert has minimal weight: "The testimony of an inventor 'cannot be relied on to change the meaning of the claims.'" *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1346 (Fed. Cir. 2008). "[E]xtrinsic evidence consisting of expert reports and testimony is generated at the time of and for the purpose of litigation and thus can suffer from *bias* that is not present in intrinsic evidence." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (en banc). In this case, Danish is not only the inventor, he is also the CEO of PartsRiver and a managing member of Kelora, and thus he has a strong financial interest to provide a biased, self-serving declaration. Under these circumstances, Danish's declaration about claim construction is entitled to essentially no weight.

The proper construction for step (h) in original claim 1 requires the "accepting" step to be performed by a user on the client computer, not by a server, and thus the amended claims (which require the "accepting" step to be performed by a server) are invalid under 35 U.S.C. § 305 because they are broader than the original claims in at least one respect. *See* Pls.' Mot. at 24:3–25:2.

F.  **Kelora's request to depose the Patent Office examiner is improper and thus fails to justify delaying resolution of this motion pursuant to Rule 56(d)**

In a last-ditch effort to avoid summary judgment, Kelora argues that resolution of Plaintiffs' motion for summary judgment should be delayed under Rule 56(d) so that Kelora can depose the Patent Office examiner who conducted the reexamination proceedings. *See* Defs.' Mem. at 23:17–:21. "[T]he party seeking discovery must show that the evidence sought could preclude the grant of summary judgment." *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1332 (Fed. Cir. 2005) (applying

-12-

1    Ninth Circuit law and affirming denial of Rule 56(f)[8] motion). Kelora argues that the "the

2    deposition of the examiner during the reexamination proceedings is clearly relevant to claim

3    construction briefing and would be probative of Plaintiffs' arguments that the claims of the '821

4    Patent were impermissibly broadened," Defs.' Mem. at 23:16–:19, but in fact it is ***impermissible*** to

5    depose an examiner about his thoughts on claim construction, *see W. Elec. Co., Inc. v. Piezo Tech.,*

6    *Inc.*, 860 F.2d 428, 432 (Fed. Cir. 1988) (precluding depositions concerning an examiner's "bases,

7    reasons, mental processes, analyses or conclusions"); *accord* Manual of Patent Examining Procedure

8    (MPEP) § 1701.01 ("Office Personnel Not To Testify"), *available at*

9    <http://www.uspto.gov/web/offices/pac/mpep/documents/1700_1701_01.htm#sect1701.01>. Thus

10   Kelora has failed to show under Rule 56(d) how its proposed discovery could preclude Plaintiffs'

11   motion for summary judgment.

12   **III.    CONCLUSION**

13           For all of these reasons, Plaintiffs' motion should be GRANTED as set forth in the Proposed

14   Order.

---

[8] In 2009, Rule 56 was amended to move the provisions in what was Rule 56(f) to what is now Rule 56(d).

Dated:  April 21, 2011

By:  /s/ Richard A. Cederoth

David T. Pritikin (*pro hac vice*)
    <dpritikin@sidley.com>
Richard A. Cederoth (*pro hac vice*)
    <rcederoth@sidley.com>
SIDLEY AUSTIN LLP
One S. Dearborn Street
Chicago, Illinois  60603
Telephone:    (312) 853-7000
Facsimile:     (312) 853-7036

Theodore W. Chandler (Bar No. 219456)
    <tchandler@sidley.com>
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California  90013
Telephone:    (213) 896-6000
Facsimile:     (213) 896-6600

Marc R. Ascolese (Bar No. 251397)
    <mascolese@sidley.com>
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, California  94104
Telephone:    (415) 772-1200
Facsimile:     (415) 772-7400

<Kelora-Microsoft-eBay@sidley.com>

*Counsel for Plaintiff and Counterclaim-Defendant eBay Inc.*

Dated: April 21, 2011

By: /s/ Richard A. Cederoth

David T. Pritikin (*pro hac vice*)
　　<dpritikin@sidley.com>
Richard A. Cederoth (*pro hac vice*)
　　<rcederoth@sidley.com>
SIDLEY AUSTIN LLP
One S. Dearborn Street
Chicago, Illinois 60603
Telephone:　(312) 853-7000
Facsimile:　(312) 853-7036

Theodore W. Chandler (Bar No. 219456)
　　<tchandler@sidley.com>
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone:　(213) 896-6000
Facsimile:　(213) 896-6600

Marc R. Ascolese (Bar No. 251397)
　　<mascolese@sidley.com>
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, California 94104
Telephone:　(415) 772-1200
Facsimile:　(415) 772-7400

<Kelora-Microsoft-eBay@sidley.com>

David E. Killough (Bar No. 110719)
　　<davkill@microsoft.com>
MICROSOFT CORPORATION
One Microsoft Way, 8/2076
Redmond, Washington 98052
Telephone:　(425) 703-8865
Facsimile:　(425) 869-1327

*Counsel for Plaintiff and Counterclaim-Defendant Microsoft Corporation*

PLAINTIFFS' REPLY IN SUPPORT OF SUMMARY JUDGMENT
Nos. 10-4947-CW, 10-5106-CW, 10-5108-CW, 11-502-CW

Dated:  April 21, 2011

By:  /s/ Jordan Trent Jones

Jordan Trent Jones (Bar No. 166600)
<jtjones@jordanjonesiplaw.com>
LAW OFFICES OF JORDAN TRENT JONES
100 Spear Street, 18th Floor
San Francisco, California  94105
Telephone:    (415) 357-8940
Facsimile:    (415) 371-0500

James G. Gilliland Jr. (Bar No. 107988)
<jgilliland@kilpatricktownsend.com>
KILPATRICK TOWNSEND & STOCKTON LLP
Two Embarcadero Center, Eighth Floor
San Francisco, California  94111
Telephone:    (415) 576-0200
Facsimile:    (415) 576-0300

Eric M. Hutchins (Bar No. 245462)
<ehutchins@kilpatricktownsend.com>
Hogene L. Choi (Bar No. 256617)
<hchoi@kilpatricktownsend.com>
KILPATRICK TOWNSEND & STOCKTON LLP
379 Lytton Avenue
Palo Alto, California  94301
Telephone:    (650) 326-2400
Facsimile:    (650) 326-2422

*Counsel for Plaintiff and Counterclaim-
Defendant Shopzilla, Inc.*

# **SIGNATURE ATTESTATION**

Pursuant to General Order No. 45(X)(B), I hereby certify that concurrence in the filing of this document has been obtained from each of the other signatories shown above.

<div align="center">

_____/s/ Marc R. Ascolese_____

</div>

1

## <u>EXHIBITS</u>

2

Ex. 34:    Order denying PartsRiver's motion to vacate (Apr. 21, 2011) [Case No. 09-811, Docket

3                    No. 278]

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY IN SUPPORT OF SUMMARY JUDGMENT
Nos. 10-4947-CW, 10-5106-CW, 10-5108-CW, 11-502-CW

# Exhibit 39

Pages 1 - 33

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CLAUDIA WILKEN, JUDGE

| | |
|---|---|
| EBAY, INC., ET AL., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. C 10-4947 CW |
| vs. | ) C 10-5106 CW |
| | ) C 10-5108 CW |
| PARTSRIVER, INC., ET AL., | ) |
| | ) Oakland, California |
| | ) Thursday, May 5, 2011 |
| Defendants. | ) |
| | ) |

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

FOR PLAINTIFF:                    SIDLEY AUSTIN, LLP
                                 555 WEST FIFTH STREET, SUITE 4000
                                 LOS ANGELES, CALIFORNIA 90013
                  BY:            **Marc R. Ascolese, Attorney at Law**
                                 **Theodore W. Chandler,**
                                 **Attorney at Law**


                                 EBAY, INC.
                                 2145 HAMILTON AVENUE
                                 SAN JOSE, CALIFORNIA 95125
                  BY:            **Rory Bens,**
                                 **Senior Patent Litigation Counsel**


(FURTHER APPEARANCES ON NEXT PAGE.)

REPORTED BY: SARAH L. GOEKLER, CSR NO. 13446
Computerized Technology By Eclipse

**FURTHER APPEARANCES:** (CONT'D)

**FOR DEFENDANT:**               MANATT, PHELPS & PHILLIPS, LLP
                                 1001 PAGE MILL ROAD, BUILDING 2
                                 PALO ALTO, CALIFORNIA 94304
                        **BY:**  **Robert Becker, Attorney at Law**
                                 **Ben Kleinman, Attorney at Law**
                                 **Ron Katz, Attorney at Law**

```
1   Thursday, May 5, 2011                        2:00 p.m.

2                     P R O C E E D I N G S

3            THE CLERK:  We're calling C10-4947, eBay, Inc., et

4   al., versus PartsRiver, Inc.  We're calling C10-5106, eBay,

5   Inc. versus PartsRiver, Inc., et al.  And C10-5108, Microsoft

6   Corporation versus PartsRiver, Inc., et al.

7            Please step forward and state your appearances for

8   the record.

9            MR. CHANDLER:  Good afternoon, Your Honor.  Ted

10  Chandler from Sidley Austin on behalf of the plaintiffs, eBay

11  and Microsoft.

12           With me is Marc Ascolese from Sidley Austin.  Also,

13  Rory Bens, in-house counsel of eBay.

14           THE CLERK:  Are you plaintiff?

15           MR. CHANDLER:  We're the plaintiffs.

16           THE CLERK:  So you should be on the other side.

17           MR. CHANDLER:  Well, we're the accusing infringer,

18  though, so ...

19           MR. BECKER:  Good morning, Your Honor.  Robert Becker

20  from Manatt, Phelps & Phillips for Kelora in all cases.  And

21  also with me are Ron Katz and Ben Kleinman also from Manatt.

22           MR. KLEINMAN:  Is it possible to get the Court to

23  connect this computer --

24           MR. BECKER:  We have a PowerPoint.

25           THE CLERK:  You bring your own cord.  We don't supply
```

1   you with the cord, and the setup is at the end of the table.

2           **THE COURT:**  But I don't really need a PowerPoint.

3           So we have the eBay people over here, and the Kelora

4   people over here.  And it's the eBay people's motion.  So I

5   guess you may argue it briefly.

6           **MR. CHANDLER:**  Thank you, Your Honor.  Are there any

7   particular areas you'd like me to focus on?

8           **THE COURT:**  Well, what I generally think is that --

9   maybe I don't have a subtle understanding of all of the

10  intricacies of this, but it seems as though the change in the

11  821 was made to avoid the prior art that just says, "Okay, you

12  pick one thing and you pick another thing, so what?"  To add

13  what seems to me to be the only item of significance that I've

14  noticed, which is that you select one parameter -- the user

15  selects one parameter and sends it to the -- let's say the

16  server.  And then the server sends that parameter back, and the

17  user adds the second parameter so that the server doesn't have

18  to retain it in memory, which would be handy if it was an

19  internet server or a group server of some point.

20          It wouldn't be necessary, as far as I can see, for a

21  single user application, because if you're sitting at your own

22  computer with your own RAM, who cares if the computer has to

23  keep it in memory while you're sending the second parameter.

24          So that sort of ties in with the notion that the

25  revised 821 doesn't have a single user, a single desktop-type

1    application, but rather it seems to me limited, and I guess

2    this is agreed to, limits the thing to an internet or network

3    application as opposed to a single workstation application.  So

4    that says to me that it is -- that the revised 821 is

5    different, but it seems to me to be different in a way that is

6    narrower.

7            Now, that leads me to the question of whether the

8    limitation on liability should count if the new patent is

9    admittedly not substantially identical, but is narrower.  Now,

10   I understand you say it's also broader in some other way, but

11   let's just say for purposes of discussion, that it's just

12   narrower.  And if you were accused of infringement in a way

13   that would have infringed even the narrow view of it before and

14   still infringes the narrow view of it, then as a policy matter,

15   it's not clear to me why liability would be limited.  However,

16   that seems to be what the law is for perhaps some other reasons

17   that I don't understand.

18           So I have an inclination, assuming that that's the

19   case, to say that the liability would be limited to the period

20   after November.

21           In terms of the broadening, though, I don't really

22   see it.  The only way it would be broader would be if the

23   revision allowed a single desktop user to infringe by having

24   the server do the accepting and the selecting, but I don't

25   really think that -- it's not clear to me that that isn't what

1    the original 821 meant in the first place, that it would be the

2    computer that would accept the information.  True, it wouldn't

3    have a choice.  It wouldn't accept it in the sense of selecting

4    it, but it would accept it in the sense of it's going to take

5    it and do something with it.  So I don't think it's a matter of

6    law, at least at this point, that I would construe the terms

7    acceptance in the original 821 to be such that the new

8    definition of it would be a broadening.

9            So I guess what that would say is that it wouldn't --

10   the sort of third point of your motion wouldn't prevail nor the

11   first, for that matter.  The part about it being substantially

12   identical and therefore barred by res judicata.  I don't think

13   it is, and I don't think you do either.

14           **MR. CHANDLER:**  That's right, Your Honor.

15           **THE COURT:**  To the extent you're going to have to

16   fish or cut bait, you're fishing on the side it's not

17   identical.

18           **MR. CHANDLER:**  Correct.

19           **THE COURT:**  I'm still not sure what side they're

20   fishing on, but it seems like you're fishing on the

21   nonidentical side.  So I guess what that comes down to is

22   limiting the liability from November on probably and denying

23   the rest of the motion.

24           Now, I wouldn't be denying it for the purpose of

25   allowing Kelora to depose the patent examiner.  You're not

1    going to be deposing the patent examiner, and I don't know what

2    discovery you would know.  And if I thought it seemed pretty

3    clear that accepting did mean what eBay thinks it means, I

4    might be inclined to go ahead and have that term construed

5    right now, but I'm not.  It doesn't seem that that's so likely.

6    And therefore, I think we're just going to have to, on that

7    point, go forward with whatever you would normally do in terms

8    of claim construction discovery, or experts or whatever, but

9    not depositions of patent examiners.

10          So I guess you -- I don't know if I had any

11   particular questions.  I guess you can address any of that that

12   you'd like to, and then we'll hear from the other side.

13          MR. CHANDLER:  Thank you, Your Honor.  Perhaps the

14   easiest thing to do is if both parties --

15          THE COURT:  Address the part you don't like, and let

16   them address the part they don't like.

17          MR. CHANDLER:  Well, I guess the threshold issue is

18   whether or not there's agreement that the claim was changed,

19   and our position is, yes, Your Honor, the claim was changed,

20   and therefore there's no liability before November 2nd.

21          THE COURT:  You're not going to get them to say

22   anything.  You've been trying for some time now, and they're

23   trying to hedge, and they'll continue to try and hedge.

24          MR. CHANDLER:  So I'll address the broadening issue.

25   And to begin with -- the term "broadening" is perhaps a little

1    bit misleading.  So the legal test is whether there's been any

2    change in the scope of the claim, such that the amended claim

3    covers something that wasn't covered by the original claim.

4            And so the most instructive case on this is In re

5    Freeman.  So In re Freeman is a case where the claims were

6    admittedly narrowed.  A lot of language was added to narrow the

7    claim.  But at the same time, the language in In re Freeman was

8    written in a way to change the meaning of the claim such that

9    it covered something different, and that's the same fact

10   pattern we have here where the patent owner was very careful to

11   only add limitations to create the appearance of only

12   narrowing.

13           But by adding those limitations, they changed the

14   meaning of the accepting step from being something that the

15   user would do when they click the mouse on their computer.  It

16   was changed into accepting by the server.  And therefore --

17           **THE COURT:**  Assuming it's what you say it was in the

18   first place?

19           **MR. CHANDLER:**  Right.  So there's no dispute that

20   with the amended claim, accepting is done by the server.  The

21   parties agree on that.

22           The dispute is --

23           **THE COURT:**  And there could be no stand-alone desktop

24   because nobody would have to accept anything in that case.  I

25   mean, there could be no -- the fact that they made it into a

1   server claim means that it doesn't really matter who accepts

2   it.

3          **MR. CHANDLER:**  Well, there are other limitations that

4   would need to be construed.  It's pretty clear the accepting

5   step is done by the server.  Whether all the other steps or the

6   server or something else is -- could be an issue for claim

7   construction.

8          But the accepting step is the critical point here.

9   And the issue is:  Really, what did the original claim mean?

10  There's no dispute in their papers that if we're correct about

11  our claim construction for the original claim --

12         **THE COURT:**  That's what I'm trying to say is -- I

13  didn't express myself well.  What I'm trying to say is,

14  assuming it was previously a divided infringement, as you said,

15  and they narrowed it so that it wasn't anymore, and it was --

16  but it was a divided infringement only if it was a stand-alone

17  desktop, and they narrowed it to be not a divided infringement,

18  but also narrowed it so there is no application to a

19  stand-alone desktop at all.

20         So to the extent, it's broadened, they took back with

21  one hand what they gave away with the other because there no

22  longer is a stand-alone application where it could -- where a

23  divided infringement could even happen.

24         **MR. CHANDLER:**  I think the easiest way to put it is

25  this:  The original claim under our construction required a

1    user.  That user could be on his own computer or could be

2    working with the server computer, so the original claim covered

3    both instances.

4         The amended claim, though, is only the server.  So

5    now they broadened it in the sense they've gotten rid of the

6    user.  So it's covering something different, something that

7    wouldn't have been infringing originally.  So a server by

8    itself could not infringe the original claim because a server

9    would not be a person that's performing the accepting step.

10        The original claim under our construction requires

11   the user to make the choices, select the different criteria

12   that the user can toggle on and off, which criteria the user

13   wanted to search with.  Once the user was satisfied with all of

14   his selection criteria, the user would accept that selection

15   criteria by clicking on the search button, and then the search

16   would be performed, whether it's on the user's computer or a

17   server computer.  The original claim was written in a way that

18   the accepting step happened on the user's computer, but the

19   other steps could be done on a server computer.

20        Now with the amended claim, they changed it, they've

21   gotten rid of the user performing the accepting step, so it's

22   broader in the sense that they are now trying to point to just

23   a server infringing, whereas before they couldn't do that.  And

24   again, that's the In re Freeman case where the words have

25   changed, thereby changing what it is that the patent owner is

 1  going to point to as the infringing article.

 2          Another important point is that the test is not

 3  whether my client's products infringe now but didn't infringe

 4  before; the test is whether there's any conceivable apparatus

 5  or method that satisfies the amended limitations that didn't

 6  satisfy the original limitations.  And again, the answer is,

 7  this amended claim just requires a server to do the accepting

 8  step; the original claim also required a human accepting on

 9  the -- by clicking the mouse on the search button.

10          **THE COURT:**  Okay.  So that's your -- essentially,

11  your 305 claim?

12          **MR. CHANDLER:**  Right.

13          **THE COURT:**  Did you want to talk about any of the

14  others?

15          **MR. CHANDLER:**  On the -- well, I mean the Section

16  252, the threshold claim, I think -- you're probably right,

17  they're not going to say it, that it's been narrowed in some

18  respects, but I think it's pretty easy to reach that

19  conclusion.  We have a very straightforward admission.  They

20  wrote in their brief the quote and the scope of the amended

21  claim as -- is different from the original claim.  Federal

22  Circuit held in Fortel that an admission like that is all you

23  need, quote, no further discussion is necessary, when the

24  patent owner admits that the scope of the claim has changed.

25          So we've got an admission, if you want to go beyond

1    the admission, Federal Circuit made clear in <u>Laitram</u> that when

2    you narrow a claim to overcome a prior art rejection, it's

3    difficult to conceive many situations where the claim somehow

4    is the same scope.

5         Getting to your policy question, the law is clear

6    that there's no liability, even if something infringes both the

7    old claim and the new claim.  The reason for that is the old

8    claim was invalid.  The old claim was invalid over the Granacki

9    prior art, so you can't infringe an invalid claim.  That's the

10   policy reason why there's no liability for November 2nd, 2010.

11   Their claim was too broad.  It covered the prior art.

12        So that's why there's no liability for November 2nd,

13   2010 because their claim was written so broadly to cover things

14   that have been dedicated to the public.  So that's the policy

15   reason.  But the law is clear, if you read the holding of

16   <u>Laitram</u> as well as the holding of <u>Bloom Engineering</u>.  Both of

17   those cases dealt with the narrowing, amendment to

18   reexamination to overcome a prior art rejection.  Federal

19   Circuit clearly held no liability before the date of the

20   reexamination certificate.

21        And then finally, there's simply the fact that they

22   made these arguments to the patent office that they didn't need

23   to amend the claim.  The patent office rejected those

24   arguments.  They conceded that they needed to narrow the

25   claims; thereby, they gave up their appeal at the patent

1    office, and that's another strong admission on their part that

2    the original claims were too broad.  They covered the Granacki

3    prior art, and the amended claims are narrower than that.

4         There's one other point, which is the collateral

5    estoppel point.  Yes, we're not arguing that the new claims are

6    invalid simply because of the Court's prior summary judgment

7    under claim preclusion.  But we are arguing that all of the

8    issues that this Court decided in the last summary judgment

9    ruling, all of those issues are final and cannot be

10   re-litigated, and that includes the issue that they raise about

11   whether or not the screenshots -- that we submitted with the

12   previous summary judgment motion -- show the method of original

13   claim one.

14        That was an issue that was litigated in the previous

15   summary judgment motion.  This Court decided that issue in the

16   summary judgment ruling, and therefore, it's improper for them

17   to try to re-litigate that issue or any other issue that this

18   Court decided in the previous summary judgment ruling.

19        So that's another important aspect of this motion is

20   that we don't want to have to re-litigate all the old ground

21   that we covered before, as we go forward in the case.  Because

22   there are a lot of issues that were decided by this court's

23   previous summary judgment ruling that are very important to

24   invalidity in this case.  There was --

25        **THE COURT:**  Are any of those determinative of this

1   motion right now?  Or are you just sort of asking for me to say

2   that as a general proposition for the future?

3          **MR. CHANDLER:**  Both.  So the one that's -- or the one

4   that's responsive to an issue in this motion is the

5   screenshots.  They try to say those screenshots somehow don't

6   show the original claim.  That's been decided.  That's an issue

7   of collateral estoppel.

8          **THE COURT:**  Is that addressed specifically in the

9   summary judgment order?

10         **MR. CHANDLER:**  It was, Your Honor.

11         **THE COURT:**  As a particular finding, these

12  screenshots show whatever?

13         **MR. CHANDLER:**  Yes.

14         **THE COURT:**  I'm not sure it's particularly relevant

15  at this point because there are screenshots, as I recall it,

16  that show the usage on a single stand-alone desktop and don't

17  really tell us what would happen on an internet application.

18         **MR. CHANDLER:**  But again, there's -- the original

19  claim covered both a single stand-alone and the internet.  So

20  the claim covered both.  And the screenshots show what happened

21  with the accepting step on the stand-alone embodiment, but the

22  claim term has the same meaning, whether it's the stand-alone

23  embodiment or the internet embodiment.

24         **THE COURT:**  Right.  But I have never ruled on what

25  that meaning is.

1      **MR. CHANDLER:**  Right.  But our point is the

2  screenshots are informative.  The screenshots are evidence that

3  can be used.  They admit the screenshots embody original claim

4  one.  So original claim one covers those screenshots.  It also

5  covers the figures in the patent.  So all those are supportive

6  of our claim construction position.

7      We don't want to have to be required to re-litigate

8  the admissibility of the screenshots for purposes of this

9  motion, and going forward, we don't want to have to re-litigate

10  all the issues that Your Honor decided in the summary judgment

11  motion, such as the software was subject of the commercial

12  offer for sale, that there was no experimental use, that it

13  embodies all the claims of original claim one.

14      So there are 11 limitations that this Court found

15  were embodied in the software.  This Court found all 11

16  limitations were in the prior art.  They changed one of those

17  11 limitations with the amendment.  They didn't change the

18  other ten limitations.  Those limitations, this Court has

19  found, were in the prior art.  We don't want to have to be

20  required to re-litigate all over again, whether all those 10

21  limitations were in the prior art.  That was decided.

22      **THE COURT:**  In future motions?

23      **MR. CHANDLER:**  Right.  And there's a practical reason

24  for that, Your Honor.  You have a 25-page limit for claim

25  construction and dispositive motions.  There's only so much I

1   can say in 25 pages.  It's not fair for me for spending -- or

2   my clients for spending all this time and money getting the

3   summary judgment the first time around to have to do it all

4   over again.

5           THE COURT:  You may have a point, but it's going to

6   have to be things that were clearly decided and not sort of

7   offhand comments I might have made in an oral argument.  If you

8   briefed it, I ruled on it, and it says right in the order, in

9   so many words, that certain findings are made, then you may

10  have a point.  But it can't stray too far from that.

11          MR. CHANDLER:  Yes, Your Honor.  And the screenshots

12  were specifically in your order.

13          THE COURT:  Had you briefed a lot of other issues

14  besides the on-sale bar in the prior motion?

15          MR. CHANDLER:  There were two components in the prior

16  motion.  One was the on-sale bar, the other was divided

17  infringement.

18          THE COURT:  So you hadn't briefed other grounds of

19  invalidity, obviousness, anticipation, all those things?

20          MR. CHANDLER:  No, Your -- I mean, the on-sale bar is

21  anticipation, but not prior art, no, Your Honor.

22          THE COURT:  Now, with these three cases, do we still

23  have to keep all three of them open, or can we now agree to

24  just go with the lowest numbered case and closed the other two?

25          MR. CHANDLER:  The parties agreed in the CMC

1    statement that now that Your Honor has decided the motion to

2    dismiss, the parties agreed to consolidate in the lowest

3    numbered case, so that's what our --

4              THE COURT:  That's the 4947 case?

5              MR. CHANDLER:  Yes, Your Honor.

6              THE COURT:  So the other two can be closed?

7              MR. CHANDLER:  Well, we don't want them dismissed.

8    We would consolidate it.  They could be --

9              THE COURT:  Administratively closed.

10             MR. CHANDLER:  -- administratively closed.

11             THE COURT:  Okay.  Did you want to respond?

12             MR. BECKER:  Sure.  On that last point, it does seem

13   to us to be a bit odd to have three cases involving the same

14   parties and the same claims.  We would --

15             THE COURT:  We resolved that now.

16             MR. BECKER:  -- prefer to have them dismissed.

17             THE COURT:  He's right.  They should be consolidated

18   and administratively closed.

19             MR. BECKER:  On some of the issues that were

20   raised -- I'll kind of start at the end because they're

21   freshest in my mind.  The motion for summary judgment in the

22   last case had a very small section on the on-sale bars.  Near

23   the end of the motion -- and it involved just a few paragraphs.

24   In opposition to that, PartsRiver, who's been dismissed from

25   this case, opposed on the grounds of experimental use.  And the

1    evidence regarding coverage of the claims with the prior art

2    was not an element-by-element comparison, as counsel is trying

3    to make the Court believe.

4            What was done is there were admissions in the record

5    regarding a reduction of practice.  A reduction of practice in

6    a case of a method claim means that you perform the method.  So

7    what was done is that was taken as an admission that there was

8    coverage that the demo included all the limitations of the

9    claim, but that's not legally what that means.  It just means

10   that the inventor used the demo to practice the claim methods.

11   That's all that means.

12           So the issue should have been -- and it wasn't --

13   whether the methods were actually performed for someone else

14   for money.  That's the rule to find anticipation by on-sale

15   bar, otherwise you have method claims.  That issue was never

16   even raised below.

17           What you did, Your Honor, and rightfully so, you

18   looked at the papers and you said, "Well, I'm looking at these

19   admissions, and PartsRiver has no response."  In fact, they

20   didn't take issue with that point.  It was not contested.  They

21   went on and defended on the grounds of experimental use.  They

22   said that the demo was used in an experimental fashion and

23   therefore can't be subject to an on-sale bar.  So there was no

24   claim construction, and there was no element by limited

25   comparison.

1            With respect to the screenshots, Your Honor did not

2    rely on those screenshots -- first of all, there was no

3    objection to the admissibility of those.  This was a new

4    objection that we're raising in this case.  So that was not an

5    issue and was not ruled on.  When the screenshots were

6    discussed, Your Honor also said you pointed out that the

7    screenshots were missing something.  But you said, "However,

8    the software itself is in evidence, so I can just look at the

9    software."  So you didn't even rely on the screenshots.  There

10   was no dispute as to whether they're admissible.  So that

11   certainly is fair game in this case.  Certainly we're permitted

12   to argue that those screenshots are not admissible.  What they

13   are in this case is probably the worse form of evidence that's

14   possible.

15           It's the very attorneys who are representing eBay and

16   Microsoft here, manipulated the software to try to show

17   correspondence with the claims.  They didn't do that in the

18   critical time period before the patent was -- application was

19   filed.  They did it for purposes of this litigation during the

20   litigation to show infringement.  That's something that an

21   expert should be doing.  The attorney is not an expert, laid no

22   foundation for it, didn't tell us how it was done and what

23   equipment or anything else.

24           **THE COURT:**  Move on.  This is a CD.  We can all run

25   it, and it's going to show what it shows.  I just don't think

1    it's a huge issue.

2           **MR. BECKER:**  They're trying to preclude us from

3    arguing about the screenshots.

4           **THE COURT:**  You can do your own screenshots.  If

5    their screenshots are faked up in some way, then you do a

6    screenshot, or I'll do it myself.  It's just not that hard.

7           **MR. BECKER:**  I understand.  So moving on, with

8    respect to the broadening issue, it's truly a concocted issue.

9    There's absolutely no --

10          **THE COURT:**  The one as it relates to the 305?

11          **MR. BECKER:**  Right.

12          **THE COURT:**  Not as it relates to the substantial

13   identity?

14          **MR. BECKER:**  Right.  They said there's invalidity.

15   First of all, I don't think Your Honor gave them permission to

16   file that motion.  But to the extent they're claiming the claim

17   is invalid because it was broadened during the re-examination,

18   there is just no foundation at all for that.  The rule is that

19   in order to find a limitation in a claim that's not otherwise

20   there -- we all agree that it only said "accepting."  It didn't

21   say "accepting by a client."  It didn't say "accepting by

22   user."  It didn't say anything else other than "accepting."

23          So they're importing into that claim limitations that

24   say "acceptance had to be at the client or had to be done by

25   the user."  And this claim is specifically drafted to avoid

that.  It is a method for assisting a user, and the computing

system performs all of the steps.  The user is not required.

It's for this very reason that it's not required.  So there was

an amendment made during re-examination whereby it said the

accepting has to take place at a server.  So that's a classic

narrowing amendment.

The case that was cited by Plaintiff involves

negative language that was added to a claim.  So when you add

negative language, you potentially broaden the claim.  That's

not the situation here.  There was a limitation made such that

there had to be an accepting at a server, so there's no

question it wasn't narrowing.

The Federal Circuit case law on this says that in

order for there to be something imported into the claim, there

has to be words of manifest exclusion so that there's no

question that the plaintiff or the patentee was surrendering

subject matter, even though there wasn't an expressed

limitation in the claim.

At best, the only thing the plaintiffs submit here is

that there's some language that is consistent in the

specification with a user performing an action on a computer.

But that doesn't mean the claim has to be limited to that.

There's obviously accepting taking place at the server.

Counsel said during argument here today that the

original claim is right on both the internet embodiment and the

1    local embodiment.  Well, the internet embodiment, as shown in

2    the patent has acceptance takes place at server.  Figure 25

3    shows the selection criteria -- and by the way, it's the

4    selection criteria that's to be accepted -- going from the

5    client to the server.  Where it's accepted and acted upon by

6    the server.

7             So all of the evidence shows that -- excuse me.  None

8    of the evidence shows that the claims must be interpreted to

9    include a limitation that's not already in there.  Either a

10   user does something at a client or that the client must do

11   something.  There simply is no requirement at all on that.

12            Moving to the original subject of the motion, was to

13   show invalidity in case the claims had not been changed.  I

14   think that Your Honor has everything the Court needs on that,

15   and I'll just move on to the 252 issue, unless you have any

16   questions for me on that.

17            **THE COURT:**  Well, which one is that, the limitation

18   and liability?

19            **MR. BECKER:**  They filed -- well, they're linked

20   together.  They filed a motion -- in our view, an improper

21   motion, because instead of showing that a claim is invalid or

22   showing that there had been an amendment that would trigger

23   intervening rights, they simply said "We're going to throw up a

24   jump ball, and we're going to let the other side pick a side."

25   We're not going to carry a burden of proof on either issue.

1           THE COURT:  It's either one or the other, and they

2  don't know which because they don't know your position, but

3  it's either invalid or it's a limitation on liability.

4           MR. BECKER:  So they say that.  There's not a single

5  case that supports that notion, that it has to be one or the

6  other.

7           THE COURT:  Well, your first choice would be that

8  it's invalid.  And if you do --

9           MR. BECKER:  I think they've given up on that.

10          THE COURT:  -- then their second choice is that

11  liability is limited from last November.

12          MR. BECKER:  I would say it's a fallacy to assume

13  that it's either/or.  Certainly, we don't pick and have not

14  picked and we have our papers.

15          THE COURT:  But you have to show that it's neither.

16          MR. BECKER:  So what I --

17          THE COURT:  Or it's both.

18          MR. BECKER:  The only thing I'll add to what's

19  already been said about, is that it's their burden to show

20  intervening rights.  It's not our burden.  The case that they

21  cited is an unpublished case from out of circuit.  There are

22  other cases that clearly show that it's an affirmative defense,

23  and that they have the burden of proof on that.  And they

24  didn't satisfy.  It's simply showing that a claim has been

25  amended.  Amendment is not enough because there are other

1    aspects to a claim other than just the language, which is an

2    issue we have been discussing.  The question is:  How should

3    they have been interpreted in the first place?  What was the

4    impact of the file history in the first case?  Were they on

5    notice about the internet embodiment because of comments in the

6    file history in the first case such that they shouldn't be

7    entitled to equitable or any intervening rights in the second

8    case.

9            They didn't put any of that in issue.  They didn't

10   come forward and demonstrate that they are entitled to

11   intervening rights, and it's their burden.  So I would say that

12   the burden did not shift to Kelora to disprove it.

13           **THE COURT:**  And what if I thought it had?  How would

14   you go about disproving it?

15           **MR. BECKER:**  Well, we don't have the record

16   established.  We would need to go back and --

17           **THE COURT:**  You have the file record of the 821 and

18   the history of the re-examination proceedings and all of that.

19           **MR. BECKER:**  I would say that both the patent

20   examiner and the core were looking at the claim as if it

21   covered the local embodiment as well as the internet

22   embodiment.

23           I think Your Honor put in the prior order that

24   although PartsRiver had claimed that the demo didn't show the

25   internet embodiment, the Court said that doesn't matter because

1   it does show the local embodiment.  And in the re-examination,

2   the examiner said, "I don't think your claims are limited to

3   the internet embodiment, as you're suggesting to me.  I want

4   you to put in limitations.  I want you to expressly limit those

5   claims."

6            And --

7            **THE COURT:**  Well, they clearly weren't limited to the

8   internet embodiment before.

9            **MR. BECKER:**  There was nothing in the claim that said

10  "internet embodiment."  Exactly.  But there was prior

11  discussion --

12           **THE COURT:**  Both described in the specification and

13  the claim was broad enough to encompass both.  You then

14  narrowed it to encompass only the one, and I think that's

15  probably enough to be not substantially identical and limit the

16  liability.

17           And what do you say -- I don't know if I can even

18  give an advisory ruling, but apart from this issue of the

19  screenshots, do you dispute that findings that I made in the

20  prior litigation, assuming that they were clearly stated within

21  the Court's order and based on evidence that there be any

22  reason not -- that there'd be any reason to re-litigate those

23  things?

24           **MR. BECKER:**  Well, first of all, I think there are

25  very few such issues.  There are a few well-defined issues,

1    such as the ones that I discussed before, whether something was

2    an experimental use, for example.  Those sorts of issues.  So

3    there's a dispute between us two as to what issues were decided

4    in that order and what issues were not.

5            Setting that aside and answering your question

6    directly, a prong to collateral estoppel is whether the party

7    had a full and fair opportunity to litigate.  And I certainly

8    recognize that Your Honor has declined to issue a vacatur order

9    regarding the prior summary judgment order.  And part of that

10   was based on the fact that Kelora has transferred its rights --

11   excuse me -- PartsRiver has transferred its rights to Kelora,

12   and therefore, according to your order, doesn't have an

13   interest in seeing that order vacated.

14           But I would say that Kelora, the party in this case,

15   certainly has not had a full and fair opportunity to litigate

16   all those issues.  Would certainly litigate some of the issues

17   differently.  But more importantly, would certainly litigate

18   some of the issues that haven't even really been raised, we

19   believe, or were not fully litigated.  And certainly, it is a

20   prong in collateral estoppel to determine whether someone has

21   had the full and fair opportunity to litigate.

22           The exact situation happened in the Aqua Marine case.

23   In that case the Federal Circuit was deciding whether to vacate

24   a summary judgment order of invalidity after the parties had

25   settled.

1          Now, the case law is pretty clear in the federal

2     courts that if the settlement is the -- excuse me.  If the

3     reason something becomes moot on appeal is the product of

4     settlement, then it should not be vacated, at least by the

5     appellant courts.  It would have to come back to the district

6     court for that decision on an equitable basis, but there's no

7     basis on an appellant court to vacate that.

8          Nonetheless, the Federal Circuit said when you go

9     back and try to sue on this patent that this court held

10    invalid -- and there were no amended claims in that case.

11    There were no new claims.  They were just the old claims that

12    the court had rendered invalid.  The Federal Circuit said, "You

13    also have the opportunity to argue because of this settlement.

14    And therefore, the appeal being mooted that you didn't have the

15    full and fair opportunity to litigate."

16         And our position is that we did not have the full and

17    fair opportunity to litigate.  We are the assignee of

18    PartsRiver.  PartsRiver made some arguments, unfortunately,

19    relied on the experimental use doctrine and lost that.  But we

20    feel that as to at least all the other issues, either they

21    weren't decided or they weren't essential to your order, or we

22    should have the opportunity to litigate them in this case.

23              **THE COURT:**  Did you want to reply?

24              **MR. CHANDLER:**  I did, Your Honor.  Our brief covers

25    all of those issues, including --

1        **THE COURT:**  I'm not concerned about the privity or

2   all of that.

3        **MR. CHANDLER:**  I want to focus on the claim

4   construction issue.  And they are trying to rewrite the claim

5   from accepting to receiving to something passive that's done by

6   the computer.

7        They agree the original claims cover both the local

8   embodiment and the internet embodiment.  The word "accepting"

9   in the claims has the same -- has to be given the same meaning,

10  regardless of whether it's the local embodiment or the internet

11  embodiment.  There's only one meaning for the word accepting.

12  It doesn't change, based on whether it's the local embodiment

13  or the internet embodiment.

14       So when you read the patent -- when you read the

15  specification, accepting is only going to have one meaning.

16  Specification refers to the server receiving, but it never

17  refers to the server making a choice about whether or not to

18  accept the selection criteria.  The only person or thing that

19  makes the choice of whether to accept the selection criteria is

20  the user.  It's the user that's able to turn criteria on and

21  off.  And once the user is satisfied with all of those choices,

22  then the user accepts the selection criteria that he previously

23  made by clicking on the search button.  And then that selection

24  criteria in the local embodiment is on the computer and the

25  internet embodiment it goes over the network and it's received

1   by the server.

2          And so specifically if you look at the bottom of

3   column 18 up to column 19, around line 3 or 4, the

4   specification says:  Quote, the server receives the screen

5   No. 102 and the selection criteria 14. There's no discussion of

6   the server ever making a choice about whether or not to accept

7   or reject the selection criteria.

8          Again, the decision whether to accept or reject is

9   made by the user, therefore, accepting has to be given the same

10  meaning in the original claim, whether it's the local

11  embodiment or the internet embodiment, as to the user if it's

12  the one selection, the selection criteria.

13         **THE COURT:**  All right.  Were you on for a case

14  management conference today as well, or do you have your dates?

15  What are you doing next?

16         **MR. CHANDLER:**  The parties stipulated to a schedule.

17  They will serve their infringement contentions, the invalidity

18  contentions.  There will be a claim construction and a summary

19  judgment hearing in November.

20         **THE COURT:**  Did I sign off on that already?

21         **MR. CHANDLER:**  Yes, Your Honor.

22         **THE COURT:**  So your next coming back for that in

23  November?

24         **MR. CHANDLER:**  Yes.  And in the other cases, you have

25  a CMC -- the Wisconsin defendants.

1          **THE COURT:**  Oh, yeah.  What happened to them?

2          **MR. CHANDLER:**  So those cases are all before you.

3     The Wisconsin defendants, there's Cabellas (phonetic).  And

4     I've got some bad news for you, Your Honor.  I understand that

5     the Delaware case is coming to Oakland, as well.  So

6     presumably, that case will get related to you, as well.  In

7     those other cases, they're going to trail.  They've got a CMC

8     in August.  So their initial CMC is in August, and then we have

9     in our case claim construction, November.

10         **THE COURT:**  Okay.  Well, I suppose that was maybe the

11    earliest I could do it.  I would really prefer it if we could

12    somehow get everybody on the same track.  I wonder if you could

13    talk to the plaintiffs or you could somehow see if we can't get

14    everybody on board in that November time frame.  If I wait

15    until August to break that to them, they're not going to agree

16    to it, but I wonder if you all could talk to them about it.

17         **MR. CHANDLER:**  We'll see.  We can --

18         **MR. BECKER:**  We can certainly.  Unfortunately for us,

19    I think they'll see it as the plaintiff trying to accelerate

20    things, but those cases are as old as this case.  So -- and

21    there has been an initial case management conference in the

22    Wisconsin case.  It just took place in Wisconsin.

23         **THE COURT:**  I don't remember why I set it for August.

24    I'm sure I had a reason.  But if I had set it for sooner, I

25    could have maybe gotten them on track with you all.

 1          **MR. CHANDLER:**  EBay and Microsoft have been

 2    litigating this since 2007, so we're actually much further

 3    ahead than them.  They're all new defendants that were named in

 4    November of 2010.  So they're new to the case, whereas, we are

 5    further along and more prepared to go into -- right into claim

 6    construction.

 7          **THE COURT:**  When is this Delaware case coming?

 8    Somebody moved to transfer it, and it was granted?

 9          **MR. BECKER:**  I can speak to that, Your Honor.  We had

10    an initial case management conference with the Court.  The

11    Court asked us to stipulate to a transfer, and we agreed and

12    did stipulate.  It's a small case, one party.  And that

13    transfer order just happened today, I think, or yesterday.

14          **THE COURT:**  Okay.  And what are you doing to try to

15    settle the case?

16          **MR. CHANDLER:**  Yes, Your Honor.  So there was the

17    mediation Infante that was successful for one of the moving

18    parties, Shopzilla settled, and you signed the dismissal this

19    morning.  The parties' positions were narrow, but the parties

20    would like a ruling on this present motion, and then the

21    parties have -- Judge Infante has asked the parties to come

22    back as soon as there's a ruling.

23          **THE COURT:**  All right.  Well, I think I can tell you

24    that I'm going to limit liability from November -- what is

25    it -- 2010 in response to your motion, but deny it in other

1    respects.

2            The collateral estoppel I don't think it matters as

3    far as the screenshots because that isn't determinative of this

4    motion.  I'm inclined to think in the future that collateral

5    estoppel will apply, but I'm not going to issue some advisory

6    ruling, trying to figure out what you might be wanting to apply

7    it to in the future, but I think it's quite likely that it

8    would under the circumstances that I've described.

9            But in terms of this motion, that will be the order.

10   I'll put out a written ruling, but for some purposes, you can

11   assume that's how it's going to turn out, if that helps any in

12   terms of scheduling.

13           And I'm going to go back and look at why I delayed

14   that CMC on the Wisconsin cases so late, and I might try and

15   advance it and/or you could see if you can talk to them about

16   perhaps delaying yours a little bit so that we can include

17   them, or -- I don't know.

18           **MR. CHANDLER:**  I'll speak to that, Your Honor.  From

19   my client's perspective, we do not want to be delayed.  We're

20   concerned --

21           **THE COURT:**  Maybe you can tell them you'll help them.

22   You'll take the labor more on the motions, and they can ride

23   your coattails as long as they'll agree to go ahead and do it

24   in November.

25           Are they included in the settlement proceedings with

1   Judge Infante?

2        **MR. CHANDLER:**  No, Your Honor.

3        **THE COURT:**  Why don't you talk to them about joining

4   up with that as well.

5        **MR. BECKER:**  We will.  They're not involved with

6   that, but we're in discussions with them.

7        **THE COURT:**  Why don't you do that, too, and the

8   Delaware people as well.

9        **MR. BECKER:**  And we're in settlement discussions with

10   them as well too.

11        **THE COURT:**  All right.  Thank you.

12        **MR. CHANDLER:**  Thank you, Your Honor.

13        **MR. BECKER:**  Thank you.

14        (Conclusion of proceedings.)

15                   ---o0o---

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF REPORTER

I, SARAH L. GOEKLER, a Certified Shorthand Reporter, hereby certify that the foregoing proceedings were taken in shorthand by me, a disinterested person, at the time and place therein stated, and that the said proceedings were thereafter reduced to typewriting, by computer, under my direction and supervision;

I further certify that I am not of counsel or attorney for either or any of the parties nor in any way interested in the event of this cause, and that I am not related to any of the parties thereto.

DATED: May 10, 2011.


_Sarah L. Goekler_

SARAH L. GOEKLER, CSR 13446

# Exhibit 40

**United States District Court**
For the Northern District of California

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                                           No. C 10-04947 CW

4    EBAY INC. and MICROSOFT CORPORATION,   ORDER GRANTING IN
                                            PART AND DENYING
5         Plaintiffs,                       IN PART
                                            PLAINTIFFS'
6         v.                                MOTION FOR
                                            SUMMARY JUDGMENT
7    PARTSRIVER, INC. and KELORA SYSTEMS,   (Docket No. 41)
     LLC,                                   AND CONSOLIDATING
8                                           CASES
          Defendants.
9    _____/

10   EBAY INC.,                             No. C 10-05106 CW
                                            (Docket No. 46)
11        Plaintiff,

12        v.

13   PARTSRIVER, INC. and KELORA SYSTEMS,
     LLC,
14
          Defendants.
15   _____/

16   MICROSOFT CORPORATION,                 No. C 10-05108 CW
                                            (Docket No. 43)
17        Plaintiff,

18        v.

19   PARTSRIVER, INC. and KELORA SYSTEMS,
     LLC,
20
          Defendants.
21   _____/

22   AND ALL RELATED COUNTERCLAIMS
     _____/
23

24

25        In these related cases, Plaintiffs eBay Inc. and Microsoft

26   Corporation move for summary judgment of invalidity of Defendant

27   Kelora Systems, LLC's U.S. Patent No. 6,275,821 ('821 patent)

28

United States District Court
For the Northern District of California

and/or for summary adjudication that the '821 patent cannot give
rise to liability for infringement before November 2, 2010. Kelora
opposes the motion. The motion was heard on May 5, 2011. Having
considered oral argument and the papers submitted by the parties,
the Court GRANTS Plaintiffs' motion in part and DENIES it in part.

BACKGROUND

The '821 patent, which is entitled, "Method and System for
Executing a Guided Parametric Search," claims a "process for
identifying a single item from a family of items." '821 patent,
Abstract. The invention is intended "to provide a guided
parametric search to isolate a subfamily of items within a family
of items based on alternatives associated with each item." Id.
3:36-39. The patent specification describes two embodiments of the
invention: (1) an embodiment that runs on a single, local computer,
see id. 5:50-18:9; and (2) an embodiment that runs over the
Internet and requires a server and client computer, see id. 18:10-
19:34. Over the Internet, "the invention . . . may be used as an
electronic catalog, providing an electronic alternative to updating
and distributing product and/or service information." Id. 4:6-9.

A previous iteration of the '821 patent was at issue in
PartsRiver, Inc. v. Shopzilla, Inc., Case No. C 09-0811 CW. There,
PartsRiver, the previous owner of the '821 patent, charged eBay and
Microsoft with infringement. eBay and Microsoft counterclaimed for
judgment of non-infringement and invalidity. The Court held that
the patent's claim 1 and claim 2, which was dependent on claim 1,
were invalid based on the on-sale bar, 35 U.S.C. § 102(b). On
September 18, 2009, PartsRiver appealed the Court's judgment of

2

invalidity to the Federal Circuit.

While litigation before this Court was ongoing, the U.S. Patent and Trademark Office (PTO) was conducting an <u>ex parte</u> reexamination of claims 1 and 2.  There, the patent examiner initially rejected claims 1 and 2 as being clearly anticipated by prior art.  PartsRiver sought reconsideration of this conclusion, arguing the prior art clearly did not teach the subject matter contained in claim 1.  The patent examiner dismissed PartsRiver's arguments, concluding that PartsRiver relied on features that did not appear in the language of the claims subject to reexamination. On or about September 18, 2009, PartsRiver appealed the patent examiner's final rejection to the Board of Patent Appeals and Interferences (BPAI).

During the pendency of its appeals to the Federal Circuit and the BPAI, PartsRiver proposed amending claim 1 and adding a ninth claim to the '821 patent.  PartsRiver's amendments to claim 1 necessarily changed dependent claim 2.  PartsRiver's additions to and deletion from claim 1, which are indicated below in underlined and stricken text respectively, were as follows:

> A method for assisting a user in identifying a subfamily of items within a family of items <u>said method performed with a server connected to a client computer through a computer network</u>, comprising the steps of: . . .
>
> (h)  accepting a second selection criteria ~~comprising~~ <u>from said client computer via said computer network at said server wherein the second selection criteria comprises a resubmission to the server of</u> the alternative or alternatives of the first selection criteria plus at least one alternative selected from the revised feature screen, . . .

Pls.' Mot. for Summ. J, Ex. 2, at 1:25-52.  In relevant part,

PartsRiver's new claim 9 discussed,

> A method for assisting a user in identifying a subfamily
> of items within a family of items, the method comprising
> the following steps which are performed with a server
> connected to a computer network: . . .

>> (d)  receiving and accepting a first selection
>>       criteria of at least one alternative from said
>>       client computer, said first selection criteria
>>       being received by said server from said client
>>       computer via said computer network, . . .

>> (h)  receiving and accepting a second selection
>>       criteria from said client computer via said
>>       computer network, in which said second
>>       selection criteria comprises (1) a resubmission
>>       by said client computer of the alternative or
>>       alternatives of the first selection criteria
>>       along with (2) at least one alternative
>>       selected from the revised feature
>>       screen, . . . .

Id. at 2:8-41.  The patent examiner deemed claim 1, as amended, and

new claim 9 to be patentable.  Thereafter, PartsRiver's BPAI appeal

was dismissed.  And, after a reexamination certificate for the '821

patent issued on November 2, 2010, PartsRiver filed a motion to

dismiss its appeal of this Court's judgment, which the Federal

Circuit granted.[1]

Plaintiffs filed these related cases in November and December

2010, seeking declarations of non-infringement, invalidity and

intervening rights.  On PartsRiver's motion, the Court dismissed

Plaintiffs' claims against PartsRiver because it disavowed any

remaining interest in the '821 patent.  Kelora, now the sole

Defendant in these actions, has counterclaimed against Plaintiffs

for infringement of the '821 patent.

---

[1] The Federal Circuit remanded to this Court PartsRiver's
request to vacate the judgment of invalidity.  The Court denied
PartsRiver's motion.

United States District Court
For the Northern District of California

4

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

DISCUSSION

I.    Identity Between Claims Contained in Amended '821 Patent and Claims Held Invalid By This Court

Plaintiffs argue that claims 1, 2 and 9 of the '821 patent, as amended, are identical in scope to original claims 1 and 2, which the Court held to be invalid. Thus, Plaintiffs argue, the Court's invalidity judgment in PartsRiver applies in these actions. Plaintiffs cite PartsRiver's contention that, "although the text of claim 1 has been altered by amendment, the claim scope is legally identical to that of originally issued claim 1." Pls.' Mot. for Summ. J., Ex. 28, at 7. Kelora claims that they are not identical.

PartsRiver's assertion does not establish, as a matter of law, that the Court's previous invalidity judgment applies to amended claims 1 and 2 and new claim 9. Indeed, Plaintiffs acknowledge that the claims are not identical in scope, noting that PartsRiver's amendments "narrowed claims 1 and 2 to overcome the rejection based on the Granacki prior-art reference." Pls.' Mot. for Summ. J. at 10:28-11:1. Further, that the examiner deemed the claims to be patentable only after they were amended suggests a

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1    lack of identity.

2        Accordingly, Plaintiffs' motion is denied insofar as it seeks

3    summary adjudication that amended claims 1 and 2 and new claim 9

4    are identical in scope to original claims 1 and 2 and are invalid

5    as a result.

6    II.  Limitations on Liability Based on 35 U.S.C. § 252

7        The owner of a "reexamined patent is entitled to infringement

8    damages, inter alia, for the period between the date of issuance of

9    the original claims and the date of issuance of the reexamined

10   claims if the original and reexamined claims are 'identical.'"

11   Laitram Corp. v. NEC Corp., 163 F.3d 1342, 1346 (Fed. Cir. 1998)

12   (citing 35 U.S.C. §§ 252, 307(b) (1994)).  "Reexamined claims are

13   'identical' to their original counterparts if they are 'without

14   substantive change.'"  Laitram, 163 F.3d at 1346.

15       "There is no absolute rule for determining whether an amended

16   claim is legally identical to an original claim."  Bloom Eng'g Co.,

17   Inc. v. N. Am. Mfg. Co., Inc., 129 F.3d 1247, 1250 (Fed. Cir.

18   1997).  Amendments that simply clarify a claim or make the claim

19   "more definite without affecting its scope" are generally viewed as

20   "identical" for the purposes of section 252.  Id. (citation

21   omitted).  However, "a claim amendment made during reexamination

22   following a prior art rejection is not per se a substantive

23   change."  Laitram, 163 F.3d at 1347 (citation omitted).

24   "Determination of whether a claim change during reexamination is

25   substantive requires analysis of the scope of the original and

26   reexamined claims in light of the specification, with attention to

27   the references that occasioned the reexamination, as well as the

28                                   6

prosecution history and any other relevant information."  <u>Bloom</u>,

129 F.3d at 1250.

A plain reading of amended claims are identical in scope to the original claims is a question of law.  <u>Laitram</u>, 163 F.3d at 1346-47.  "This rule flows from the general principle that 'the interpretation and construction of patent claims, which define the scope of the patentee's rights under the patent, is a matter of law, exclusively for the court.'"  <u>Id.</u> at 1347 (quoting <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 970-71 (Fed. Cir. 1995)).

A plain reading of amended claims 1 and 2 and new claim 9 shows that these claims are substantively different from original claims 1 and 2.  Amended claim 1 states that the steps of the method it addresses are "performed with a server connected to a client computer through a computer network."  Pls.' Mot. for Summ. J., Ex. 2, at 1:25-29.  Original claim 1 did not contain this limitation, which effectively excludes the local embodiment described in the specification.[2]  Further, original claim 1's language did not delineate the roles of the server and the client computer at step (h), which calls for "accepting a second selection criteria comprising the alternative or alternatives of the first selection criteria plus at least one alternative selected from the revised feature screen."  <u>Id.</u>, Ex. 1, at 19:56-59.  Amended claim 1 defines these roles.  The amended claim indicates that, at step (h), the client computer combines "the alternative or alternatives

---

[2] The local embodiment required only a single "computing system."  <u>See</u> Pls.' Mot. for Summ. J., Ex. 1, at 7:1-10; <u>see also</u> Danish Decl. ¶ 8 (stating that claims 1 and 9 involve steps to be performed "with a server").

7

United States District Court
For the Northern District of California

of the first selection criteria plus at least one alternative

selected from the revised feature screen," which, together,

constitute the "second selection criteria." <u>Id.</u>, Ex. 2, at 1:47-

52. This "second selection criteria," in turn, is accepted by the

server. <u>See id.</u> Because amended claim 2 is dependent on amended

claim 1, it is equally different from original claim 2. New claim

9 reiterates this division of tasks between the server and client

computer. Kelora does not cite any portion of the specification to

argue that PartsRiver's amendments did not substantially change the

scope of the original claims 1 and 2.[3]

The reexamination proceedings further support the conclusion

that PartsRiver's amendments narrowed original claim 1. The patent

examiner rejected PartsRiver's argument that original claim 1

reflected these limitations, stating that "there is nothing in

claim 1 about concatenation. The claim makes no reference to how

the data in a search instruction is actually formatted prior to

being sent to a controller to perform the selection." <u>Id.</u>, Ex. 19,

at 7. PartsRiver responded to this contention with the amendments

already described.

Accordingly, the Court summarily adjudicates that Kelora may

---

[3] Kelora insists that it has no burden of production, arguing
that Plaintiffs have the burden to show they are entitled to
intervening rights under paragraph 2 of 35 U.S.C. § 252. However,
on this motion, Plaintiffs are not seeking a declaration that they
have intervening rights. Instead, they contend that, under
paragraph 1 of section 252, Kelora is precluded from recovering
damages incurred before November 2, 2010 for infringement of claims
1, 2 and 9 of the amended '821 patent. <u>See</u> <u>Kaufman Co., Inc. v.
Lantech, Inc.</u>, 807 F.2d 970, 976 (Fed. Cir. 1986) (stating that
limitation on patentee's rights contained in paragraph 1 of section
252 "is <u>not</u> . . . so-called 'intervening rights' set out in the
second paragraph of § 252").

United States District Court
For the Northern District of California

8

**United States District Court**
For the Northern District of California

not seek damages for infringement before November 2, 2010, the issue date of the <u>ex parte</u> reexamination certificate.

## III. Invalidity under 35 U.S.C. § 305

Under 35 U.S.C. § 305, during the reexamination process, patent owners are permitted to add new claims in order to distinguish the invention as claimed from prior art. However, "[n]o proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding under this chapter." 35 U.S.C. § 305. Whether the scope of a claim has been impermissibly broadened on reexamination is a matter of claim construction, <u>Quantum Corp. v. Rodime, PLC</u>, 65 F.3d 1577, 1580 (Fed. Cir. 1995), and thus a question of law for the Court. Under section 305, "a claim of a reissue application is broader in scope than the original claims if it contains within its scope any conceivable apparatus or process which would not have infringed the original patent." <u>In re Freeman</u>, 30 F.3d 1459, 1464 (Fed. Cir. 1994). "A claim that is broader in any respect is considered to be broader than the original claims even though it may be narrower in other respects." <u>Id.</u> To overcome the presumption that patents are valid, clear and convincing evidence is required. <u>Oakley, Inc. v. Sunglass Hut Int'l</u>, 316 F.3d 1331, 1339 (Fed. Cir. 2003).

Plaintiffs contend that step (h) of original claim 1 provided that the user of the client computer performed the task of "accepting a second selection criteria comprising the alternative or alternatives of the first selection criteria plus at least one alternative selected from the revised feature screen." In contrast, as explained above, step (h) of amended claim 1 provides

9

United States District Court
For the Northern District of California

that the server performs this task.  Thus, Plaintiffs argue, amended claim 1 is broader because original claim 1 could not be infringed by a server.

The Court is not convinced that the language of the original claims supports the limitation advocated by Plaintiffs.  Plaintiffs have not identified anything in the original claims indicating that the user necessarily performed the "accepting" task as defined in step (h).

Accordingly, the Court denies Plaintiffs' motion, to the extent it seeks summary judgment of invalidity under 35 U.S.C. § 305.  This denial is without prejudice to renewal in connection with their motion for claim construction and summary judgment.

CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion in part and DENIES it in part.  (Case No. C 10-4947 CW, Docket No. 41; Case No. C 10-5106 CW, Docket No. 46; Case No. C 10-5108 CW, Docket No. 43.)  The Court summarily adjudicates that Kelora may not seek damages for infringement before November 2, 2010. Plaintiffs' motion is denied to the extent that it seeks summary judgment of invalidity based on the Court's invalidity judgment in PartsRiver.  Plaintiffs' motion is denied without prejudice to the extent that it seeks summary judgment of invalidity based on 35 U.S.C. § 305; they may renew this request in connection with their motion for claim construction and summary judgment.

As discussed at the May 5, 2011 hearing, Case Nos. C 10-5106 CW and C 10-5108 CW shall be consolidated with Case No. C 10-4947 CW.  The Clerk shall administratively close Case Nos. C 10-5106 CW

10

**United States District Court**
For the Northern District of California

1  and C 10-5108 CW.  All future filings shall be made in Case No.

2  C 10-4947 CW.

3      The hearing on claim construction and the parties' dispositive

4  motions will be held on November 17, 2011 at 2:00 p.m.

5      IT IS SO ORDERED.

6

7  Dated:  5/9/2011

8                              CLAUDIA WILKEN
                               United States District Judge

11

# Exhibit 41

1   MANATT, PHELPS & PHILLIPS, LLP
    ROBERT D. BECKER (Bar No. CA 160648)
2   E-mail:  rbecker@manatt.com
    RONALD S. KATZ (Bar No. CA 085713)
3   E-mail:  rkatz@manatt.com
    SHAWN G. HANSEN (Bar No. CA 197033)
4   E-mail:  shansen@manatt.com
    1001 Page Mill Road, Building 2
5   Palo Alto, CA  94304-1006
    Telephone:  (650) 812-1300
6   Facsimile:  (650) 213-0260

7   *Attorneys for Defendant*
    KELORA SYSTEMS, LLC

8

9                   **IN THE UNITED STATES DISTRICT COURT**

10                      **FOR THE NORTHERN DISTRICT**

11                          **OAKLAND DIVISION**

12

13   eBay, Inc. and Microsoft Corporation,        Case No. 4:10-cv-4947-CW

14                     *Plaintiffs*,              **KELORA SYSTEMS, LLC'S
                                                  DISCLOSURE OF ASSERTED CLAIMS
15            vs.                                 AND INFRINGEMENT CONTENTIONS
                                                  PURSUANT TO PATENT L.R. 3-1**
16   PartsRiver, Inc. and Kelora Systems, LLC,

17                     *Defendants*.

18

19   **I.      INTRODUCTION**

20          Pursuant to the Joint Stipulation and Court Order Regarding Case Schedule dated April

21   21, 2011, and Patent L.R. 3-1 and 3-2, Defendant Kelora Systems, LLC ("Kelora") hereby serves

22   its Disclosure of Asserted Claims and Infringement Contentions ("Infringement Contentions").

23   Kelora's Infringement Contentions are based upon information available to Kelora as of the date

24   hereof without the benefit of discovery in this litigation.  Because Kelora has not yet received

25   documents, source code, deposition testimony or other discovery relevant to its Infringement

26   Contentions from plaintiffs Microsoft Corp. ("Microsoft") and eBay, Inc. ("eBay") (collectively,

27   "Plaintiffs"), and because Kelora's investigation is ongoing, Kelora reserves the right to

28   supplement  and/or modify its Infringement Contentions to the full extent permitted by the Court

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

and/or Patent L.R. 3-6.

## II. ITEMS REQUIRES BY PATENT L.R. 3-1

### A. Patent L.R. 3-1 (a): Asserted Claims and Subsections of 35 U.S.C. § 271

#### 1. Microsoft

For purposes of Patent L.R. 3-1(a) and with respect to the patent at issue, Kelora asserts that Microsoft infringes the following patent claims directly, under 35 U.S.C. § 271(a): claims 1, 2, 4, and 9 of U.S. Patent No. 6,275,821 ("'821 Patent").

#### 2. eBay

For purposes of Patent L.R. 3-1(a) and with respect to the patent at issue, Kelora asserts that eBay infringes the following patent claims directly, under 35 U.S.C. § 271(a): claims 1, 2, 3, 4, and 9 of the '821 Patent.

### B. Patent L.R. 3-1(b): Identification of Accused Instrumentalities

For purposes of Patent L.R. 3-1(b), with respect to the patent at issue, Kelora asserts that each of the Asserted Claims is infringed by the instrumentalities identified below (collectively referred to herein as the "Accused Instrumentalities"). Kelora reserves the right to amend this identification to the full extent permitted under Patent L.R. 3-6 and/or this Court's Orders. Unless otherwise stated, Kelora's assertions of infringement apply to all editions, versions, and applications of the Accused Instrumentalities.

#### 1. Microsoft

With respect to Microsoft, the Accused Instrumentalities comprise the Bing Shopping search service, such as that provided at <www.bing.com/shopping>, referred to hereinafter as the "Microsoft Accused Instrumentality."

#### 2. eBay

With respect to eBay, the Accused Instrumentalities comprise the search service provided at <www.ebay.com>, the search service provided at <www.shopping.com>, and the search service provided at <www.stubhub.com>, referred to hereinafter as the "eBay Accused Instrumentalities."

### C.    Patent L.R. 3-1(c): Infringement Charts

Kelora's investigation and analysis of the Accused Instrumentalities is based upon information made publicly available by Plaintiffs and Kelora's own investigations. Attached as Appendices A and B are charts regarding infringement of the '821 Patent by Plaintiffs.

The charts appended as Appendix A and B set forth Kelora's current contentions with respect to where each element of the Asserted Claims is found in the Accused Instrumentalities. All citations to evidence in Kelora's Infringement Contentions are illustrative only and shall in no way limit Kelora's reliance on additional evidence obtained in discovery in support of its Infringement Contentions.  To the fullest extent permitted under Patent L.R. 3-6 and/or this Court's Orders, Kelora reserves the right to amend and/or supplement its Infringement Contentions for any of the following reasons:

(i) Kelora's positions regarding infringement of specific claims will depend on how those claims are construed by the Court. Because claim construction has not yet occurred, Kelora cannot take a final position on the bases for infringement of the Asserted Claims; and

(ii) While Kelora's investigation and analysis of Plaintiffs' infringement is based upon information made publicly available by Plaintiffs and Kelora's own investigations, additional discovery from Plaintiffs is necessary before Kelora can take final positions on the bases for infringement of the Asserted Claims.

Unless otherwise indicated, the information provided that corresponds to each claim element is considered to indicate that each claim element is found within the identified product, device, process, method, function, or act of the Accused Instrumentalities.

#### 1.    Microsoft

Appended hereto as Appendix A, and incorporated herein it its entirety, is a preliminary chart identifying specifically where each element of the Asserted Claims of the '821 Patent is found in the Microsoft Accused Instrumentality.

#### 2.    eBay

Appended hereto as Appendix B, and incorporated herein it their entirety, are preliminary charts identifying specifically where each element of the Asserted Claims of the '821 Patent is

found in each of the eBay Accused Instrumentalities.

### D. Patent L.R. 3-1(d): Indirect Infringement

For purposes of Patent L.R. 3-1(d) and based on the information now available to it, Kelora does not as of the date hereof assert that either of the Plaintiffs is indirectly infringing the claims of the '821 patent.  Kelora reserves the right to amend these Infringement Contention or otherwise assert indirect infringement to the full extent permitted under the Federal Rules of Civil Procedure, Patent L.R. 3-6, and/or this Court's Orders.

### E. Patent L.R. 3-1(e): Literal Infringement / Doctrine of Equivalents

For purposes of Patent L.R. 3-1(e) with respect to the patent at issue, each element of each Asserted Claim is considered to be literally present and present under the Doctrine of Equivalents within each of the Accused Instrumentalities. To the fullest extent permitted under Patent L.R. 3-6 and/or this Court's Orders, Kelora reserves the right to amend and/or supplement this disclosure for any of the following reasons:

(i) Kelora's positions regarding infringement of specific claims will depend on how those claims are construed by the Court. Because claim construction has not yet occurred, Kelora cannot take a final position on the bases for infringement of the Asserted Claims under the Doctrine of Equivalents; and

(ii) While Kelora's investigation and analysis of Plaintiffs' products is based upon information made publicly available by Defendants and Kelora's own investigations, additional discovery from Plaintiffs is necessary before Kelora can take final positions on the bases for infringement of the Asserted Claims under the Doctrine of Equivalents.

### F. Patent L.R. 3-1(f): Priority Dates

The Asserted Claims of the '821 Patent are entitled to a priority date of October 14, 1994, as a continuation of U.S. Application No. 08/943,573 (issued as U.S. Patent No. 5,983,219) filed on October 3, 1997, which is a continuation of U.S. Application No. 08/323,186 (issued as U.S. Patent No. 5,715,444) filed on October 14, 1994.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

4

INFRINGEMENT CONTENTIONS
CASE NO. 4:10-CV-4947-CW

G.      **Patent L.R. 3-1(g): Kelora Instrumentality that Incorporates or Reflects the Claimed Inventions**

Kelora's Product Server and Commerce Suite products incorporate or reflect each of the Asserted Claims.

H.      **Patent L.R. 3-1(h): Willful Infringement**

For purposes of Patent L.R. 3-1(h) and based on the information now available to it, Kelora asserts that both of the Plaintiffs willfully infringe the claims of the '821 patent.  Plaintiffs both had full knowledge of the '821 Patent and their respective infringement of valid claims thereof from the date the USPTO issued the reexamination certificate for the '821 Patent to the present.  Notwithstanding the USPTO's confirmation in the reexamination certificate for the '821 Patent of the patentability of the reexamined claims of the '821 Patent, Plaintiffs have continued their infringement of the valid claims of the '821 Patent despite the objectively high likelihood, knowledge of which is chargeable to both Plaintiffs, that their actions constituted infringement of the valid '821 Patent.  In addition, upon information and belief, Microsoft intentionally copied the ideas and designs of Kelora and a prior owner of the '821 Patent, Saqqara Systems, Inc.  Microsoft was provided access via confidential meetings and discussions to the Product Server and Commerce Suite products and designs.

Kelora reserves the right to amend these Infringement Contentions or otherwise assert willful infringement to the full extent permitted under the Federal Rules of Civil Procedure, Patent L.R. 3-6, and/or this Court's Orders.

III.    **DOCUMENT PRODUCTION**

A.      **Patent L.R. 3-2(a): Documents sufficient to evidence each discussion with, disclosure to, or other manner of providing to a third party, or sale of or offer to sell, or any public use of, the claimed invention prior to the date of application for the patent in suit.**

Non-privileged responsive documents known on the date hereof to be in Kelora's possession, custody, or control have been produced and/or will be produced.  Per Patent L.R. 3-2, these statements and productions do not constitute an admission that these statements and productions evidence or are prior art under 35 U.S.C. § 102.

**B.      Patent L.R. 3-2(b): All documents evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the patent in suit or the priority date identified pursuant to Patent L.R. 3- 1(f), whichever is earlier**

Non-privileged responsive documents known on the date hereof to be in Kelora's possession, custody, or control have been produced and/or will be produced. Per Patent L.R. 3-2, these statements and productions do not constitute an admission that these statements and productions evidence or are prior art under 35 U.S.C. § 102.

**C.      Patent L.R. 3-2(c): A copy of the file history for each patent in suit**

Non-privileged responsive documents known on the date hereof to be in Kelora's possession, custody, or control have been produced and/or will be produced. Per Patent L.R. 3-2, these statements and productions do not constitute an admission that these statements and productions evidence or are prior art under 35 U.S.C. § 102.

**D.      Patent L.R. 3-2(d): All documents evidencing ownership of the patent rights by the party asserting patent infringement**

Non-privileged responsive documents known on the date hereof to be in Kelora's possession, custody, or control have been produced and/or will be produced. Per Patent L.R. 3-2, these statements and productions do not constitute an admission that these statements and productions evidence or are prior art under 35 U.S.C. § 102.

**E.      Patent L.R. 3-2(e): Documents sufficient to show the operation of Kelora's Commerce Suite and Product Server to perform the asserted claims.**

Non-privileged responsive documents known on the date hereof to be in Kelora's possession, custody, or control have been produced and/or will be produced. Per Patent L.R. 3-2, these statements and productions do not constitute an admission that these statements and productions evidence or are prior art under 35 U.S.C. § 102.

1   Dated:    May 12, 2011              MANATT, PHELPS & PHILLIPS, LLP
                                        Robert D. Becker
2                                       Ronald S. Katz
                                        Shawn G. Hansen
3

4
                                        By: */s/ Robert D. Becker*
5                                            Robert D. Becker
                                             *Attorneys for Defendant*
6                                            KELORA SYSTEMS, LLC

7

8

9

10

11
    300251694.1
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

7

INFRINGEMENT CONTENTIONS
CASE NO. 4:10-CV-4947-CW

# Exhibit 42

MANATT, PHELPS & PHILLIPS, LLP
ROBERT D. BECKER (Bar No. CA 160648)
E-mail:  rbecker@manatt.com
RONALD S. KATZ (Bar No. CA 085713)
E-mail:  rkatz@manatt.com
SHAWN G. HANSEN (Bar No. CA 197033)
E-mail:  shansen@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA  94304-1006
Telephone:  (650) 812-1300
Facsimile:  (650) 213-0260

*Attorneys for Defendant*
KELORA SYSTEMS, LLC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT**

**OAKLAND DIVISION**

| | |
|---|---|
| Cabela's Inc., | Case No. 4:11-cv-1398-CW |
| *Plaintiff*, | Case No. 4:11-cv-1548-CW<br>Case No. 4:11-cv-2284-CW |
| vs. | **KELORA SYSTEMS, LLC'S** |
| Kelora Systems, LLC, | **DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS PURSUANT TO PATENT L.R. 3-1** |
| *Defendant*. | |
| Kelora Systems, LLC, | |
| *Plaintiff*, | |
| vs. | |
| Target Corp., et al., | |
| *Defendants*. | |
| Nebraska Furniture Mart, Inc., | |
| *Plaintiff*, | |
| vs. | |
| Kelora Systems, LLC, | |
| *Defendant*. | |

# I.  **INTRODUCTION**

Pursuant to the Court Order Regarding Case Schedule dated May 31, 2011, and Patent L.R. 3-1 and 3-2, Kelora Systems, LLC ("Kelora") hereby serves its Disclosure of Asserted Claims and Infringement Contentions ("Infringement Contentions"). Kelora's Infringement Contentions are based upon information available to Kelora as of the date hereof without the benefit of discovery in this litigation.  Because Kelora has not yet received documents, source code, deposition testimony, or other discovery relevant to its Infringement Contentions from Nebraska Furniture Mart, Inc. ("NFM"), Cabela's Inc. ("Cabela's"), Target Corporation ("Target"), OfficeMax Inc. ("OfficeMax"), ShopKo Stores Operating Co., LLC ("Shopko"), National Business Furniture, LLC ("NBF"), Rockler Companies, Inc. ("Rockler"), 1 800 Flowers.com, Inc. ("1800Flowers"), PC Connection, Inc. ("PC Connection"), Mason Companies, Inc. d/b/a Maryland Square ("Mason"), Amazon.com, Inc. ("Amazon"), Dell Inc. ("Dell"), Office Depot, Inc. ("Office Depot"), Newegg Inc. ("Newegg"), Costco Wholesale Corporation ("Costco"), Hewlett-Packard Development Company, L.P. ("HPDC"), and CircuitCity.com Inc. ("CircuitCity") (collectively, "Infringement Defendants"), and because Kelora's investigation is ongoing, Kelora reserves the right to supplement  and/or modify its Infringement Contentions to the full extent permitted by the Court and/or Patent L.R. 3-6.

# II.  **ITEMS REQUIRED BY PATENT L.R. 3-1**

## A.  **Patent L.R. 3-1 (a): Asserted Claims and Subsections of 35 U.S.C. § 271**

### 1.  NFM

For purposes of Patent L.R. 3-1(a) and with respect to the patent at issue, Kelora asserts that NFM infringes the following patent claims directly, under 35 U.S.C. § 271(a): claims 1, 2, and 9 of U.S. Patent No. 6,275,821 ("'821 Patent").

### 2.  Cabela's

For purposes of Patent L.R. 3-1(a) and with respect to the patent at issue, Kelora asserts that Cabela's infringes the following patent claims directly, under 35 U.S.C. § 271(a): claims 1, 2, 4, and 9 of the '821 Patent.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

2

INFRINGEMENT CONTENTIONS
CASE NOS. 4:11-CV-1398, 4:11-CV-1548, 4:11-CV-2284-CW

3.      Target

For purposes of Patent L.R. 3-1(a) and with respect to the patent at issue, Kelora asserts that Target infringes the following patent claims directly, under 35 U.S.C. § 271(a): claims 1, 2, and 9 of the '821 Patent.

4.      OfficeMax

For purposes of Patent L.R. 3-1(a) and with respect to the patent at issue, Kelora asserts that OfficeMax infringes the following patent claims directly, under 35 U.S.C. § 271(a): claims 1, 2, and 9 of the '821 Patent.

5.      Shopko

For purposes of Patent L.R. 3-1(a) and with respect to the patent at issue, Kelora asserts that Shopko infringes the following patent claims directly, under 35 U.S.C. § 271(a): claims 1, 2, and 9 of the '821 Patent.

6.      NBF

For purposes of Patent L.R. 3-1(a) and with respect to the patent at issue, Kelora asserts that NBF infringes the following patent claims directly, under 35 U.S.C. § 271(a): claims 1, 2, and 9 of the '821 Patent.

7.      Rockler

For purposes of Patent L.R. 3-1(a) and with respect to the patent at issue, Kelora asserts that Rockler infringes the following patent claims directly, under 35 U.S.C. § 271(a): claims 1, 2, 4, and 9 of the '821 Patent.

8.      1800Flowers

For purposes of Patent L.R. 3-1(a) and with respect to the patent at issue, Kelora asserts that 1800Flowers infringes the following patent claims directly, under 35 U.S.C. § 271(a): claims 1, 2, 4, and 9 of the '821 Patent.

9.      PC Connection

For purposes of Patent L.R. 3-1(a) and with respect to the patent at issue, Kelora asserts that PC Connection infringes the following patent claims directly, under 35 U.S.C. § 271(a): claims 1, 2, and 9 of the '821 Patent.

1          10.     Mason

2          For purposes of Patent L.R. 3-1(a) and with respect to the patent at issue, Kelora asserts

3     that Mason infringes the following patent claims directly, under 35 U.S.C. § 271(a): claims 1, 2,

4     and 9 of the '821 Patent.

5          11.     Amazon

6          For purposes of Patent L.R. 3-1(a) and with respect to the patent at issue, Kelora asserts

7     that Amazon infringes the following patent claims directly, under 35 U.S.C. § 271(a): claims 1, 2,

8     and 9 of the '821 Patent.

9          12.     Dell

10         For purposes of Patent L.R. 3-1(a) and with respect to the patent at issue, Kelora asserts

11    that Dell infringes the following patent claims directly, under 35 U.S.C. § 271(a): claims 1, 2, and

12    9 of the '821 Patent.

13         13.     Office Depot

14         For purposes of Patent L.R. 3-1(a) and with respect to the patent at issue, Kelora asserts

15    that Office Depot infringes the following patent claims directly, under 35 U.S.C. § 271(a): claims

16    1, 2, 4, and 9 of the '821 Patent.

17         14.     Newegg

18         For purposes of Patent L.R. 3-1(a) and with respect to the patent at issue, Kelora asserts

19    that Newegg infringes the following patent claims directly, under 35 U.S.C. § 271(a): claims 1, 2,

20    4, and 9 of the '821 Patent.

21         15.     Costco

22         For purposes of Patent L.R. 3-1(a) and with respect to the patent at issue, Kelora asserts

23    that Costco infringes the following patent claims directly, under 35 U.S.C. § 271(a): claims 1, 2,

24    and 9 of the '821 Patent.

25         16.     HPDC

26         For purposes of Patent L.R. 3-1(a) and with respect to the patent at issue, Kelora asserts

27    that HPDC infringes the following patent claims directly, under 35 U.S.C. § 271(a): claims 1, 2,

28    and 9 of the '821 Patent.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

4

INFRINGEMENT CONTENTIONS
CASE NOS. 4:11-CV-1398, 4:11-CV-1548, 4:11-CV-2284-CW

17.     CircuitCity

For purposes of Patent L.R. 3-1(a) and with respect to the patent at issue, Kelora asserts that CircuitCity infringes the following patent claims directly, under 35 U.S.C. § 271(a): claims 1, 2, 4, and 9 of the '821 Patent.

**B.     Patent L.R. 3-1(b): Identification of Accused Instrumentalities**

For purposes of Patent L.R. 3-1(b), with respect to the patent at issue, Kelora asserts that each of the Asserted Claims is infringed by the instrumentalities identified below (collectively referred to herein as the "Accused Instrumentalities"). Kelora reserves the right to amend this identification to the full extent permitted under Patent L.R. 3-6 and/or this Court's Orders. Unless otherwise stated, Kelora's assertions of infringement apply to all editions, versions, and applications of the Accused Instrumentalities.

1.     NFM

With respect to NFM, the Accused Instrumentalities comprise the search service provided at <nfm.com>, referred to hereinafter as the "NFM Accused Instrumentality."

2.     Cabela's

With respect to Cabela's, the Accused Instrumentalities comprise the search service provided at <cabelas.com>, referred to hereinafter as the "Cabela's Accused Instrumentality."

3.     Target

With respect to Target, the Accused Instrumentalities comprise the search service provided at <target.com>, referred to hereinafter as the "Target Accused Instrumentality."

4.     OfficeMax

With respect to OfficeMax, the Accused Instrumentalities comprise the search service provided at <officemax.com>, referred to hereinafter as the "OfficeMax Accused Instrumentality."

5.     Shopko

With respect to Shopko, the Accused Instrumentalities comprise the search service provided at <shopko.com>, referred to hereinafter as the "Shopko Accused Instrumentality."

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

5                    INFRINGEMENT CONTENTIONS
CASE NOS. 4:11-CV-1398, 4:11-CV-1548, 4:11-CV-2284-CW

6.      NBF

With respect to NBF, the Accused Instrumentalities comprise the search service provided at <nationalbusinessfurniture.com>, <officefurniture.com>, <officechairs.com>, and <alfaxfurniture.com>, collectively referred to hereinafter as the "NBF Accused Instrumentalities".

7.      Rockler

With respect to Rockler, the Accused Instrumentalities comprise the search service provided at <rockler.com>, <womeninwoodworking.com>, and <routermania.com>, collectively referred to hereinafter as the "Rockler Accused Instrumentalities."

8.      1800Flowers

With respect to 1800Flowers, the Accused Instrumentalities comprise the search service provided at <1800flowers.com>, referred to hereinafter as the "1800Flowers Accused Instrumentality."

9.      PC Connection

With respect to PC Connection, the Accused Instrumentalities comprise the search service provided at <pcconnection.com>, <pcconnectionexpress.com>, and <macconnection.com>, collectively referred to hereinafter as the "PC Connection Accused Instrumentalities."

10.     Mason

With respect to Mason, the Accused Instrumentalities comprise the search services provided at <shoemall.com>, <auditionsshoes.com>, <marylandsquare.com>, <masoneasypay.com>, <masseys.com>, and <wissotatrader.com>, collectively referred to hereinafter as the "Mason Accused Instrumentalities."

11.     Amazon

With respect to Amazon, the Accused Instrumentalities comprise the search service provided at <amazon.com>, <abebooks.com>, <audible.com>, <zappos.com>, and <endless.com>, collectively referred to hereinafter as the "Amazon Accused Instrumentalities."

12.     Dell

With respect to Dell, the Accused Instrumentalities comprise the search service provided

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

6

INFRINGEMENT CONTENTIONS
CASE NOS. 4:11-CV-1398, 4:11-CV-1548, 4:11-CV-2284-CW

at <dell.com>, referred to hereinafter as the "Dell Accused Instrumentality."

13.   Office Depot

With respect to Office Depot, the Accused Instrumentalities comprise the search service provided at <officedepot.com>, referred to hereinafter as the "Office Depot Accused Instrumentality."

14.   Newegg

With respect to Newegg, the Accused Instrumentalities comprise the search services provided at <newegg.com> and <neweggbusiness.com>, collectively referred to hereinafter as the "Newegg Accused Instrumentalities."

15.   Costco

With respect to Costco, the Accused Instrumentalities comprise the search service provided at <costco.com>, referred to hereinafter as the "Costco Accused Instrumentality."

16.   HPDC

With respect to HPDC, the Accused Instrumentalities comprise the search service provided at <hp.com>, referred to hereinafter as the "HPDC Accused Instrumentality."

17.   CircuitCity

With respect to CircuitCity, the Accused Instrumentalities comprise the search service provided at <circuitcity.com>, referred to hereinafter as the "CircuitCity Accused Instrumentality."

**C.   Patent L.R. 3-1(c): Infringement Charts**

Kelora's investigation and analysis of the Accused Instrumentalities is based upon information made publicly available by Plaintiffs and Kelora's own investigations. Attached as Appendices A through Q are charts regarding infringement of the '821 Patent by Infringement Defendants.

The charts appended as Appendices A through Q set forth Kelora's current contentions with respect to where each element of the Asserted Claims is found in the Accused Instrumentalities. All citations to evidence in Kelora's Infringement Contentions are illustrative only and shall in no way limit Kelora's reliance on additional evidence obtained in discovery in

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

7

INFRINGEMENT CONTENTIONS
CASE NOS. 4:11-CV-1398, 4:11-CV-1548, 4:11-CV-2284-CW

support of its Infringement Contentions.  To the fullest extent permitted under Patent L.R. 3-6 and/or this Court's Orders, Kelora reserves the right to amend and/or supplement its Infringement Contentions for any of the following reasons:

(i) Kelora's positions regarding infringement of specific claims will depend on how those claims are construed by the Court. Because claim construction has not yet occurred, Kelora cannot take a final position on the bases for infringement of the Asserted Claims; and

(ii) While Kelora's investigation and analysis of Infringement Defendants' infringement is based upon information made publicly available by Infringement Defendants and Kelora's own investigations, additional discovery from Infringement Defendants is necessary before Kelora can take final positions on the bases for infringement of the Asserted Claims.

Unless otherwise indicated, the information provided that corresponds to each claim element is considered to indicate that each claim element is found within the identified product, device, process, method, function, or act of the Accused Instrumentalities.

1.    NFM

Appended hereto as Appendix A, and incorporated herein it its entirety, is a preliminary chart identifying specifically where each element of the Asserted Claims of the '821 Patent is found in the NFM Accused Instrumentality.

2.    Cabela's

Appended hereto as Appendix B, and incorporated herein it their entirety, are preliminary charts identifying specifically where each element of the Asserted Claims of the '821 Patent is found in the Cabela's Accused Instrumentality.

3.    Target

Appended hereto as Appendix C, and incorporated herein it their entirety, are preliminary charts identifying specifically where each element of the Asserted Claims of the '821 Patent is found in the Target Accused Instrumentality.

4.    OfficeMax

Appended hereto as Appendix D, and incorporated herein it their entirety, are preliminary charts identifying specifically where each element of the Asserted Claims of the '821 Patent is

1    found in OfficeMax Accused Instrumentality.

2              5.       Shopko

3    Appended hereto as Appendix E, and incorporated herein it their entirety, are preliminary

4    charts identifying specifically where each element of the Asserted Claims of the '821 Patent is

5    found in the Shopko Accused Instrumentality.

6              6.       NBF

7    Appended hereto as Appendix F, and incorporated herein it their entirety, are preliminary

8    charts identifying specifically where each element of the Asserted Claims of the '821 Patent is

9    found in each of the NBF Accused Instrumentalities.

10             7.       Rockler

11   Appended hereto as Appendix G, and incorporated herein it their entirety, are preliminary

12   charts identifying specifically where each element of the Asserted Claims of the '821 Patent is

13   found in each of the Rockler Accused Instrumentalities.

14             8.       1800Flowers

15   Appended hereto as Appendix H, and incorporated herein it their entirety, are preliminary

16   charts identifying specifically where each element of the Asserted Claims of the '821 Patent is

17   found in the 1800Flowers Accused Instrumentality.

18             9.       PC Connection

19   Appended hereto as Appendix I, and incorporated herein it their entirety, are preliminary

20   charts identifying specifically where each element of the Asserted Claims of the '821 Patent is

21   found in each of the PC Connection Accused Instrumentalities.

22             10.      Mason

23   Appended hereto as Appendix J, and incorporated herein it their entirety, are preliminary

24   charts identifying specifically where each element of the Asserted Claims of the '821 Patent is

25   found in each of the Mason Accused Instrumentalities.

26             11.      Amazon

27   Appended hereto as Appendix K, and incorporated herein it their entirety, are preliminary

28   charts identifying specifically where each element of the Asserted Claims of the '821 Patent is

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

9

INFRINGEMENT CONTENTIONS
CASE NOS. 4:11-CV-1398, 4:11-CV-1548, 4:11-CV-2284-CW

found in each of the Amazon Accused Instrumentalities.

12.    Dell

Appended hereto as Appendix L, and incorporated herein it their entirety, are preliminary charts identifying specifically where each element of the Asserted Claims of the '821 Patent is found in the Dell Accused Instrumentality.

13.    Office Depot

Appended hereto as Appendix M, and incorporated herein it their entirety, are preliminary charts identifying specifically where each element of the Asserted Claims of the '821 Patent is found in the Office Depot Accused Instrumentality.

14.    Newegg

Appended hereto as Appendix N, and incorporated herein it their entirety, are preliminary charts identifying specifically where each element of the Asserted Claims of the '821 Patent is found in each of the Newegg Accused Instrumentalities.

15.    Costco

Appended hereto as Appendix O, and incorporated herein it their entirety, are preliminary charts identifying specifically where each element of the Asserted Claims of the '821 Patent is found in the Costco Accused Instrumentality.

16.    HPDC

Appended hereto as Appendix P, and incorporated herein it their entirety, are preliminary charts identifying specifically where each element of the Asserted Claims of the '821 Patent is found in the HPDC Accused Instrumentality.

17.    CircuitCity

Appended hereto as Appendix Q, and incorporated herein it their entirety, are preliminary charts identifying specifically where each element of the Asserted Claims of the '821 Patent is found in the CircuitCity Accused Instrumentality.

**D.    Patent L.R. 3-1(d): Indirect Infringement**

For purposes of Patent L.R. 3-1(d) and based on the information now available to it, Kelora does not as of the date hereof assert that any of the Infringement Defendants are indirectly

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

10

INFRINGEMENT CONTENTIONS
CASE NOS. 4:11-CV-1398, 4:11-CV-1548, 4:11-CV-2284-CW

infringing the claims of the '821 patent. Kelora reserves the right to amend these Infringement Contention or otherwise assert indirect infringement to the full extent permitted under the Federal Rules of Civil Procedure, Patent L.R. 3-6, and/or this Court's Orders.

### E.    Patent L.R. 3-1(e): Literal Infringement / Doctrine of Equivalents

For purposes of Patent L.R. 3-1(e) with respect to the patent at issue, each element of each Asserted Claim is considered to be literally present and present under the Doctrine of Equivalents within each of the Accused Instrumentalities. To the fullest extent permitted under Patent L.R. 3-6 and/or this Court's Orders, Kelora reserves the right to amend and/or supplement this disclosure for any of the following reasons:

(i) Kelora's positions regarding infringement of specific claims will depend on how those claims are construed by the Court. Because claim construction has not yet occurred, Kelora cannot take a final position on the bases for infringement of the Asserted Claims under the Doctrine of Equivalents; and

(ii) While Kelora's investigation and analysis of Infringement Defendants' products and services is based upon information made publicly available by Infringement Defendants and Kelora's own investigations, additional discovery from Infringement Defendants is necessary before Kelora can take final positions on the bases for infringement of the Asserted Claims under the Doctrine of Equivalents.

### F.    Patent L.R. 3-1(f): Priority Dates

The Asserted Claims of the '821 Patent are entitled to a priority date of October 14, 1994, as a continuation of U.S. Application No. 08/943,573 (issued as U.S. Patent No. 5,983,219) filed on October 3, 1997, which is a continuation of U.S. Application No. 08/323,186 (issued as U.S. Patent No. 5,715,444) filed on October 14, 1994.

### G.    Patent L.R. 3-1(g): Kelora Instrumentality that Incorporates or Reflects the Claimed Inventions

Kelora's Product Server and Commerce Suite products incorporate or reflect each of the Asserted Claims.

1

### H.     Patent L.R. 3-1(h): Willful Infringement

2          For purposes of Patent L.R. 3-1(h) and based on the information now available to it,

3    Kelora asserts that each of the Infringement Defendants willfully infringe the claims of the '821

4    patent.  Infringement Defendants each had full knowledge of the '821 Patent and their respective

5    infringement of valid claims thereof from the date the USPTO issued the reexamination

6    certificate for the '821 Patent, or at least from when they were served with a complaint from

7    Kelora or filed declaratory judgment actions against Kelora, to the present.  Notwithstanding the

8    USPTO's confirmation in the reexamination certificate for the '821 Patent of the patentability of

9    the reexamined claims of the '821 Patent, Infringement Defendants have continued their

10   infringement of the valid claims of the '821 Patent despite the objectively high likelihood,

11   knowledge of which is chargeable to each Infringement Defendant, that their actions constituted

12   infringement of the valid '821 Patent.

13         Kelora reserves the right to amend these Infringement Contentions or otherwise assert

14   willful infringement to the full extent permitted under the Federal Rules of Civil Procedure,

15   Patent L.R. 3-6, and/or this Court's Orders.

16   ## III.     DOCUMENT PRODUCTION

17         **A.     Patent L.R. 3-2(a): Documents sufficient to evidence each discussion with,
18         disclosure to, or other manner of providing to a third party, or sale of or offer
           to sell, or any public use of, the claimed invention prior to the date of
19         application for the patent in suit.**

20         Non-privileged responsive documents known on the date hereof to be in Kelora's

21   possession, custody, or control have been produced and/or will be produced.  Per Patent L.R. 3-2,

22   these statements and productions do not constitute an admission that these statements and

23   productions evidence or are prior art under 35 U.S.C. § 102.

24         **B.     Patent L.R. 3-2(b): All documents evidencing the conception, reduction to
           practice, design, and development of each claimed invention, which were
25         created on or before the date of application for the patent in suit or the
           priority date identified pursuant to Patent L.R. 3- 1(f), whichever is earlier**
26

27         Non-privileged responsive documents known on the date hereof to be in Kelora's

28   possession, custody, or control have been produced and/or will be produced.  Per Patent L.R. 3-2,

1    these statements and productions do not constitute an admission that these statements and

2    productions evidence or are prior art under 35 U.S.C. § 102.

3         **C.        Patent L.R. 3-2(c): A copy of the file history for each patent in suit**

4         Non-privileged responsive documents known on the date hereof to be in Kelora's

5    possession, custody, or control have been produced and/or will be produced.  Per Patent L.R. 3-2,

6    these statements and productions do not constitute an admission that these statements and

7    productions evidence or are prior art under 35 U.S.C. § 102.

8         **D.        Patent L.R. 3-2(d): All documents evidencing ownership of the patent rights
              by the party asserting patent infringement**

9

10        Non-privileged responsive documents known on the date hereof to be in Kelora's

11   possession, custody, or control have been produced and/or will be produced.  Per Patent L.R. 3-2,

12   these statements and productions do not constitute an admission that these statements and

13   productions evidence or are prior art under 35 U.S.C. § 102.

14        **E.        Patent L.R. 3-2(e): Documents sufficient to show the operation of Kelora's
              Commerce Suite and Product Server to perform the asserted claims.**

15

16        Non-privileged responsive documents known on the date hereof to be in Kelora's

17   possession, custody, or control have been produced and/or will be produced.  Per Patent L.R. 3-2,

18   these statements and productions do not constitute an admission that these statements and

19   productions evidence or are prior art under 35 U.S.C. § 102.

20   Dated:    June 9, 2011              MANATT, PHELPS & PHILLIPS, LLP
                                         Robert D. Becker
21                                       Ronald S. Katz
                                         Shawn G. Hansen
22

23

24                                       By:  */s/ Robert D. Becker*_____
                                              Robert D. Becker
25                                            *Attorneys for Defendant*
                                              KELORA SYSTEMS, LLC
26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

13          INFRINGEMENT CONTENTIONS
            CASE NOS. 4:11-CV-1398, 4:11-CV-1548, 4:11-CV-2284-CW

1

## **PROOF OF SERVICE**

2

I, Faye Stephenson, declare as follows:

3        I am employed in San Francisco County, San Francisco, California.
I am over the age of eighteen years and not a party to this action.  My business
4    address is MANATT, PHELPS & PHILLIPS, LLP, 1001 Page Mill Road,
Building 2, Palo Alto, California  94304.  On June 9, 2011, I served the foregoing
5    document

6    **KELORA SYSTEMS, LLC'S DISCLOSURE OF ASSERTED CLAIMS AND
INFRINGEMENT CONTENTIONS PURSUANT TO PATENT L.R. 3-1**

7

8      on the parties in this action addressed as follows:

| | |
|---|---|
| Kimball R. Anderson | Tel:  (312) 558-5600 |
| Marlon E. Lutfiyya | Fax:  (312) 558-5700 |
| WINSTON & STRAWN LLP | Email:  kanderson@winston.com |
| 35 West  Wacker Drive | Email:  mlutfiyya@winston.com |
| Chicago, Illinois  60601-5600 | |

9

10

11

| | |
|---|---|
| **Howard Shin** | Tel:  (212) 294-6700 |
| WINSTON & STRAWN LLP | Fax: (212) 294-4700 |
| 200 Park Ave | Email:  hshin@winston.com |
| New York, NY 10166-4193 | |

12

13

| | |
|---|---|
| David S. Bloch | Tel:  (415) 591-1000 |
| WINSTON & STRAWN LLP | Fax:  (415) 591-1400 |
| 101 California Street | Email:  dbloch@winston.com |
| San Francisco, CA 94111 | |

14

15

16

*Attorneys for Defendant*
**DELL INC.**

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

INFRINGEMENT CONTENTIONS
CASE NOS. 4:11-CV-1398, 4:11-CV-1548, 4:11-CV-2284-CW

1   Daniel P. Munino                                       Tel:  (415) 268-7000

MORRISON & FOERSTER LLP                Fax: (415) 268-7522

2   425 Markey Street                             Email:  dmuino@mofo.com

San Francisco, CA  94105

3

**Shane A. Brunner**                            Tel:  (608) 280-6750

4   Joel F. Graham                                Fax:  (612) 332-9081

MERCHANT & GOULD, P.C.         Email:  sbrunner@merchantgould.com

5   10 E. Doty Street, Suite 600           Email:  jfgraham@merchantgould.com

Madison, WI 53703-3376

6

Rachel Clark Hughey                     Tel:  (612) 332-5300

7   MERCHANT & GOULD, P.C.         Fax:  (612) 332-9081

3200 IDS Center                           Email: rHughey@merchantgould.com

8   80 South 8th Street

Minneapolis, MN  55402

9

10   *Attorneys for Defendant*

**MASON COMPANIES, INC., D/B/A**

11   **MARYLAND SQUARE**

12

Matthew B. Lowrie                      Tel: (617) 342-4000

13   **Aaron W. Moore**                          Fax: (617) 342-4001

FOLEY & LARDNER LLP           Email: mlowrie@foley.com

14   111 Huntington Avenue. Suite 2600    Email: amoore@foley.com

Boston, MA 02199-7610

15

16   Gina A. Bibby                             Tel:  (650) 856-3700

FOLEY & LARDNER LLP           Fax:  (650) 856-3710

17   975 Page Mill Rd                          Email:  gbibby@foley.com

Palo Alto, CA 94304

18

*Attorneys for Defendant*

19   **PC CONNECTION, INC.**

20

21

22

23

24

25

26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

15

INFRINGEMENT CONTENTIONS
CASE NOS. 4:11-CV-1398, 4:11-CV-1548, 4:11-CV-2284-CW

1    **Niall A. MacLeod**                                            Tel: (612) 333-2111

**Niall A. MacLeod**
Aaron A. Myers
BARNES & THORNBURG LLP
225 South Sixth Street, Suite 2800
Minneapolis, Minnesota 55402

Tel: (612) 333-2111
Fax: (612-333-6798
Email: Niall.macleod@btlaw.com
Email: aaron.myers@btlaw.com

Stephen Mick
BARNES & THORNBURG LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067

Tel: (310) 284-3880
Fax: (310) 284-3894
Email: smick@btlaw.com

Robert A. Mich, Jr.
LAW OFFICES OF KAY AND ANDERSEN, LLC
One Point Place, Suite 201
Madison, WI, 53719

Tel:  (608) 833-0077
Email:  rmich@kayandandersen.com

*Attorneys for Defendant*
**ROCKLER COMPANIES, INC.**

Phillip F. Shinn
FOX ROTHSCHILD LLP
235 Pine Street, Suite 500
San Francisco, CA 94104

Tel:  (415) 364-5540
Fax:  (415) 391-4436
Email:  pshinn@foxrothschild.com

**Kent E. Baldauf, Jr.**
Bryan P. Clark
THE WEBB LAW FIRM
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA  15222

Phone: (412) 471-8815
Fax:     (412) 471-4094
Email:  kbaldaufjr@webblaw.com
Email:  bclark@webblaw.com

*Attorneys for Defendant*
**NEWEGG INC.**

Clinton J. McCord
WILDMAN, HARROLD, ALLEN & DIXON LLP
9665 Wilshire Blvd., 2nd Floor
Beverly Hills, CA 90212

Tel:   (310) 860-8715
Fax:   (310) 860-3815
Email:  mccord@wildman.com

Douglas S. Rupert
Edward Timothy Walker
**John S. Letchinger**
WILDMAN, HARROLD, ALLEN & DIXON LLP
225 West Wacker Dr., Suite 2800
Chicago, IL 60606

Tel:  (312) 201-2720
Email:  rupert@wildman.com
walker@wildman.com
letchinger@wildman.com

*Attorneys for Defendant*
**OFFICEMAX INC.**

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

16

INFRINGEMENT CONTENTIONS
CASE NOS. 4:11-CV-1398, 4:11-CV-1548, 4:11-CV-2284-CW

1

2   **David Joyal**                          Tel:    (973) 360-7900
    Barry Schindler                           Fax:    (973) 301-8410
    Michael Nicodema                          Email:  joyald@gtlaw.com
3   GREENBERG TRAURIG, LLP                    Email:  schindlerb@gtlaw.com
    200 Park Avenue                           Email:  nicodemam@gtlaw.com
4   Florham Park, NJ  07932

5   Sarah Barrows                             Tel:    (415) 655-1300
    GREENBERG TRAURIG, LLP                    Fax:    (415) 707-2010
6   153 Townsend Street, 8th Floor            Email:  barrowss@gtlaw.com
    San Francisco, CA  94107
7
    Mary-Olga Lovett                          Tel:    (713) 374-3541
8   GREENBERG TRAURIG, LLP                    Fax:    (713) 754-7541
    1000 Louisiana Street, Suite 1700         Email:  lovettm@gtlaw.com
9   Houston, TX  77002

10  *Attorneys for Defendant*
    **CIRCUITCITY.COM INC.**
11
    Joseph P. Wright                          Tel:  (608) 256.0226
12  STAFFORD ROSENBAUM LLP                    Fax: (608) 259.2600
                                              Email:  jwright@staffordlaw.com
13  222 West Washington Avenue, Suite 900
    P.O. Box 1784
14  Madison, WI 53701-1784

15  David B. Perry
    KILPATRICK TOWNSEND & STOCKTON LLP
16  Two Embarcadero Center Eighth Floor       Tel:  (415) 576-0200
    San Francisco, CA 94111                   Fax: (415) 576-0300
17                                            Email: dperry@kilpatricktownsend.com

18  **Catherine E. Hart**
    Vaibhav P. Kadaba
19  KILPATRICK TOWNSEND & STOCKTON            Tel:  (404) 815-6500
    1100 Peachtree Street, Suite 2800         Fax: (404) 815-6555
20  Atlanta, GA 30309-4530                    Email:  chart@kilpatricktownsend.com
                                              Email: wkadaba@kilpatricktownsend.com
21  *Attorneys for Defendant*
    **1-800-FLOWERS.COM, INC.**
22

23

24

25

26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

INFRINGEMENT CONTENTIONS
CASE NOS. 4:11-CV-1398, 4:11-CV-1548, 4:11-CV-2284-CW

1

2   Dan D. Davison
**Richard S. Zembek**                         Tel:   (214) 855-8000
                                              Fax:   (214) 855-8200
3   Daniel S. Leventhal                        Email:  ddavison@fulbright.com
    Gilbert A. Greene                          Email:  rzembek@fulbright.com
    FULBRIGHT & JAWORSKI L.L.P.                Email:  dleventhal@fulbright.com
4   2200 Ross Avenue, Suite 2800               Email:  ggreene@fulbright.com
    Dallas, Texas 75201-2784

5

6   John A. O'Malley                           Tel:  (213) 892-9200
    Fulbright & Jaworski LLP                   Fax:  (213) 892-9494
7   555 South Flower Street, 41st Floor        Email:  jomalley@fulbright.com
    Los Angeles, CA 90071

8

9   *Attorneys for Defendants*
    **TARGET CORPORATION, AMAZON.COM,**
    **INC., OFFICE DEPOT, INC., COSTCO**
10  **WHOLESALE CORPORATION, AND**
    **HEWLETT-PACKARD DEVELOPMENT**
11  **COMPANY, L.P.**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

18

INFRINGEMENT CONTENTIONS
CASE NOS. 4:11-CV-1398, 4:11-CV-1548, 4:11-CV-2284-CW

1   **Anthony A. Tomaselli**                              Tel:   (608) 283-2491
    Kristin Graham Noel                                   Fax:  (608) 251-9166
2   Martha Jahn Snyder                                    Email:  anthony.tomaselli@quarles.com
    QUARLES & BRADY LLP                                   Email:  kristin.noel@quarles.com
3   33 East Main Street, Suite 900                        Email:  martha.snyder@quarles.com
    P.O. Box 2113
4   Madison, WI  53701-2113

5   Callie A. Bjurstrom
    LUCE, FORWARD, HAMILTON & SCRIPPS LLP
6   600 West Broadway, Suite 2600                         Tel:  (619) 236.1414
    San Diego, California 92101-3372                      Fax:  (619) 645.5323
7                                                         Email:  cbjurstrom@luce.com

8   *Attorneys for Defendants*
    **NATIONAL BUSINESS FURNITURE, LLC**

9   David Bryant                                          Tel:  (214) 698-7801
10  COX SMITH MATTHEWS INCORPORATED                       Fax: (214) 698-7899
    1201 Elm Street, Suite 3300                           Email:  dbryant@coxsmith.com
11  Dallas, TX 75270

12  **J. Daniel Harkins**                                 Tel:  (210) 554-5500
    Marissa D. Helm                                       Fax: (210) 226-8395
13  COX SMITH MATTHEWS INCORPORATED                       Email:  dharkins@coxsmith.com
    112 E Pecan Street, Suite 1800                        Email:  mhelm@coxsmith.com
14  San Antonio, TX 78205

15  *Attorneys for Defendants*
    **SHOPKO STORES OPERATING CO., LLC**
16
    **Wendy Kemp Akbar**                                  Tel:  (602) 229-5611
17  Gregory Phillip Sitrick                               Fax:  (602) 420-5198
    QUARLES AND BRADY LLP                                 Email:  wendy.akbar@quarles.com
18  One Renaissance Square                                Email:  gregory.sitrick@quarles.com
    Two North Central Avenue
19  Phoenix, AZ 85004

20  *Attorneys for Plaintiff*
    **CABELA'S INC.**
21
22  **Roderick M. Thompson**                              Tel:  (415) 954-4400
    FARELLA BRAUN & MARTEL LLP                            Fax:  (415) 954-4480
23  235 Montgomery Street, 17th Floor                     Email:  rthompson@fbm.com
    San Francisco, CA 94104
24  Telephone:

25  *Attorneys for Plaintiff*
    **NEBRASKA FURNITURE MART, INC.**
26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

19                    INFRINGEMENT CONTENTIONS
         CASE NOS. 4:11-CV-1398, 4:11-CV-1548, 4:11-CV-2284-CW

1

☒      (BY OVERNIGHT MAIL) By placing such document(s) in a sealed envelope, for collection and overnight mailing at Manatt, Phelps & Phillips, LLP, Palo Alto, California following ordinary business practice. I am readily familiar with the practice at Manatt, Phelps & Phillips, LLP for collection and processing of overnight service mailing, said practice being that in the ordinary course of business, correspondence is deposited with the overnight messenger service, Federal Express, for delivery as addressed.

2

3

4

5

6          I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

7

8          Executed on June 9, 2011, at Palo Alto, California.

9                                                        __/s/ Faye Stephenson_____
                                                          Faye Stephenson

10

11    300264662.1

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

20            INFRINGEMENT CONTENTIONS
CASE NOS. 4:11-CV-1398, 4:11-CV-1548, 4:11-CV-2284-CW