MANATT, PHELPS & PHILLIPS, LLP
ROBERT D. BECKER (Bar No. CA 160648)
E-mail: rbecker@manatt.com
RONALD S. KATZ (Bar No. CA 085713)
E-mail: rkatz@manatt.com
SHAWN G. HANSEN (Bar No. CA 197033)
E-mail: shansen@manatt.com
1841 Page Mill Road, Suite 200
Palo Alto, CA 94304
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

*Attorneys for*
KELORA SYSTEMS, LLC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| eBay Inc. and Microsoft Corporation,<br><br>*Plaintiffs and Counterclaim-Defendants*,<br><br>v.<br><br>Kelora Systems, LLC,<br><br>*Defendant and Counterclaim-Plaintiff.* | No. 4:10-cv-4947-CW (filed Nov. 2, 2010)<br><br>**KELORA SYSTEMS, LLC'S OBJECTIONS TO BILL OF COSTS FROM MICROSOFT CORPORATION; SUPPORTING DECLARATION OF ROBERT D. BECKER** |
| Cabela's Inc.,<br><br>*Plaintiff and Counterclaim-Defendant*,<br><br>v.<br><br>Kelora Systems, LLC,<br><br>*Defendant and Counterclaim-Plaintiff.* | No. 4:11-cv-1398-CW (filed Mar. 23, 2011)<br>(related case) |

| | |
|---|---|
| Kelora Systems, LLC,<br><br>*Plaintiff and Counterclaim-Defendant*,<br><br>v.<br><br>Target Corporation; Amazon.com, Inc.; Dell, Inc.; Office Depot, Inc.; Newegg Inc.; Costco Wholesale Corporation; Hewlett-Packard Company; Audible, Inc.; and Zappos.com, Inc.,<br><br>*Defendants and Counterclaim-Plaintiffs*. | No. 4:11-cv-1548-CW (filed Nov. 8, 2010)<br>(related case) |

# KELORA SYSTEMS, LLC'S OBJECTIONS TO BILL OF COSTS

Pursuant to Federal Rule of Civil Procedure 54 and Civil Local Rule 54, Kelora Systems, LLC ("Kelora") respectfully submits the following objections to the Bill of Costs from Microsoft Corporation ("Microsoft") filed on June 6, 2012 (*see* Case No. 4:10-cv-4947-CW, Dkt. No. 160).[1]

## I. INTRODUCTION

In light of recent Supreme Court authority addressing Federal Rule of Civil Procedure 54(d)(1) ("Rule 54(d)(1)") and that rule's sole statutory basis, 28 U.S.C. Section 1920 ("Section 1920"), as well as recent Circuit authority analyzing Rule 54(d)(1) and Section 1920 in the specific context of e-discovery, the costs sought by Microsoft in its Bill of Costs should be substantially reduced.

Just two months ago, on May 21, 2012, the Supreme Court in *Taniguchi v. Kan Pacific Saipan, Ltd.,* reversed the Ninth Circuit's efforts to broadly read Rule 54(d)(1) and Section 1920 so as to award certain costs (translation costs) to a prevailing party. *Id.,* --- S.Ct. ----, 2012 WL 1810216 (2012). In its decision reversing the Ninth Circuit, the Supreme Court reiterated that "[t]axable costs are limited to relatively minor, incidental expenses" and that Rule 54(d)(1) and Section 1920 should be read narrowly. *Id.* at *8. "Our decision is in keeping with the narrow scope of taxable costs . . . . [W]e have never held that Rule 54(d) creates a presumption of statutory construction in favor of the broadest possible reading of the costs enumerated in § 1920." *Id*. To reach its decision in the *Taniguchi* case, the Supreme Court expressly relied on its prior holding in *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, which explained that Section 1920 reflected Congress' intent to "impose rigid controls on cost-shifting in federal courts." *See id.; Crawford Fitting*, 482 U.S. 437, 444 (1987).

Just four months ago, on March 16, 2012, the Third Circuit in *Race Tires Am. Inc. v. Hoosier Racing Tire Corp.*, relied on rationales similar to those set forth in the Supreme Court's *Tanaguchi* and *Crawford Fitting* decisions to reverse a district court's efforts to broadly read Rule 54(d)(1) and Section 1920 so as to make an impermissibly large award of e-discovery costs.

---

[1] Kelora submits its objections by July 9, 2012, as permitted pursuant to the Stipulations and Orders entered on June 21, 2012. *See* Case No. 4:10-cv-4947-CW, Dkt. No. 165; Case No. 4:11-cv-1398-CW, Dkt. No. 136; Case No. 4:11-cv-1548-CW, Dkt. No. 497.

*See id.,* 674 F.3d 158 (3d Cir. 2012). Specifically, the Third Circuit's *Race Tires* decision held that costs made in connection with e-discovery are taxable pursuant to Section 1920(4) only to the extent such costs are for ***scanning*** or ***file format conversion*** of ***documents actually produced***, and that other e-discovery costs, such as costs for collecting and processing documents for review, are not recoverable under Section 1920(4)'s "costs of making copies"-provision. *See id.* at 160 ("[O]nly scanning and file format conversion can be considered to be 'making copies.'"). In *Race Tires*, the Third Circuit engaged in the most detailed and comprehensive analysis to date of the types of e-discovery costs that can be recovered under Section 1920(4), and in the process aptly observed that "it may be that extensive 'processing' of ESI [electronically stored information] is essential to make a comprehensive and intelligible production. . . . [b]ut that does not mean that the services leading up to the actual production constitute 'making copies.' [¶] The process employed in the pre-digital era to produce documents in complex litigation similarly involved a number of steps essential to the ultimate act of production." *Id.* at 169; *see also id.* at 169 *quoting Romero v. City of Pomona*, 883 F.2d 1418, 1428 (9th Cir. 1989) ("fees are permitted only for the physical preparation and duplication of documents, not the intellectual effort involved in their production."). The Third Circuit's narrow reading of Rule 54(d)(1) and Section 1920 in its *Race Tires* decision is consistent with the general "'American rule' against shifting the expense of litigation to the losing party." *Id.* at 164.

Judges in this District have previously relied on statements in the Ninth Circuit's now-reversed *Taniguchi* Court of Appeals decision to support a broad reading of Section 1920 so as to justify awards of costs – including for substantial e-discovery costs, and despite rulings such as the Third Circuit's *Races Tires* decision. *See, e.g., In re Online DVD Rental Antitrust Litigation*, 2012 WL 1414111, at *1 (N.D. Cal., April 20, 2012) *citing Taniguchi v. Kan Pacific Saipan, Ltd.*, 633 F.3d 1218, 1221 (9th Cir. 2011) [*reversed by Taniguchi, supra,* --- S.Ct. ----, 2012 WL 1810216 (2012)]. But now that the Supreme Court has expressly repudiated the Ninth Circuit's endorsement (in the *Taniguchi* Court of Appeals decision) of such broad readings of Section 1920, both the rationale and specific holdings of the Third Circuit's *Races Tires* decision regarding e-discovery should be followed. In particular, awards of e-discovery costs should be

limited to just those costs for ***scanning* or *file format conversion* of *documents actually produced***.

Finally, in addition to the Supreme Court's *Taniguchi* decision and the Third Circuit's *Race Tires* decision, decisions which primarily address the limited types of costs that are recoverable under one of Section 1920's specifically-enumerated categories, a long line of authority emphasizes that even when a particular type of cost falls within one of those categories, the party seeking costs still bears the burden of providing sufficient documentation (e.g. detailed invoices and/or declarations) in order to recover such costs, and "[p]revailing parties necessarily assume the risks inherent in a failure to meet that burden." *English v. Colorado Dept. Of Corrections,* 248 F.3d 1002, 1013 (10th Cir. 2001); *accord Ferreira v. M/V CCNI Antofagasta*, 2007 WL 3034941, at *1-2 (E.D. Cal. Oct. 16, 2007) *citing English v. Colorado Dept. Of Corrections* ("The mere recitation of the phrase 'necessarily incurred,' as Plaintiff has done in his Bill of Costs, is not sufficient to meet the requirements of Section 1920 . . . Plaintiff has failed to provide the Court with any specific basis justifying" his [copying] costs.); N.D. Cal. Civil L.R. 54-1(a) ("The bill [of costs] must state separately and specifically each item of taxable costs claimed ... Appropriate documentation to support each item claimed must be attached to the bill of costs. ").

Applying all of the above to the Bill of Costs submitted by Microsoft, it is clear that: (1) Microsoft has sought recovery for several costs, especially e-discovery costs, that do not fall within one of Section 1920's specifically-enumerated categories; and (2) even as to costs that do fall within one of Section 1920's specifically-enumerated categories, Microsoft has not provided sufficiently-specific documentation – in particular, underlying invoices are missing, do not provide meaningful descriptions and/or do not distinguish between recoverable and non-recoverable costs. Further explanation of Kelora's objections is set forth below.

///
///
///
///

## II. KELORA'S OBJECTIONS TO COSTS SOUGHT

### A. Fees of the Clerk

*Pro Hac Vice Application Fees*

Kelora objects to the *pro hac vice* application fees of **$825.00** sought by Microsoft.[2] As Judge Jeffery S. White has explained, such fees are simply an incidence to practicing law and, thus, not taxable under Section 1920(1). *See, e.g., Gidding v. Anderson*, 2008 WL 5068524, at *2 (N.D. Cal. Nov. 24, 2008). Similarly, Magistrate Judge Joseph C. Spero explained in *Competitive Techs. v. Fujitsu Ltd.*, 2006 WL 6338914 (N.D. Cal. Aug. 23, 2006), that *pro hac vice* application fees are not recoverable as costs for reasons including that "such fees are an expense of counsel that is not normally passed on to its clients." *Id.* at *3-4. The majority of judges in this District to have addressed this issue have disallowed recovery of such fees as taxable costs under Section 1920(1).[3]

### B. Fees for Service of Summons and Subpoena

*Fees for Service of Summons*

Kelora objects to the service of summons fees of **$491.61** sought by Microsoft.[4] Microsoft did not ask Kelora to waive service of the summons under FRCP 4(d). *See* Supporting Declaration of Robert D. Becker, ¶ 2. Therefore, those service fees were not necessarily incurred, and are not recoverable under Section 1920(1). *See Thompson v. LVNV Funding, LLC*, 2011 WL 846858 (D. Or. Mar. 09, 2011). The holding of the *Thompson* court, is consistent with this Court's the local rules, which require that such services fees are only recoverable "to the extent reasonably required and actually incurred." N.D. Cal. Civil L.R. 54-3(a)(2). Because Microsoft did not seek a waiver, Microsoft cannot claim that those service of summons fees were "reasonably required."

---

[2] *See* Bill of Costs from Microsoft, Exhibit B-1 ($275.00 of $550.00 in shared *pro hac vice* application costs), B-3 ($550.00 in Microsoft-only *pro hac vice* application costs).

[3] Judge William Alsup has allowed recovery of *pro hac vice* application fees, but he has done so without citing *Gidding v. Anderson* or *Competitive Techs. v. Fujitsu Ltd.* and without addressing the grounds set forth in those cases for denying recovery of such fees under Section 1920(1). *See Gutierrez v. Wells Fargo Bank N.A.,* 2010 WL 5025663, at *1 (N.D. Cal. Dec. 3, 2010).

[4] *See* Bill of Costs from Microsoft, Exhibit B-1 ($358.27 of $716.54 in shared service of summons costs), B-3 ($133.34 in Microsoft-only service of summons costs).

## C. Fees for printed or electronically recorded transcripts necessarily obtained for this case

*Hearing Transcript Fees*

Kelora objects to the hearing transcript fees of **$344.15** sought by Microsoft.[5] Pursuant to local rule, such costs are assumed, absent court order, not to be recoverable – "The cost of other transcripts is not normally allowable unless, before it is incurred, it is approved by a Judge or stipulated to be recoverable by counsel." N.D. Cal. Civil L.R. 54-3(b). To the extent Microsoft would argue that the such transcripts were necessary for the case, Microsoft should have, pursuant to local rule, first sought an order to that effect. Additionally, even if such fees were recoverable, Microsoft would not be entitled to costs for additional copies of those transcripts. *See* Bill of Costs from Microsoft, Exhibit C, 12/8/11 invoice (showing costs for additional copies of $88.80 and $66.60).[6]

*Deposition Transcript Fees*

Kelora objects to deposition transcript fees of **$6,502.60** sought by Microsoft. Microsoft is entitled (for each deposition) only to costs for either: 1) an original stenographic transcript and a copy (and exhibits); or 2) a videotape and a copy (and exhibits). In particular, deposition transcript fees should not include costs for: both a stenographic transcript and a videotape, roughs, Realtime, video services, expedited preparation, or delivery. *See, e.g.,* N.D. Cal. Civil L.R. 54-3; *ATS Products Inc. v. Ghiorso*, 2012 WL 1194151 (N.D. Cal. April 10, 2012) (denying recovery for duplicative videotape and other costs); *Ishida Co., Ltd. v. Taylor*, 2004 WL 2713067 (N.D. Cal. Nov. 29, 2004) (denying recovery for Realtime and other costs).[7]

Kelora, therefore, objects to all such deposition transcript fees other than those for: 1) an

---

[5] *See* Bill of Costs from Microsoft, Exhibit C ($344.15 of $688.30 in shared hearing transcript fees).

[6] Also, to the extent Microsoft would argue that the such transcripts are authorized by N.D. Cal. Civil L.R. 54-3(b)(1), that argument should not prevail because Microsoft sought the costs before Kelora filed its appeal and, in any event, Kelora will be including the transcripts in the Appendix for the appeal.

[7] To the extent Microsoft would rely on *In re Ricoh Co., Ltd. Patent Litigation*, 661 F.3d 1361 (Fed. Cir. 2011), to support its claim for recovery of costs for both stenographic transcript and videotape, the *Ricoh* court expressly acknowledged that this District had split on this issue. *See id.* at 1370, fn. 5. Therefore, especially since Microsoft has not shown the necessity of both methods of recording the deposition (or for incurring the other costs objected to by Kelora – e.g., roughs, Realtime, video services, expedited preparation, delivery), cases such as the post-*Ricoh* decision of *ATS Products Inc.* should be followed, and the Court should deny recovery for the duplicative costs for videotape (as well as the other costs objected to by Kelora).

original stenographic transcript and a copy (and exhibits); or 2) a videotape and a copy (and exhibits). Attached hereto as **Exhibit 1** is a table which includes information that corresponds to the documentation submitted by Microsoft, and that **Exhibit 1** specifically indicates the deposition transcript fees that Kelora does not object to. Otherwise, for the above-stated reasons, Kelora objects to all other deposition transcript fees that are reflected in the documentation submitted by Microsoft. *See* Bill of Costs from Microsoft, Exhibits D-1, D-3. As a result, Kelora believes that Microsoft is, at most, only entitled to recover costs of **$9,596.38** for deposition transcript fees.

### D. Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case

*Document Production Fees*

Kelora objects to the document production fees of **$18.077.73** sought by Microsoft pursuant to Section 1920(4). The vast majority of such costs sought by Microsoft are not authorized as taxable under Section 1920(4), and to the extent some of those costs may be authorized, Microsoft has failed to meet its burden of providing sufficient documentation (e.g. detailed invoices and/or declarations) in order to show such costs are recoverable.

First, as explained in the Introduction above, recent Circuit authority, *Race Tires Am. Inc. v. Hoosier Racing Tire Corp.*, specifically addresses the scope of Section 1920(4) with respect to e-discovery costs and holds that such costs are taxable only to the extent such costs are for ***scanning* or *file format conversion* of *documents actually produced***. Other e-discovery costs, such as costs for collecting and processing documents for review, are not recoverable under Section 1920(4)'s "costs of making copies"-provision. *See supra,* Section I; *see also Race Tires Am. Inc.,* 674 F.3d at 160 ("[O]nly scanning and file format conversion can be considered to be 'making copies.'").

Second, as also noted in the Introduction above, the *Race Tires* decision is consistent with even more recent Supreme Court authority, *Taniguchi v. Kan Pacific Saipan, Ltd.*, which reversed the Ninth Circuit's efforts to broadly read Section 1920 so as to award certain costs (translation costs) to a prevailing party, explaining that Section 1920 should be read narrowly because

"[t]axable costs are limited to relatively minor, incidental expenses." *See supra,* Section I; *see also Taniguchi,* 2012 WL 1810216, at *8 ("Our decision is in keeping with the narrow scope of taxable costs . . . . [W]e have never held that Rule 54(d) creates a presumption of statutory construction in favor of the broadest possible reading of the costs enumerated in § 1920."); *see also Crawford Fitting*, 482 U.S. at 444 (stating that Section 1920 reflected Congress' intent to "impose rigid controls on cost-shifting in federal courts").

Third, as also emphasized in the Introduction, there is substantial authority explaining that even when a particular type of cost falls within one of Section 1920's narrow categories, the party seeking costs still bears the burden of providing sufficient documentation in order to recover such costs. *See supra,* Section I; *see also English,* 248 F.3d at 1013 ("Prevailing parties necessarily assume the risks inherent in a failure to meet that burden."); *Ferreira*, 2007 WL 3034941, at *1-2; N.D. Cal. Civil L.R. 54-1(a) ("The bill [of costs] must state separately and specifically each item of taxable costs claimed ... Appropriate documentation to support each item claimed must be attached to the bill of costs. ").[8]

Applying the above-described law to document production fees sought by Microsoft, it is clear that the documentation submitted by Microsoft does not support an award of the costs sought. That documentation indicates that the costs sought are not taxable, or that documentation does not sufficiently specify that the costs sought are taxable – i.e. costs for ***scanning* or *file format conversion* of *documents actually produced***. In particular it appears that substantial costs were incurred in connection with pre-production, search, collection and/or review of documents other than those actually produced to Kelora. *See* Bill of Costs from Microsoft, Exhibit E-2, including attached invoices. For example, the 10/28/11 Invoice (0102213) makes reference to "Search Terms ... $2,420.25", "Export ... $1,272.00" and "Project management ... $240.00". But the fees for using "Search Terms" to locate potentially responsive documents is not taxable, it is not clear whether the "Export[ing]" that was done so as to produce documents to Kelora (as opposed to exporting for pre-production review of numerous documents not actually produced to

---
[8] During meet and confer discussions, Kelora's counsel raised the issue of being provided with documentation that sufficiently identified costs incurred for scanning and file format conversion of documents actually produced to Kelora. *See* **Exhibit 2A** attached hereto (June 18, 2012 Email from Neil Swartzberg).

Kelora), and "Project management" professional fees associated with e-discovery are not recoverable. *See Race Tires*, 674 F.3d at 169-71; *see also id*. at 169 ("it may be that extensive 'processing' of ESI [electronically stored information] is essential to make a comprehensive and intelligible production. . . . [b]ut that does not mean that the services leading up to the actual production constitute 'making copies.'"). The other invoicing submitted by Microsoft contains similarly insufficient detail and thus also does not support any award of costs sought. *See id.* [9]

As a result, Kelora believes that, based on the documentation submitted, Microsoft is not entitled to recover any document production fees sought. [10]

///
///
///
///
///
///
///
///

---

[9] The attorney declaration that makes the generic assertion that the document productions fees sought were for "the cost of making source code available . . . and for producing other documents" (Declaration of Theodore W. Chandler, ¶ 8) does not provide any additional insight into critical areas, such as which fees were for "intellectual efforts," and which fees were for pre-production collection and/or review (as opposed to actual production to Kelora). Therefore, that declaration is insufficient to support the award of costs sought for document productions fees. *See, e.g., Ferreira*, 2007 WL 3034941, at *1-2 *citing English v. Colorado Dept. Of Corrections,* 248 F.3d at 1013.

[10] To the extent Microsoft would rely on *In re Ricoh Co., Ltd. Patent Litigation*, 661 F.3d 1361, to support its claim for recovery of e-discovery costs beyond that permitted under *Race Tires*, it is important to note the following: (1) the *Ricoh* court's statement that "the costs of producing a document electronically can be recoverable" is not necessarily in conflict with the *Race Tires* court holding that such costs are limited to costs for "only scanning and file format conversion." (*Race Tires Am. Inc.,* 674 F.3d at 160); (2) the *Ricoh* court made its decision before the *Race Tires* decision and before the Supreme Court's *Taniguchi* decision; (3) the *Race Tires* decision specifically addressed the *Ricoh* decision -- finding that its holding was not in conflict with the *Race Tires* ruling that limits recoverable e-discovery costs to costs for "only scanning and file format conversion (*Race Tires Am. Inc.,* 674 F.3d at 171, fn. 11). Also, as noted in the Introduction, with respect to e-discovery costs, Microsoft should not be permitted to rely on district court decisions issued before the Supreme Court's *Taniguchi* decision (*e.g., In re Online DVD Rental Antitrust Litigation*, 2012 WL 1414111, (N.D. Cal., April 20, 2012), and the rationale and specific holdings of the *Races Tires* decision regarding e-discovery should be followed. *See supra*, Section I. Further, the Third Circuit expressly noted the parties' Case Management Order governing the formats of production in the *Race Tires* case -- which order is substantially similar to the Case Management Order in this case regarding formats of production. *See* 674 F.3d at 161. Still, the Third Circuit went on to say, "only the conversion of native files to TIFF (the agreed-upon default format for production of ESI), and the scanning of documents to create digital duplicates are generally recognized as the taxable 'making copies of material.'" *Id.* at 167.

## III. CONCLUSION

For the reasons stated herein, Microsoft should not be awarded the above-described costs to which Kelora has objected.[11]

Dated: July 9, 2012                    MANATT, PHELPS & PHILLIPS, LLP

By: */s/ Robert D. Becker*
      Robert D. Becker
      Ronald S. Katz
      Shawn G. Hansen
      MANATT, PHELPS & PHILLIPS, LLP
      1841 Page Mill Road, Suite 200
      Palo Alto, CA 94304
      Telephone: (650) 812-1300
      Email: rbecker@manatt.com
      Email: rkatz@manatt.com
      Email: shansen@manatt.com

      *Attorneys for*
      KELORA SYSTEMS, LLC

---

[11] Counsel for Kelora represents that, pursuant to Local Rule 54-2, counsel for the respective parties have met and conferred in an effort to resolve disagreements about the costs claimed in the bill. A copy of meet and confer correspondence between counsel for the respective parties is attached hereto as **Exhibit 2A-2B**.

## **SUPPORTING DECLARATION OF ROBERT D. BECKER**

I, Robert D. Becker, declare as follows:

1. I am an attorney with the law firm of Manatt, Phelps and Phillips, counsel for Kelora Systems, LLC ("Kelora") in the above-captioned actions. The facts below are true and correct, within my own personal knowledge, including through my communications with my colleagues and my review of materials, including relevant court filings, in my role as an attorney in these actions. If called upon to do so, I could and would competently testify as to those facts.

2. In response to Kelora raising the issue of waiver of service pursuant to Federal Rule of Civil Procedure 4(d), no counsel for any declaratory judgment plaintiff in the above-captioned cases has indicated that it sought waiver of service for any summons in the cases.

I declare under the pains and penalty of perjury, under the laws of California and the United States, that the foregoing is true and correct. Executed this 9th day of July, 2012 at Palo Alto, California.

*/s/ Robert D. Becker*

Robert D. Becker

303238390.3