1    [JOINT FILING — SEE SIGNATURE PAGE FOR LIST OF COUNSEL]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| eBay Inc. and Microsoft Corporation, | No. 4:10-cv-4947-CW-LB (filed Nov. 2, 2010) |
|     *Plaintiffs and Counterclaim-Defendants*, | **DEFENDANTS' COMBINED OPPOSITION TO KELORA'S MOTIONS TO REVIEW THE CLERK'S ORDERS ON BILLS OF COSTS** |
| vs. | |
| Kelora Systems, LLC, | Hr'g Date:  No hearing will be held[*] |
|     *Defendant and Counterclaim-Plaintiff.* | Judge:       Magistrate Beeler[†] <br>               (San Francisco) |
| Cabela's Inc., | No. 4:11-cv-1398-CW-LB (filed Mar. 23, 2011) (related case) |
|     *Plaintiff and Counterclaim-Defendant*, | |
| vs. | |
| Kelora Systems, LLC, | |
|     *Defendant and Counterclaim-Plaintiff.* | |

---

[*] *See* Joint Stipulation and Order, Case No. 10-4947, ECF Nos. 176–77 (Aug. 6–7, 2012).

[†] Judge Wilken referred all motions concerning review of the Clerk's taxation of costs to Magistrate Beeler. *See* Case No. 10-4947, ECF No. 180 (Oct. 10, 2012).

Kelora Systems, LLC,

      *Plaintiff and Counterclaim-Defendant*,

      vs.

Target Corporation; Amazon.com, Inc.; Dell Inc.; Office Depot, Inc.; Newegg Inc.; Costco Wholesale Corporation; Hewlett-Packard Company; Audible, Inc.; and Zappos.com, Inc.,

      *Defendants and Counterclaim-Plaintiffs*.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 4:11-cv-1548-CW-LB (filed Nov. 8, 2010) (related case)

DEFENDANTS' OPPOSITION TO KELORA'S MOTIONS RE: COSTS
Nos. 10-4947-CW-LB, 11-1398-CW-LB, 11-1548-CW-LB

## NOTICE

In accordance with the Joint Stipulation and Order Changing the Briefing Schedule, *see* Case No. 10-4947, ECF Nos. 176–77 (Aug. 6–7, 2012), Defendants[†] hereby file this combined opposition brief to the motions that Kelora has filed in the three actions above concerning the costs awarded by the Clerk. For clarity, listed below are the ECF numbers for the Bills of Costs and motions by Kelora that are the subject of this combined opposition brief:

| Case No. | Party | Bill of Costs | Supporting Declaration | Kelora's Objections and Defs.' Response | Clerk's Taxation of Costs | Kelora's Motion to Review |
|---|---|---|---|---|---|---|
| 10-4947 | eBay | ECF #159 (6/12/12) | ECF #161 (6/6/12) | ECF #168 (7/9/12) | ECF #172 (7/20/12) | ECF #174 (7/26/12) |
| | Microsoft | ECF #160 (6/6/12) | | ECF #169 (7/9/12) | ECF #171 (7/20/12) | ECF #173 (7/26/12) |
| 11-1398 | Cabela's | ECF #132 (6/6/12), *amended*, ECF #150 (8/13/12) | ECF ##142–49 (8/13/12) | ECF #139 (7/9/12), *amended*, ECF #152 (9/6/12) | ECF #153 (10/10/12) | ECF #155 (10/17/12) |
| 11-1548 | Dell | ECF #487 (6/6/12) | ECF #487 (6/6/12) | ECF #501 (7/9/12) | ECF #508 (7/19/12) | ECF #518 (7/26/12) |
| | Newegg | ECF #488 (6/6/12) | ECF #488 (6/6/12) | ECF #500 (7/9/12) | ECF #509 (7/19/12) | ECF #520 (7/26/12) |
| | Amazon, Audible, Zappos | ECF #489 (6/6/12) | ECF #489 (6/6/12) | ECF #506 (7/9/12) | ECF #510 (7/19/12) | ECF #517 (7/26/12) |
| | Costco | ECF #490 (6/6/12) | ECF #490 (6/6/12) | ECF #505 (7/9/12) | ECF #511 (7/19/12) | ECF #516 (7/26/12) |
| | HP | ECF #491 (6/6/12) | ECF #491 (6/6/12) | ECF #504 (7/9/12) | ECF #512 (7/19/12) | ECF #519 (7/26/12) |
| | Office Depot | ECF #492 (6/6/12) | ECF #492 (6/6/12) | ECF #503 (7/9/12) | ECF #513 (7/19/12) | ECF #521 (7/26/12) |
| | Target | ECF #493 (6/6/12) | ECF #493 (6/6/12) | ECF #502 (7/9/12) | ECF #507 (7/18/12) | ECF #514–15 (7/25–26/12) |

---

[†] eBay Inc.; Microsoft Corporation; Cabela's Inc.; Target Corporation; Amazon.com, Inc.; Dell Inc.; Office Depot, Inc.; Newegg Inc.; Costco Wholesale Corporation; Hewlett-Packard Company; Audible, Inc.; and Zappos.com, Inc.

DEFENDANTS' OPPOSITION TO KELORA'S MOTIONS RE: COSTS
Nos. 10-4947-CW-LB, 11-1398-CW-LB, 11-1548-CW-LB

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................................ 1

II.     FACTUAL BACKGROUND .............................................................................................. 1

        A.      Defendants were required to respond to Kelora's many discovery requests
                while their motion for summary judgment was pending ................................. 1

        B.      The e-discovery costs that are the subject of this motion were incurred
                producing documents in the format requested by Kelora ............................. 3

III.    ARGUMENT ...................................................................................................................... 4

        A.      The burden is on Kelora to show why costs should not be awarded to
                Defendants ..................................................................................................... 4

        B.      E-discovery costs are recoverable under 28 U.S.C. § 1920(4) and N.D. Cal.
                Civil L.R. 54-3(d)(2) ....................................................................................... 4

                1.      The Federal Circuit's decision in *In re Ricoh* allowed recovery of e-
                        discovery costs under Ninth Circuit law ............................................ 5

                2.      In the Ninth Circuit, the relevant test is whether the disputed costs are
                        for "physical preparation" (which is recoverable) or "intellectual
                        efforts" (which is not recoverable) .................................................... 5

                3.      Costs for copying *all* materials are recoverable, not just the materials
                        *actually produced* to Kelora ........................................................... 7

                4.      Kelora requested the format in which documents were produced and
                        thus should not be permitted to complain about the costs associated
                        with the format for those productions ................................................ 8

                5.      The Supreme Court's recent decision in *Taniguchi* concerned costs for
                        interpreters under § 1920(6), not e-discovery costs under § 1920(4) .............. 9

                6.      The Third Circuit's decision in *Race Tires* is not binding precedent,
                        conflicts with the decisions of other circuits, and has not been followed
                        in this district ................................................................................... 10

        C.      Taxation of costs is supposed to be a simple, clerical matter and does not
                require the evidentiary detail suggested by Kelora ....................................... 13

        D.      Defendant-specific arguments .................................................................... 16

                1.      eBay ................................................................................................ 16

                2.      Microsoft ......................................................................................... 17

                3.      Cabela's .......................................................................................... 18

                4.      Dell .................................................................................................. 19

DEFENDANTS' OPPOSITION TO KELORA'S MOTIONS RE: COSTS
Nos. 10-4947-CW-LB, 11-1398-CW-LB, 11-1548-CW-LB

| | 5. | Newegg | 20 |
|---|---|---|---|
| | 6. | Amazon, Audible, Zappos | 22 |
| | 7. | Costco | 23 |
| | 8. | HP | 23 |
| | 9. | Office Depot | 24 |
| | 10. | Target | 25 |
| IV. | CONCLUSION | | 25 |

DEFENDANTS' OPPOSITION TO KELORA'S MOTIONS RE: COSTS
Nos. 10-4947-CW-LB, 11-1398-CW-LB, 11-1548-CW-LB

<u>**Cases**</u>

*Alflex Corp. v. Underwriters Labs., Inc.*,
   914 F.2d 175 (9th Cir. 1990) (per curiam)........................................................ 8, 10

*AmeriPride Servs., Inc. v. Valley Indus. Serv., Inc.*,
   No. 00-113, 2012 WL 1641749 (E.D. Cal. May 9, 2012) .................................. 9, 22

*Chellino v. Kaiser Foundation Health Plan*,
   No. 07-3019, 2010 WL 583970 (N.D. Cal. Feb. 16, 2010) (Breyer, J.) .......... 15, 17

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*,
   482 U.S. 437 (1987)............................................................................................ 9, 10

*Day v. Apoliona*,
   496 F.3d 1027 (9th Cir. 2007) ................................................................................ 12

*El Dorado Irrigation Dist. v. Traylor Bros. Inc.*,
   No. 03-949, 2007 WL 512428 (E.D. Cal. Feb. 12, 2007)........................................ 16

*English v. Colorado Dept. of Corr.*,
   248 F.3d 1002 (10th Cir. 2001) ........................................................................ 15, 16

*Haagen-Dazs Co. v. Double Rainbow Gourmet Ice Creams, Inc.*,
   920 F.2d 587 (9th Cir. 1990) (per curiam)............................................................... 7

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ................................................................................... 10

*Imaginal Systematic, LLC v. Leggett & Platt, Inc.*,
   No. 10-7416 (C.D. Cal. July 27, 2012) ................................................................... 13

*In re Complaint of Ross Island Sand & Gravel*,
   226 F.3d 1015 (9th Cir. 2000) (per curiam)............................................................. 8

*In re Online DVD Rental Antitrust Litigation*,
   No. 09-2029, 2012 WL 1414111 (N.D. Cal. Apr. 20, 2012) (Hamilton, J.).......... 10, 11

*In re Paoli R.R. Yard PCB Litig.*,
   221 F.3d 449 (3d Cir. 2000).................................................................................... 18

*In re Ricoh Co. Patent Litig.*,
   661 F.3d 1361 (Fed. Cir. 2011).......................................................................passim

*In re Ricoh Co. Patent Litig.*,
   No. 03-2289, 2012 WL 1499191 (N.D. Cal. Apr. 26, 2012) (Ware, C.J.) .......... 9, 18, 20

*Int'l Rectifier Corp. v. IXYS Corp.*,
   383 F.3d 1312 (Fed. Cir. 2004)................................................................................ 8

*Jardin v. DATAllegro, Inc.*,
No. 08-1462, 2011 WL 4835742 (S.D. Cal. Oct. 12, 2011) ...........................................passim

*LG Elecs., Inc. v. Bizcom Elecs., Inc.*,
No. 01-1375 (N.D. Cal. July 21, 2005) (Wilken, J.), *available at* Ex. P ........................ 1, 5, 6

*Lopez v. San Francisco Unified School Dist.*,
385 F. Supp. 2d 981 (N.D. Cal. 2005) (Illston, J.)..................................................................9

*Ohio Willow Wood Co. v. Thermo-Ply, Inc.*,
629 F.3d 1374 (Fed. Cir. 2011).............................................................................................3

*Parrish v. Manatt, Phelps & Phillips, LLP*,
No. 10-3200, 2011 WL 1362112 (N.D. Cal. Apr. 11, 2011) (Alsup, J.) ................... 8, 11, 14

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*,
674 F.3d 158 (3d Cir. 2012), *cert. denied*,
81 U.S.L.W. 3001 (U.S. Oct. 1, 2012) (No. 11-1520)...............................................1, 10, 11

*Romero v. City of Pomona*,
883 F.2d 1418 (9th Cir. 1989) ...........................................................................................5, 6

*Save Our Valley v. Sound Transit*,
335 F.3d 932 (9th Cir. 2003) .................................................................................................4

*Taniguchi v. Kan Pacific Saipan, Ltd.*,
132 S. Ct. 1997 (2012)....................................................................................................passim

## Statutes

28 U.S.C. § 1920(2) ................................................................................................................... 19

28 U.S.C. § 1920(4) .............................................................................................................passim

28 U.S.C. § 1920(6) ................................................................................................... 1, 9, 10, 13

28 U.S.C. § 1924 ...................................................................................................... 14, 16, 17, 19

Judicial Administration and Technical Amendments Act of 2008,
Pub. L. No. 110-406, 122 Stat. 4291 ....................................................................................5

## Rules

Fed. R. Civ. P. 26(b)(2)(B) ................................................................................................. 2, 13

Fed. R. Civ. P. 26(f)(3)(C) ........................................................................................................3

Fed. R. Civ. P. 34(b)(2)(E) .......................................................................................................2

Fed. R. Civ. P. 54(d) .................................................................................................................4

N.D. Cal. Civil L.R. 54-1(a) ........................................................................................ 15, 17, 19

N.D. Cal. Civil L.R. 54-3(d)(2) ................................................................................................ passim

N.D. Cal. Civil L.R. 54-3(d)(5) ...................................................................................................... 10

N.D. Cal. Civil L.R. 54-4(b) ........................................................................................................... 14

DEFENDANTS' OPPOSITION TO KELORA'S MOTIONS RE: COSTS
Nos. 10-4947-CW-LB, 11-1398-CW-LB, 11-1548-CW-LB

## I.    INTRODUCTION

As the prevailing parties in this action, Defendants are entitled to recover their costs, including their e-discovery costs (which averaged approximately $45,000 per Defendant).  In the Ninth Circuit, the test for whether a disputed cost is recoverable is whether the cost is for "physical preparation" (which is recoverable) or for "intellectual efforts" (which is not recoverable).  *See LG Elecs., Inc. v. Bizcom Elecs., Inc.*, No. 01-1375, slip op. at 7:4–9:4 (N.D. Cal. July 21, 2005) (Wilken, J.), *available at* Ex. P.  The Federal Circuit recently applied Ninth Circuit law to conclude that e-discovery costs ***are*** recoverable under 28 U.S.C. § 1920(4) and N.D. Cal. Civil L.R. 54-3(d)(2).  *See In re Ricoh Co. Patent Litig.*, 661 F.3d 1361, 1365 (Fed. Cir. 2011); *see also Jardin v. DATAllegro, Inc.*, No. 08-1462, 2011 WL 4835742, at *6–*9 (S.D. Cal. Oct. 12, 2011) (similar).

In spite of this law, Kelora takes the remarkable position that many Defendants should not recover ***any*** of their e-discovery costs.  Kelora relies primarily on two cases.  First, Kelora relies on a decision from the Third Circuit, *Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158 (3d Cir. 2012), *cert. denied*, 81 U.S.L.W. 3001 (U.S. Oct. 1, 2012) (No. 11-1520).  But that decision is not binding on this Court, conflicts with decisions from other courts of appeals — including *In re Ricoh* which applied Ninth Circuit law — and Judge Hamilton in this district specifically declined to follow the decision.  Second, Kelora relies on the Supreme Court's decision in *Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S. Ct. 1997 (2012).  But that decision concerned costs for interpreters under 28 U.S.C. § 1920(6), not e-discovery costs under § 1920(4), and thus the decision has little relevance to the issues now before the Court.

As explained in more detail below, the Clerk properly awarded Defendants all of their e-discovery costs, and thus Kelora's motions should be denied.

## II.    FACTUAL BACKGROUND

### A.    Defendants were required to respond to Kelora's many discovery requests while their motion for summary judgment was pending

This was a patent case.  An overview of the patent-in-suit and the extensive litigation in this Court involving the patent-in-suit can be found at the beginning of Defendants' motion for summary judgment.  *See* Case No. 10-4947, ECF No. 94, at 3:12–15:8 (Sept. 15, 2011).

-1-

eBay and Microsoft commenced this litigation on November 2, 2010 — the same day the reexamination certificate for the patent-in-suit issued — with the goal of invalidating the patent as quickly as possible. To that end, eBay and Microsoft proposed a schedule permitting summary judgment to be decided as quickly as possible, *before* extensive discovery costs could be incurred in the case: "[W]e don't want to have this case dragged on. I mean, discovery is expensive." Hr'g Tr. at 37:3–:4 (Mar. 17, 2011) [Case No. 10-4947, ECF No. 167]. Kelora resisted a quick schedule, however, *see id.* at 37:13, and as a result, the motion for summary judgment of invalidity filed by eBay and Microsoft (and all the other defendants, who had joined the case by that time) was not decided until *after* the cutoff for fact discovery on February 3, 2012 — meaning Defendants incurred the *full* cost of complying with Kelora's comprehensive discovery requests before judgment was entered in their favor. *See* Case No. 10-4947, ECF No. 59 at 10:6 (fact discovery cutoff on Feb. 3, 2012); *id.* ECF No. 153 (summary judgment granted on May 21, 2012).

While Defendants' motion for summary judgment was pending, Defendants were required to respond to all of Kelora's discovery requests. Kelora did not make Defendants' lives easy. Kelora propounded over 50 burdensome document requests to each Defendant requiring the production of electronically stored information. *See, e.g.*, Exs. B–C. Under the Federal Rules of Civil Procedure, Defendants were required to produce this electronically stored information to Kelora. *See* Fed. R. Civ. P. 26(b)(2)(B) & 34(b)(2)(E). Kelora never complained that Defendants were producing *too many* documents; to the contrary, Kelora regularly and repeatedly complained that Defendants needed to produce *more* documents, as shown by the numerous motions to compel filed by Kelora. *See, e.g.*, Case No. 10-4947, ECF No. 137 (Kelora's motion to compel production of emails); Case No. 11-1548, ECF No. 405 (Kelora's motion to compel information about unaccused websites); *id.* ECF No. 411 (Kelora's motion to compel financial information before 2010); *id.* ECF No. 437 (Kelora's motion to compel information about subdomains of the accused websites).

After Defendants finally prevailed on their motion for summary judgment of invalidity, judgment was entered in their favor, and that judgment included an award of costs. *See* Amended Judgment (June 5, 2012) [Case No. 10-4947, ECF No. 158]. Accordingly, each Defendant filed a Bill of Costs seeking recovery for (among other things) the e-discovery costs they incurred

responding to Kelora's document requests. The average amount requested by each Defendant for e-discovery costs was approximately $45,000, and the Clerk awarded the full amount requested by each defendant. *See supra* p. iii (identifying all Bills of Costs awarded by the Clerk).

To give some perspective, $45,000 in e-discovery costs is tiny compared to the overall cost of patent litigation: "Patent litigations are among the longest, most time-consuming types of civil actions. . . . [T]he costs of patent litigation are enormous with an average patent case costing upwards of $3 million for each side." *Ohio Willow Wood Co. v. Thermo-Ply, Inc.*, 629 F.3d 1374, 1376–77 (Fed. Cir. 2011) (Moore, J., concurring). Furthermore, as recently recognized by the Federal Circuit Advisory Council, led by former Chief Judge Ware from this district, "Patent cases, in particular, tend to suffer from disproportionally high discovery expenses." Ex. A at 1.

**B.**     <u>The e-discovery costs that are the subject of this motion were incurred producing documents in the format requested by Kelora</u>

At the beginning of this case, as required by Fed. R. Civ. P. 26(f)(3)(C), the parties met and conferred to discuss, among other things, the format for producing electronically stored information. The parties reached the following agreement, which is typical in patent cases:

> The parties agree presumptively to produce non-source code documents in an electronic format to be agreed upon (e.g., TIFF files with a Concordance compatible load file) and to reasonably accommodate one another's requests for OCR and load-file information to allow processing of production documents by the receiving party. Additionally, the parties agree to reasonably accommodate one another's requests for production of certain documents in native format, such as financial information in native Excel format, to facilitate use by each party and their experts.

*See* Joint Case Management Statement at 8:8–:15 (Mar. 10, 2011) [Case No. 10-4947, ECF No. 38]; *see also* Case No. 11-1398, ECF No. 20, at 10 (similar); Case No. 11-1548, ECF No. 250, at 10 (similar).

Producing documents in electronic format (e.g., TIFF files with OCR information so that the files are text-searchable, as was agreed upon by the parties in this case) is a complicated and expensive multi-step process. The Federal Circuit Advisory Council, led by former Chief Judge Ware from this district, summarized the process as follows:

> ***Collection***: Forensically sound (*e.g.*, preserving the document date) collection can require a trained specialist. Costs will include vendor

-3-

fees and/or licensing fees, and media related charges. Inactive data requires restoration and software licensing fees.

*Processing*: Requires use of licensed assessment or review tools (more than 1 tool are often used for this process). Expenses will include data and text extraction, de-duplication, imaging fees, project management time and potential hosting fees. Frequently includes narrowing or broadening the scope of collection based on results.

*Review*: Requires continued hosting and licensing fees. Project management time is necessary for database setup and management, additional keyword filtering/assessment and searching. If human review[1] is involved, this is the largest area of cost.

*Production*: Requires any additional data and image conversion, text extraction and/or appropriate language OCR generation. Tech time will include dealing with problematic files (*e.g.*, Excel). Also requires endorsement and control numbering. Costs will also be incurred for project management/tech time and media related charges.

*Post Production*: Project management and load time for importing productions into production review tool or index. Additional costs for associating native files to records.

Ex. A at 1 n.2.

Defendants complied with Kelora's discovery requests and produced documents in the format requested, which as noted above cost each defendant an average of approximately $45,000. Now that Kelora has lost the case, Kelora argues that Defendants should not recover **any** of these costs, even though it was Kelora who demanded production of these documents.

## III.   **ARGUMENT**

### A.   **The burden is on Kelora to show why costs should not be awarded to Defendants**

As the losing party, Kelora has the burden of showing why costs should **not** be awarded to Defendants: "Rule 54(d) creates a presumption for awarding costs to prevailing parties; the losing party must show why costs should not be awarded." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 944–45 (9th Cir. 2003).

### B.   **E-discovery costs are recoverable under 28 U.S.C. § 1920(4) and N.D. Cal. Civil L.R. 54-3(d)(2)**

---

[1] Defendants had attorneys review documents for privilege and relevance before those documents were produced to Kelora, but Defendants' Bills of Costs did **not** seek recovery for those expenses.

1.      **The Federal Circuit's decision in *In re Ricoh* allowed recovery of e-discovery costs under Ninth Circuit law**

As recently confirmed by the Federal Circuit (in a case arising out of the Northern District of California), e-discovery costs are recoverable under 28 U.S.C. § 1920(4) and N.D. Cal. Civil L.R. 54-3(d)(2):

> The act of producing documents is not so narrowly construed as to cover only printing and Bates-labeling a document. In the era of electronic discovery, courts have held that electronic production of documents can constitute "exemplification" or "making copies" under section 1920(4). Notably, in 2008, Congress amended section 1920(4) by replacing the phrase "copies of papers" with "making copies of *any materials*" Judicial Administration and Technical Amendments Act of 2008, Pub. L. No. 110-406, § 6, 122 Stat. 4291, 4292 (emphasis added), to reflect the idea that "electronically produced information [is] [re]coverable in court costs," 154 Cong. Rec. H10270, H10271 (daily ed. Sept. 27, 2008) (statement of Rep. Zoe Lofgren). Thus, the costs of producing a document electronically can be recoverable under section 1920(4).

*In re Ricoh Co. Patent Litig.*, 661 F.3d 1361, 1365 (Fed. Cir. 2011) (citations omitted).

2.      **In the Ninth Circuit, the relevant test is whether the disputed costs are for "physical preparation" (which is recoverable) or "intellectual efforts" (which is not recoverable)**

As recognized by the Federal Circuit and courts throughout California, the test in the Ninth Circuit for whether a disputed cost is recoverable is whether the cost is for "physical preparation" (which is recoverable) or "intellectual efforts" (which is not recoverable). *See In re Ricoh*, 661 F.3d at 1365 (citing *Romero v. City of Pomona*, 883 F.2d 1418, 1428 (9th Cir. 1989)). Defendants only seek to recover their actual costs for physical preparation, not for any intellectual efforts.

For example, in a recent patent case, this Court was confronted with the question of whether the costs for computer animations should be deemed "physical preparation" (and thus recoverable) or "intellectual efforts" (and thus not recoverable). This Court reviewed the Ninth Circuit cases and found the costs recoverable: "Clearly, the Ninth Circuit allows taxation of the increased costs associated with using modern technology for purposes traditionally permissible under § 1920(4)." *LG Elecs., Inc. v. Bizcom Elecs., Inc.*, No. 01-1375, slip op. at 8:15–:18 (N.D. Cal. July 21, 2005) (Wilken, J.), *available at* Ex. P. This Court reasoned as follows:

-5-

> LGE does not dispute that the computer animation would have been reasonably necessary to assist the jury in understanding the issues at the trial. Despite its reliance on [*Romero v. City of Pomona*, 883 F.2d 1418, 1428 (9th Cir. 1989)], LGE also does not dispute that the graphics professionals had no expertise in the substantive technology issues, but instead relied on the intellectual effort and direction of Compal and its attorneys and witnesses. Therefore, the Court agrees with Compal that the staff time of graphics professionals relates to the physical preparation of demonstrative exhibits rather than the disallowed intellectual effort.

*Id.*, Ex. P at 7:11–:20.

The same reasoning applies in this case: the e-discovery costs at issue were incurred by third-party vendors who had no involvement in the merits of the case and whose only job was to physically prepare and produce documents to Kelora. Defendants' Bills of Costs do not include any of the attorneys' fees incurred for the "intellectual effort" associated with those document productions.

Indeed, the e-discovery costs requested by Defendants are similar to the e-discovery costs found recoverable by the Federal Circuit in *In re Ricoh*. In particular, the Federal Circuit applied the "intellectual efforts" test from the Ninth Circuit and concluded that 28 U.S.C. § 1920(4) and N.D. Cal. Civil L.R. 54-3(d)(2) permitted the recovery of costs for a database created by "Stratify, an electronic discovery company that provides secure document processing, review, production and hosting services." *In re Ricoh*, 661 F.3d at 1365. The Federal Circuit held: "We do not consider any of the Stratify database costs to fall into the unrecoverable category of 'intellectual efforts.'" *Id.*

Similarly, the Southern District of California applied the "intellectual efforts" test from the Ninth Circuit and allowed the recovery of e-discovery costs similar to those requested by Defendants in this case. The court noted that the processes required to properly produce electronically stored information are "highly technical" and substantially different from "the types of services that attorneys or paralegals are trained for or are capable of providing." *Jardin v. DATAllegro, Inc.*, No. 08-1462, 2011 WL 4835742, at *6 (S.D. Cal. Oct. 12, 2011). The court held:

> The distinction between the "physical production" versus "intellectual effort" is that costs associated with physically replicating or producing documents or data are recoverable under § 1920(4), while costs arising out of discovery-related activities tied to strategic, confidentiality, or other types of concerns typically entrusted to lawyers involve intellectual effort and are not recoverable.

*Id.* at *8. Based on this distinction, the court allowed the fees for "project management" by an e-discovery vendor because "the project manager did not review documents or contribute to any strategic decisionmaking; he oversaw the process of converting data to the .TIFF format to prevent inconsistent or duplicative processing." *Id.* at *9. As the court explained, when "a third-party technician is engaged to perform duties limited to technical issues related to the physical production of information, related costs are recoverable under § 1920." *Id.* at *8.

### 3. Costs for copying *all* materials are recoverable, not just the materials *actually produced* to Kelora

Kelora repeatedly argues that "costs are limited to those expenses attributable to the ***actual production*** of discovery documents to the prevailing party's adversary." That position is incorrect. Neither the statute nor the local rule limits recoverable costs to the expenses attributable to the final set of documents ***actually produced*** to the opposing party. *See* 28 U.S.C. § 1920(4) ("Fees for exemplification and the costs of making copies of ***any materials where the copies are necessarily obtained for use in the case***");[2] N.D. Cal. Civil L.R. 54-3(d)(2) ("The cost of reproducing disclosure or formal discovery documents when ***used for any purpose in the case is allowable***.").[3] For this reason, the Ninth Circuit has held, "[S]ection 1920(4) . . . does not specifically require that the copied document be introduced into the record to be an allowable cost." *Haagen-Dazs Co. v. Double Rainbow Gourmet Ice Creams, Inc.*, 920 F.2d 587, 588 (9th Cir. 1990) (per curiam).

Furthermore, Judge Alsup recently rejected the precise argument raised by Kelora in this case:

> The tasks of collecting client documents, reviewing those documents, and determining which documents are relevant are essential — and often costly — parts of investigation and discovery. . . . The reproduction costs defendants incurred in collecting, reviewing, and preparing client documents for production were necessary expenditures made for the purpose of advancing the investigation and discovery phases of the action. As such, they are properly taxable.

> . . . .

---

[2] Unless stated otherwise, all emphasis in quotes throughout this brief has been added.

[3] To the extent the local rule is perceived to be narrower than the statute, the statute governs: "[L]ocal rules cannot render disallowable costs otherwise allowable under section 1920." *In re Ricoh*, 661 F.3d at 1370 n.5.

DEFENDANTS' OPPOSITION TO KELORA'S MOTIONS RE: COSTS
Nos. 10-4947-CW-LB, 11-1398-CW-LB, 11-1548-CW-LB

> . . . . Plaintiffs object to the taxation of reproduction costs incurred "in *anticipation* or contemplation of production," but they cite no controlling authority for the proposition that reproduction costs are recoverable only for documents that "were *actually* produced" . . . .

*Parrish v. Manatt, Phelps & Phillips, LLP*, No. 10-3200, 2011 WL 1362112, at *2, *3 (N.D. Cal. Apr. 11, 2011) (Alsup, J.).[4]

It is worth noting that the prevailing party in the *Parrish* case before Judge Alsup — the Manatt, Phelps law firm — is the same law firm representing Kelora in this case. Thus the arguments made by Kelora's lawyers in this case directly contradict the arguments they successfully made as the prevailing party in the *Parrish* case. *See, e.g.*, Ex. Q at 4:20–6:14 (brief by Manatt, Phelps arguing, "It is immaterial that some of the documents were never produced to plaintiffs.").

**4.** <u>**Kelora requested the format in which documents were produced and thus should not be permitted to complain about the costs associated with the format for those productions**</u>

As discussed above, the parties agreed at the beginning of this case on the format for the production of documents (i.e., TIFF files with OCR information so that the files are text-searchable). *See supra* Part II.B, p. 3. The e-discovery costs incurred by Defendants were necessary to comply

---

[4] The Federal Circuit's later decision in *In re Ricoh* does not conflict with Judge Alsup's decision in *Parrish*. Although *In re Ricoh* limited the prevailing party in that case to recovery of "the costs incurred in preparing a ***single*** copy of the original documents produced for the opposing party where that copy is ***supplied to the opposing party***," 661 F.3d at 1367 (citing a decision from the Fifth Circuit), that portion of the Federal Circuit's decision concerned "document copying costs," *id.*, not e-discovery costs under the 2008 amendments to § 1920, which were discussed earlier in the decision, *see id.* at 1364–66. With respect to e-discovery costs under the 2008 amendments to § 1920, the Federal Circuit did ***not*** limit recovery to the cost of preparing a single copy supplied to the opposing party. *See id.* Furthermore, even before the 2008 amendments, the Ninth Circuit interpreted the phrase "necessarily obtained for use in the case" in 28 U.S.C. § 1920 to allow recovery of ***multiple*** copies (so long as those copies were reasonably necessary for use in the case), consistent with Judge Alsup's reasoning in *Parrish*. *See Alflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175, 177 (9th Cir. 1990) (per curiam) (allowing recovery for ***multiple*** copies of deposition transcripts). To the extent there is a conflict between this portion of the Federal Circuit's decision in *In re Ricoh* (which followed Fifth Circuit law) and the Ninth Circuit's decision in *Alflex*, this Court is required to follow the Ninth Circuit's decision in *Alflex* because Ninth Circuit law governs and *Alflex* was decided before *In re Ricoh*. *See, e.g.*, *Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1317 (Fed. Cir. 2004) (following earlier panel decision because "[t]his court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned in banc"); *In re Complaint of Ross Island Sand & Gravel*, 226 F.3d 1015, 1018 (9th Cir. 2000) (per curiam) ("A three judge panel of this court cannot overrule a prior decision of this court.").

with the format for production specified by Kelora.  *See AmeriPride Servs., Inc. v. Valley Indus. Serv., Inc.*, No. 00-113, 2012 WL 1641749, at *3 (E.D. Cal. May 9, 2012) (allowing $47,691.76 in e-discovery costs because "[i]mporting, coding and OCR (optical character recognition) were necessary to produce the documents as [the other side] demanded").  "It is unfair for [the losing party] to request that [the prevailing party] reproduce documents in a certain manner during discovery and then contest that form of reproduction at the fee motion."  *Lopez v. San Francisco Unified School Dist.*, 385 F. Supp. 2d 981, 1001 (N.D. Cal. 2005) (Illston, J.).  Indeed, the court in *AmeriPride* awarded AmeriPride its e-discovery costs of scanning, importing, coding, and OCR despite contentions that those costs were incurred "so that AmeriPride could more conveniently review the documents prior to, and then again after, the production to [the opposing party]."  *AmeriPride*, 2012 WL 1641749, at *3.

### 5. The Supreme Court's recent decision in *Taniguchi* concerned costs for interpreters under § 1920(6), not e-discovery costs under § 1920(4)

Kelora's brief repeatedly cites to the Supreme Court's recent decision in *Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S. Ct. 1997 (2012).  That decision concerned costs for interpreters under 28 U.S.C. § 1920(6), not e-discovery costs under § 1920(4), and thus the decision has little relevance to the disputed costs in this case.

Kelora points to the Supreme Court's observation that, as a general matter, "costs are limited to relatively minor, incidental expenses."  132 S. Ct. at 2006.  But even "minor" costs can quickly add up, especially in patent cases.  *See, e.g.*, *In re Ricoh Co. Patent Litig.*, No. 03-2289, 2012 WL 1499191, at *6 (N.D. Cal. Apr. 26, 2012) (Ware, C.J.) (awarding $675,154.75 in costs).

Kelora also cites *Taniguchi* for the proposition that "[t]his Court may only tax costs explicitly authorized by Section 1920."  But that is nothing new; it has been true for over 20 years, since at least the Supreme Court's decision in *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987).  To the extent Kelora intends to suggest that recoverable costs are strictly limited to the precise words found in § 1920, that is incorrect.  For example, § 1920 does not specifically refer to *copies* of deposition transcripts, yet not even Kelora disputes that the costs for *copies* of deposition transcripts are recoverable costs (as the Clerk properly found in this case).  *See Alflex Corp. v.*

*Underwriters Labs., Inc.*, 914 F.2d 175, 177 (9th Cir. 1990) (per curiam) (confirming that copies of deposition transcripts are recoverable costs, even after the Supreme Court's decision in *Crawford Fitting*). Similarly, the local rules of this Court make clear that "charts, diagrams, videotapes and other visual aids" are recoverable costs, *see* N.D. Cal. Civil L.R. 54-3(d)(5), even though none of those precise words can be found in § 1920.

Another reason the Supreme Court's decision in *Taniguchi* has little relevance to this case is because it did not consider the 2008 amendments to § 1920(4), which as discussed above were explicitly intended to make e-discovery costs recoverable. *See In re Ricoh*, 661 F.3d at 1365 (discussing 2008 amendments). Again, the Supreme Court's decision in *Taniguchi* concerned costs for interpreters under 28 U.S.C. § 1920(6), not e-discovery costs under § 1920(4).

### 6. <u>The Third Circuit's decision in *Race Tires* is not binding precedent, conflicts with the decisions of other circuits, and has not been followed in this district</u>

Kelora's brief repeatedly cites the Third Circuit's decision in *Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158 (3d Cir. 2012), *cert. denied*, 81 U.S.L.W. 3001 (U.S. Oct. 1, 2012) (No. 11-1520). Kelora argues that "the *Race Tires* Court held that costs made in connection with e-discovery are taxable pursuant to Section 1920(4) only to the extent such costs are for <u>***scanning***</u> or <u>***file format conversion***</u> of <u>***documents actually produced***</u>."

The decision in *Race Tires* was from another circuit and thus is not binding precedent on this Court. *See In re Online DVD Rental Antitrust Litigation*, No. 09-2029, 2012 WL 1414111, at *1 (N.D. Cal. Apr. 20, 2012) (Hamilton, J.) (declining to follow *Race Tires* and holding that "broad construction of section 1920 with respect to electronic discovery production costs — under the facts of this case — is appropriate").

The decision in *Race Tires* also conflicts with the decisions of at least two other circuits. *See In re Ricoh*, 661 F.3d at 1365 (holding that 28 U.S.C. § 1920(4) and N.D. Cal. Civil L.R. 54-3(d)(2) allow recovery of costs for a database created by "Stratify, an electronic discovery company that provides secure document processing, review, production and hosting services"); *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009) (affirming fees for "converting computer data into a readable format in response to plaintiffs' discovery requests"). As between the Third Circuit's decision in

*Race Tires* and the Federal Circuit's decision in *In re Ricoh*, this Court should follow *In re Ricoh*, since it applied the law of the Ninth Circuit and the local rules of this Court.

Indeed, Judge Hamilton in this district has specifically declined to follow *Race Tires*. *See In re Online DVD Rental Antitrust Litigation*, 2012 WL 1414111, at *1. That is not surprising, since the Third Circuit's test for recoverable costs conflicts with the Ninth Circuit's test. In the Ninth Circuit, as discussed above, the relevant test is whether the disputed costs are for "physical preparation" (which is recoverable) or "intellectual efforts" (which is not recoverable). *See supra* Part III.B.2, pp. 5–7. Courts applying Ninth Circuit law (including *In re Ricoh*) have repeatedly held that costs incurred by e-discovery vendors are for "physical preparation" (and thus recoverable), not for "intellectual efforts" (and thus unrecoverable). *See supra* Part III.B.2, pp. 5–7.

Another problem with Kelora's reliance on *Race Tires* is that it apparently only permits recovery of the costs associated with the ***final*** act of copying, which as discussed above is contrary to the language of the statute, the local rule in this district, and Judge Alsup's decision in *Parrish*, which all make clear that ***all*** the costs of copying ***all*** materials are recoverable, not just the cost of copying the final materials ***actually produced*** to the other side. *See supra* Part III.B.3, pp. 7–8. When documents are produced in electronic format, they are copied many times before they are finally produced to the other side. *See generally supra* Part II.B, p. 3 (summarizing steps required to produce documents electronically). Contrary to the Third Circuit's conclusion, the more reasonable interpretation of 28 U.S.C. § 1920(4) and N.D. Cal. Civil L.R. 54-3(d)(2) is that the cost of ***every*** copy is recoverable so long as the copy was reasonably necessary for the case. For example, the first step, "Collection," typically involves making a native copy of the files from an employee's computer. *See supra* Part II.B, p. 3. That copy is obviously necessary and thus should be recoverable. The next step, "Processing," typically involves copying the native file to the TIFF file format, and then copying those TIFF files to a server for review. In most cases (as in this case), the parties agree upon the TIFF format, and thus making those copies is necessary and thus should be recoverable. *See supra* Part III.B.4, p. 8. The "Processing" step may also involve de-duplication and/or keyword searches, where documents are copied and then compared against each other to remove exact duplicates, or against keywords to remove irrelevant documents, thus reducing the cost

-11-

to the producing party and reducing the number of documents the receiving party must review. These copies are all reasonably necessary (since they reduce costs for everyone) and thus should be recoverable. The next step, "Review," typically involves copying the files from the server to an individual attorney's computer so that the attorney can review the document for relevance and privilege. Attorneys are required to protect the attorney-client privilege, and thus copying documents for review is reasonably necessary and thus should be recoverable (although the attorneys' fees for reviewing the document are not recoverable). The next step, "Production," typically involves making a copy of the TIFF images with a Bates number on each image onto some medium for production, such as a harddrive or DVD. The "Production" step may also involve OCR'ing, where the text from the native file is copied and then associated with the TIFF file, to make the TIFF file text-searchable. In most cases (as in this case) the parties agree upon OCR'ing and expect Bates numbering, and thus these copies are reasonably necessary and thus should be recoverable. The final step, "Post-Production," typically involves creating a copy of the final production for the producing party, so that the producing party has a usable copy of what the opposing party received. This is the copy of the documents that the producing party will use for the rest of the case, including at trial. This copy is reasonably necessary for litigating the case and thus should be recoverable. In sum, the Third Circuit's holding that the only recoverable costs are for "scanning" and "file format conversion" is an arbitrary interpretation of the phrase "making copies" in § 1920(4), and ignores that the plain meaning of § 1920(4) covers copies of "any materials where the copies are necessarily obtained for use in the case," not just the final copy of the materials actually produced to the other side.

In the end, Kelora essentially argues that even though *In re Ricoh* and all the cases applying the Ninth Circuit's "intellectual efforts" test support recovery of e-discovery costs, those cases should all be ignored (and *Race Tires* should be followed) because those cases came **before** the Supreme Court's decision in *Taniguchi*. But the only time this Court may ignore a decision by a court of appeals (such as *In re Ricoh*) on the basis of an intervening Supreme Court decision is when the earlier court of appeals decision is "clearly irreconcilable" with the later Supreme Court decision. *See, e.g.*, *Day v. Apoliona*, 496 F.3d 1027, 1031 (9th Cir. 2007) (following earlier court of appeals

DEFENDANTS' OPPOSITION TO KELORA'S MOTIONS RE: COSTS
Nos. 10-4947-CW-LB, 11-1398-CW-LB, 11-1548-CW-LB

decision notwithstanding intervening Supreme Court decision).  As discussed above, the Supreme

Court's decision in *Taniguchi* concerned costs for interpreters under 28 U.S.C. § 1920(6), not e-

discovery costs under § 1920(4), *see supra* Part III.B.5, pp. 9–10, and thus it cannot be said that *In re*

*Ricoh* and all the cases applying the Ninth Circuit's "intellectual efforts" test are "clearly

irreconcilable" with the Supreme Court's decision in *Taniguchi*.  Indeed, contrary to Kelora's theory,

a recent case on e-discovery in California — which was decided **after** the Supreme Court's decision

in *Taniguchi* — continued to follow the Ninth Circuit's "intellectual efforts" test, *see supra* Part

III.B.2, pp. 5–7, and **allowed** the recovery of e-discovery costs:

> [The losing party] propounded 164 separate discovery requests
> seeking electronically stored information from [the prevailing party] or
> requiring [the prevailing party] to process electronically stored
> information.  [The prevailing party] was required to produce this
> electronically stored information under the Federal Rules of Civil
> Procedure unless it could demonstrate that it faced an "undue burden
> or cost." Fed. R. Civ. P. 26(b)(2)(B).  The processes required to
> properly retrieve or convert electronic data so that it may be produced
> in discovery are "highly technical" and substantially different from
> "the types of services that attorneys or paralegals are trained for or are
> capable of providing." *Jardin v. DATAllegro, Inc.*, 08-CV-1462-IEG
> WVG, 2011 WL 4835742, *6 (S.D. Cal. Oct. 12, 2011).  In light of
> these facts, the Court finds that [the prevailing party's] electronic
> document production costs, including fees for hiring professionals and
> purchasing hard drives to transport the electronic files, were not
> accrued merely for the convenience of counsel but were necessarily
> incurred during the case.
>
> Because [the prevailing party] has shown that its electronic
> document production costs were necessarily incurred during the case,
> the Motion is GRANTED as to this cost.

*Imaginal Systematic, LLC v. Leggett & Platt, Inc.*, No. 10-7416, slip op. at 4 (C.D. Cal. July 27,

2012) (citation omitted).

<p style="text-align:center">*    *    *    *    *</p>

For all these reasons, e-discovery costs are recoverable under 28 U.S.C. § 1920(4) and N.D.

Cal. Civil L.R. 54-3(d)(2).

## C.   Taxation of costs is supposed to be a simple, clerical matter and does not require the evidentiary detail suggested by Kelora

Kelora also argues that Defendants have not supplied "sufficient documentation (e.g. detailed

invoices and/or declarations)" to justify recovery of their e-discovery costs.  To the contrary, as

<div style="text-align:center">-13-</div>

explained in more detail below, every Defendant has supported its Bill of Costs with declaration(s) and/or the **actual** invoices from their e-discovery vendor. To the extent Kelora suggests the law requires more detail than this, Kelora is incorrect.

First, in the Ninth Circuit, the burden is generally on the **losing** party to justify the **denial** of costs, not on the prevailing party to justify the award of costs as suggested by Kelora. *See supra* Part III.A, p. 4. This is another example where the arguments made by Kelora's lawyers in this case contradict the arguments they made before Judge Alsup in the *Parrish* case. *See* Ex. Q at 3:10–:18 (brief by Manatt, Phelps arguing, "[T]he losing party bears the burden to demonstrate why the costs should not be awarded.").

Second, a Bill of Costs is supposed to be a simple matter, not a source of satellite litigation over the details of the prevailing party's bills. The relevant statute shows how simple the process is supposed to be:

### §1924. Verification of bill of costs

> Before any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed.

28 U.S.C. § 1924. Notably, the statute does **not** require all of the evidentiary detail suggested by Kelora's motion; the statute merely requires a simple verification, which can be provided by the party's attorney. Indeed, the Supreme Court has noted that "the assessment of costs most often is merely a clerical matter that can be done by the court clerk." *Taniguchi*, 132 S. Ct. at 2006. If the assessment of costs is going to be a clerical matter — as it is supposed to be in this Court, *see* N.D. Cal. Civil L.R. 54-4(b) — then it needs to be a simple matter, not a complex evidentiary question as suggested by Kelora's motion.

It is true that the local rule requires more than what 28 U.S.C. § 1924 requires, but it does not require all the evidentiary detail suggested by Kelora. The local rule states:

### 54-1. Filing of Bill of Costs

**(a) Time for Filing and Content.** No later than 14 days after entry of judgment or order under which costs may be claimed, a prevailing

-14-

party claiming taxable costs must serve and file a bill of costs. The bill must state separately and specifically each item of taxable costs claimed. It must be supported by an affidavit, pursuant to 28 U.S.C. §1924, that the costs are correctly stated, were necessarily incurred, and are allowable by law. ***Appropriate documentation*** *to support each item claimed must be attached to the bill of costs.*

N.D. Cal. Civil L.R. 54-1(a). The phrase "[a]ppropriate documentation" does not suggest the level of detail that Kelora would demand and which if required would result in satellite litigation in every instance, contrary to the goal of creating a simple, clerical procedure. In this case, Defendants generally attached the ***actual*** invoices that they ***actually paid*** to their e-discovery vendors. It is important to remember that when Defendants paid these bills, they did not pay them with the expectation that they would later be able to recover these costs from Kelora; litigation is uncertain and most cases settle before one party prevails. Thus when Defendants paid the bills in question, they scrutinized those bills as any prudent person would. Defendants themselves found these invoices to be "appropriate documentation" for the costs incurred — which is why Defendants paid these bills — and thus it would be unreasonable to interpret the local rule to require more detail than is actually required out in the real world. Furthermore, the phrase "[a]ppropriate documentation" does not necessarily require invoices; a declaration can suffice: "Plaintiff supported her request for the printing costs with an affidavit, but nothing more. There is no explicit requirement that counsel attach invoices, and the Court opts not to require them in this instance." *Chellino v. Kaiser Foundation Health Plan*, No. 07-3019, 2010 WL 583970, at *6 (N.D. Cal. Feb. 16, 2010) (Breyer, J.).

In support of its argument, Kelora does not cite any cases from the Ninth Circuit, but instead cites a case from the Tenth Circuit, *English v. Colorado Dept. of Corrections*, 248 F.3d 1002, 1013 (10th Cir. 2001). In that case, the prevailing party apparently supplied nothing more than a "spreadsheet contain[ing] a list of names of [couriers, a court reporter, and other service providers], the amounts paid, and a blanket assertion that the costs incurred are among those allowed under § 1920." *Id.* at 1013. The Tenth Circuit disallowed these costs on the basis that "[t]he burden is on the prevailing plaintiffs to establish the amount of compensable costs and expenses to which they are entitled. . . . The [prevailing party in this case] makes no attempt to explain how the listed

-15-

expenditures meet the requirements of § 1920 or even to identify the purpose of each expenditure." *Id.* at 1013.

It is difficult to reconcile the Tenth Circuit's suggestion that the prevailing party must "explain how the listed expenditures meet the requirements of § 1920" with the governing statute, 28 U.S.C. § 1924, which merely requires a simple verification of the costs requested. Furthermore, Kelora provides no reason to believe that the Ninth Circuit would follow the Tenth Circuit's reasoning, rather than the explicit language of 28 U.S.C. § 1924, especially given the Ninth Circuit's view that the burden is on the ***losing*** party to justify the ***denial*** of costs. *See supra* Part III.A, p. 4. But even if this Court followed the Tenth Circuit's decision in *English*, that case is distinguishable because Defendants in this case have explained above how e-discovery costs meet the requirements of 28 U.S.C. § 1920(4), *see supra* Part III.B.2, pp. 5–7, and they did not simply attach a spreadsheet tallying various numbers, but instead provided declarations and/or actual invoices to support their Bills of Costs.

Finally, to the extent the Court is concerned about the sufficiency of any particular Defendant's evidentiary support for its Bill of Costs, the Court should not simply disallow ***all*** of that Defendant's e-discovery costs, as requested by Kelora for many Defendants, but instead the Court should exercise its discretion to award what it determines is reasonable under the circumstances. *See El Dorado Irrigation Dist. v. Traylor Bros. Inc.*, No. 03-949, 2007 WL 512428, at *10 (E.D. Cal. Feb. 12, 2007) ("The court cannot say with certainty that all the copies were necessarily obtained for use in the case. The court is confident, however, that given the length and complexity of the case, the number of copies 'necessarily obtained' is not lower than three fourths of the copies billed for."); *see also supra* Parts II.A–B, pp. 1–4 (discussing the complexities of this case).

### D. **Defendant-specific arguments**

#### 1. **eBay**

eBay supported its Bill of Costs with two declarations: one by its e-discovery vendor, *see* Ex. D, and one by its attorney, *see* Ex. E, ¶ 8. eBay's Bill of Costs is larger than the other Defendants' Bills of Costs because "eBay had ***three*** independent websites accused of infringement (ebay.com,

shopping.com, and stubhub.com) . . . so eBay was required to produce many more documents to Kelora" than most other Defendants.  Ex. E, ¶ 8.

Kelora's arguments specific to eBay's Bill of Costs are found at Case No. 10-4947, ECF No. 174, at 7:13–8:17.  Most of Kelora's arguments are addressed in the common sections of this brief above.  *See supra* Parts III.B–C, pp. 4–16.  Kelora also argues that "eBay does not submit any actual invoicing from its e-discovery vendor," but there is no requirement for actual invoices:  "Plaintiff supported her request for the printing costs with an affidavit, but nothing more.  There is no explicit requirement that counsel attach invoices, and the Court opts not to require them in this instance." *Chellino v. Kaiser Foundation Health Plan*, No. 07-3019, 2010 WL 583970, at *6 (N.D. Cal. Feb. 16, 2010) (Breyer, J.).

Kelora argues that the declaration by eBay's attorney (Ex. E, ¶ 8) lacks sufficient detail.  But that declaration provides the detail required by 28 U.S.C. § 1924, and to the extent more detail is required, that detail is provided by the declaration from eBay's e-discovery vendor (Ex. D).  Kelora argues that the declaration by eBay's e-discovery vendor "does not sufficiently specify that the costs listed are taxable."  To the contrary, the declaration by eBay's e-discovery vendor provides "a breakdown of our specific service activities relevant to the exemplification of documents deemed necessary by Kelora for use in this litigation."  Ex. D, ¶ 4.  For each category of costs, the declaration explains how much eBay paid and why.  For example, eBay paid $44,000.00 for "forensically sound copying tools to acquire eBay data and preserve eBay email and other documents to create official certified copies of [all the] potentially responsive documents."  *Id.*  This is more detail than required by 28 U.S.C. § 1924 or N.D. Cal. Civil L.R. 54-1(a).  *See supra* Part III.C, pp. 13–16.

### 2.  **Microsoft**

Microsoft initially supported its Bill of Costs with a declaration from its attorney attaching the actual invoices from Microsoft's e-discovery vendor.  *See* Ex. E.  In addition, as part of this

brief,[5] Microsoft has supplied an additional declaration from the paralegal working with Microsoft's attorneys. *See* Ex. F.

Kelora's arguments specific to Microsoft's Bill of Costs are found at Case No. 10-4947, ECF No. 173, at 7:17–8:11. Most of Kelora's arguments are addressed in the common sections of this brief above. *See supra* Parts III.B–C, pp. 4–16. Kelora argues that the invoices and attorney declaration supplied by Microsoft lack sufficient detail. To the contrary, the invoices supplied by Microsoft are the ***actual*** invoices that it ***actually*** paid for e-discovery, and thus those invoices are "[a]ppropriate documentation" to support Microsoft's requested costs. *See supra* Part III.C, pp. 13–16. In addition, Microsoft has provided a second declaration showing that its costs averaged a mere 11 cents/page, *see* Ex. E, ¶ 8; Ex. F, ¶ 4 — much lower than typical for e-discovery costs — which is a separate and independent basis for upholding the full amount taxed by the Clerk, regardless of the alleged lack of detail provided by the invoices and attorney declaration: "'[N]umerous' courts have 'endorsed rates of at least twelve cents . . . a copy as reasonable.'" *In re Ricoh Co. Patent Litig.*, No. 03-2289, 2012 WL 1499191, at *6 n.15 (N.D. Cal. Apr. 26, 2012) (Ware, C.J.).

### 3. Cabela's

Cabela's supported its Bill of Costs with a declaration from its attorney, declarations from its litigation support specialists, and actual invoices. *See* Ex. G. Kelora's arguments specific to Cabela's Bill of Costs are found at Case No. 11-1398, ECF No. 155, at 10:16–11:26. Most of Kelora's arguments are addressed in the common sections of this brief above. *See supra* Parts III.B–C, pp. 4–16.

To the extent Kelora argues that the declarations supplied by Cabela's do not provide sufficient detail, these arguments fail. The declarations by Cabela's explain how much Cabela's paid and why. For example, Cabela's paid $16,686.45 for "costs for reproducing, copying and other document fees necessarily incurred during the course of this case, including imaging and converting

---

[5] As noted by Kelora, "This Court reviews *de novo* the Clerk's Costs Order." Mem. at 4:8 [Case No. 10-4947, ECF No. 173] (citing *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449 (3d Cir. 2000)). As a result, this Court has the power to consider additional facts not presented to the Clerk. *See In re Paoli*, 221 F.3d at 453 ("A district court reviewing a clerk's taxation of costs has the power to consider such evidence.").

DEFENDANTS' OPPOSITION TO KELORA'S MOTIONS RE: COSTS
Nos. 10-4947-CW-LB, 11-1398-CW-LB, 11-1548-CW-LB

electronic documents for reproducing disclosure or formal discovery documents to Kelora." Ex. G,

¶ 8. Cabela's also provided declarations from its litigation support specialists detailing the time they

spent "processing and converting files received from Cabela's to be produced in discovery to load

into the software program Summation for reviewing and processing and converting into production

format." *Id.* at Ex. E-1. This is more detail than required by 28 U.S.C. § 1924 or N.D. Cal. Civil

L.R. 54-1(a). *See supra* Part III.C, pp. 13–16.

Kelora also objects to the taxation of $222 for hearing transcripts and $6,107.91 for

deposition costs. Kelora concedes that the Clerk's Costs Order disallowed $2,568.56 for hearing

transcript costs and/or deposition costs sought under Section 1920(2), but Kelora complains that the

Clerk did not specify which costs were granted or denied. It is apparent from the Clerk's actions and

explanations in the related cases that the Clerk disallowed hearing transcripts and "extras" for

depositions just as the Clerk did in the related matters. Accordingly, Kelora's concerns have already

been taken into account and addressed by the Clerk.

Finally, regarding the issue of videotaped depositions, eBay/Microsoft and Kelora have

already briefed this issue (*see* Case No. 10-4947, ECF Nos. 175, 178, 179) and so in the interest of

efficiency, Cabela's agrees to be bound by whatever ruling is applied to eBay/Microsoft with respect

to videotaped depositions.

### 4. Dell

Dell initially supported its Bill of Costs with a declaration from its attorney attaching the

actual invoices from Dell's e-discovery vendor. *See* Ex. H. In addition, as part of this brief,[6] Dell

has supplied an additional declaration from the paralegal working with Dell's attorneys. *See* Ex. I.

Kelora's arguments specific to Dell's Bill of Costs are found at Case No. 11-1548, ECF No.

518, at 7:13–8:5. Most of Kelora's arguments are addressed in the common sections of this brief

above. *See supra* Parts III.B–C, pp. 4–16. Kelora also argues that the invoices and attorney

declaration supplied by Dell lack sufficient detail. To the contrary, the invoices supplied by Dell are

---

[6] This Court has the power to consider additional facts not presented to the Clerk. *See supra* p. 18, note 5.

the **actual** invoices that it **actually** paid for e-discovery, and thus those invoices are "[a]ppropriate documentation" to support Dell's requested costs. *See supra* Part III.C, pp. 13–16. In addition, Dell has provided a second declaration showing that its costs averaged a mere 11 cents/page, *see* Ex. H, ¶ 7; Ex. I, ¶ 4 — much lower than typical for e-discovery costs — which is a separate and independent basis for upholding the full amount taxed by the Clerk, regardless of the alleged lack of detail provided by the invoices and attorney declaration. *See supra* p. 18 (citing *In re Ricoh*, 2012 WL 1499191, at *6 n.15).

### 5. Newegg

As a threshold matter, it has come to Newegg's undersigned counsel's attention in the course of preparing this opposition that the disputed invoice appearing at Case No. 11-1548, ECF No. 488-1, at 35 (Invoice No. 115370 in the amount of $225.20), although on its face bearing The Webb Law Firm's reference number associated with this case (5188-103760) and thus ostensibly pertaining to this case, was in fact an invoice paid in connection with another matter. Having now recognized this typographical error on the invoice, Newegg concedes that the associated costs of $225.20 previously taxed against Kelora should not have been taxed. The following arguments address only the remaining disputed invoices.

In support of its Bill of Costs (ECF No. 488), Newegg submitted various invoices from its e-discovery vendors pertaining to document production in this case, along with the declaration of Kent E. Baldauf, Jr. (the "Baldauf Declaration"), Newegg's lead counsel, who attested that "Exhibit D is an itemization and true and correct copies of invoices demonstrating total payments in the amount of $17,496.49 for the cost of reproducing disclosure or formal discovery documents used for any purpose in the case," that the costs "have been necessarily incurred in this action, and that the services for which fees have been charged were actually and necessarily performed." Ex. J, ¶¶ 2, 6.

Kelora now disputes the amounts listed in various invoices, as well as the Baldauf Declaration, for being insufficiently specific to show that the invoices reflect costs for "scanning or file format conversion of documents actually produced." ECF No. 520, at 6. As discussed in detail above, Defendants dispute Kelora's interpretation of the applicable case law that would so severely limit recoverable e-discovery costs. Newegg's e-discovery costs are all recoverable, and are a far

cry from the kinds of "intellectual efforts" that the case law uniformly seeks to exclude from Section 1920(4).

Most of the disputed invoices expressly show on their faces that the work reflected in the invoices involved converting documents into the parties' agreed format for production: "electronic image redaction," "document prep," "image OCR," and "CD creation." Ex. J (Invoice Nos. 1149950, 1150034, 1150380, 1152241, 1152729). The invoices that contain these format conversion descriptions also plainly reflect that the documents being processed were for Newegg's actual production of documents in this case to Kelora, referring to the sequential "image endorse[ment]" or "branding" (i.e., bates numbering) with "NEGG___" across several volumes of compact discs. *Id.* Although Kelora attempts to carve out these invoices (or portions thereof) from Newegg's necessarily incurred costs, the invoices themselves show that they directly relate to preparation and production of documents to Kelora in the form Kelora requested. These costs are taxable. *See Ricoh*, 661 F.3d at 1365–66.

The remaining disputed invoices fall under one of two categories. The first category of invoices reflects e-discovery costs necessarily incurred to convert documents electronically produced by Kelora in a format which was incompatible with Newegg's document management system into a format usable and reviewable by Newegg's counsel—i.e., conversion of Concordance load files (compatible with Kelora's system) into Summation load files (compatible with Newegg's system). Most invoices in this first category expressly refer to conversion of various volumes of document production from Kelora, e.g., "KS001." Ex. J (Invoice Nos. 1149122, 1152241, 1152355, 1153773). These costs were clearly incurred to address "technical issues related to the physical production of information," and are taxable. *Jardin*, 2011 WL 4835742, at *7–*8. The second category reflects e-discovery costs necessarily incurred to convert documents electronically gathered by Newegg into a format suitable for subsequent review and production by Newegg's counsel. The invoice in this category shows on its face that the costs were required to process and convert Newegg's electronically stored documents from their native formats into the "TIFF" format agreed to by the parties. Ex. J (Invoice No. LA002081.01). This format conversion, as a prerequisite to proper

document production, was a necessary and taxable expense.  *See AmeriPride*, 2012 WL 1641749, at *3.

### 6. Amazon, Audible, Zappos

The Amazon Defendants supported their Bill of Costs with a declaration from their attorney attaching the actual invoices from their e-discovery vendor.  *See* Ex. K.  The Amazon Defendants' Bill of Costs is larger than most other Defendants' Bills of Costs because they collectively produced documents for **four** independent websites (www.amazon.com, www.endless.com, www.audible.com, and www.zappos.com).  *See* Case No. 11-1548, ECF No. 405.

Kelora's arguments specific to the Amazon Defendants' Bill of Costs are found at Case No. 11-1548, ECF No. 517, at 7:13–8:11.  Most of Kelora's arguments are addressed in the common sections of this Opposition explaining why e-discovery costs are recoverable, including any costs associated with documents that ultimately were not actually produced to Kelora (*see supra* Part III.B.3, pp. 7–8), costs (e.g., for "TIFF Conversion" and "Data Management") necessary to comply with Kelora's requested document production format (*see supra* Part II.B, pp. 3–4; Part III.B.4, pp. 8–9), and costs (e.g., for "Project Management" and "Quality Control") incurred by e-discovery vendors for "physical preparation" (*see supra* Part III.B.2, pp. 5–7).

Kelora also argues that the invoices and attorney declaration supplied by the Amazon Defendants lack sufficient detail.  To the contrary, the invoices supplied by the Amazon Defendants are the **actual** invoices that they **actually** paid for e-discovery, and thus those invoices are "[a]ppropriate documentation" to support the Amazon Defendants' requested costs.  *See supra* Part III.C, pp. 13–16.

Moreover, the Amazon Defendants submitted several invoices that include line items for specific costs that Kelora does not specifically dispute, but nevertheless, requests the Court to disallow in their entirety.  For example, the 18271, 12/31/2011 Invoice in the amount of $29,466.45 and the 18890, 1/31/2012 Invoice in the amount of $12,915.71 include line items for costs relating to "electronic bates numbering," "CDs Burned – Production," "Edata Conversion to TIFF," and "Data Management – Production."  *See* Ex. K.  It is improper for Kelora to request disallowance of such costs in their entirety, when even Kelora does not dispute such costs.  *See* Case No. 11-1548, ECF

No. 517, at 7:13–8:4.

### 7. Costco

Costco supported its Bill of Costs with a declaration from its attorney attaching the actual invoices from its e-discovery vendor. *See* Ex. L. Kelora's arguments specific to Costco's Bill of Costs are found at Case No. 11-1548, ECF No. 516, at 7:13–8:21. Most of Kelora's arguments are addressed in the common sections of this Opposition explaining why e-discovery costs are recoverable, including any costs associated with documents that ultimately were not actually produced to Kelora (*see supra* Part III.B.3, pp. 7–8), costs (e.g., for "Process Data – Output (Images)") necessary to comply with Kelora's requested document production format (*see supra* Part II.B, pp. 3–4; Part III.B.4, pp. 8–9), and costs (e.g., for "deduplication," an automated process for eliminating of redundant data) incurred by e-discovery vendors for "physical preparation" (*see supra* Part III.B.2, pp. 5–7).

Kelora also argues that the invoices and attorney declaration supplied by Costco lack sufficient detail. To the contrary, the invoices supplied by Costco are the ***actual*** invoices that it ***actually*** paid for e-discovery, and thus those invoices are "[a]ppropriate documentation" to support Costco's requested costs. *See supra* Part III.C, pp. 13–16. Moreover, Costco submitted several invoices that include line items for specific costs that Kelora does not specifically dispute, but nevertheless, requests the Court to disallow in their entirety. For example, the 1111021 Invoice includes line items for "TIFF Conversion and Endorse Convert 2 GBs" and "Native Production Export." *See* Ex. L. Further, invoices 1201021, 1202023, 1203019, and 1204020 clearly itemize tasks performed by a third-party technician engaged to perform duties limited to technical issues, which provide a basis for recovery under § 1920. *See supra* Part III.B.2, pp. 5–7. It is improper for Kelora to request disallowance of such costs in their entirety, when even Kelora does not dispute such costs. *See* Case No. 11-1548, ECF No. 516, at 7:16–8:14.

### 8. HP

HP supported its Bill of Costs with a declaration from its attorney attaching the actual invoices from HP's e-discovery vendor. *See* Ex. M. HP's Bill of Costs is larger than most other Defendants' Bills of Costs because Kelora sought discovery for multiple independent HP websites

-23-

(see Case No. 11-1548, ECF No. 437).

Kelora's arguments specific to HP's Bill of Costs are found at Case No. 11-1548, ECF No. 519, at 7:13–8:21.  Most of Kelora's arguments are addressed in the common sections of this Opposition explaining why e-discovery costs are recoverable, including any costs associated with documents that ultimately were not actually produced to Kelora (see supra Part III.B.3, pp. 7–8), costs (e.g., for "Load File Preparation" and "Electronic Document Conversion") necessary to comply with Kelora's requested document production format (see supra Part II.B, pp. 3–4; Part III.B.4, pp. 8–9), and costs (e.g., for "Data Processing") incurred by e-discovery vendors for "physical preparation" (see supra Part III.B.2, pp. 5–7).

Kelora also argues that the invoices and attorney declaration supplied by HP lack sufficient detail.  To the contrary, the invoices supplied by HP are the *actual* invoices that it *actually* paid for e-discovery, and thus those invoices are "[a]ppropriate documentation" to support HP's requested costs.  *See supra* Part III.C, pp. 13–16.

Moreover, HP submitted several invoices that include line items for specific costs that Kelora does not specifically dispute, but nevertheless, requests the Court to disallow in their entirety.  For example, the 21109003 Invoice includes a line item for "Production Data Set Processing."  *See* Ex. M.  It is improper for Kelora to request disallowance of such costs in their entirety, when even Kelora does not dispute such costs.  *See* Case No. 11-1548, ECF No. 519, at 7:16–8:14.

### 9.  Office Depot

Office Depot supported its Bill of Costs with a declaration from its attorney attaching the actual invoices from Office Depot's e-discovery vendor.  *See* Ex. N.  Kelora's arguments specific to Office Depot's Bill of Costs are found at Case No. 11-1548, ECF No. 521, at 7:17–8:24.  Most of Kelora's arguments are addressed in the common sections of this Opposition explaining why e-discovery costs are recoverable, including any costs associated with documents that ultimately were not actually produced to Kelora (see supra Part III.B.3, pp. 7–8), costs (e.g., for "One Time Data Loading") necessary to comply with Kelora's requested document production format (see supra Part II.B, pp. 3–4; Part III.B.4, pp. 8–9), and costs (e.g., for "Data Processing") incurred by e-discovery vendors for "physical preparation" (see supra Part III.B.2, pp. 5–7).

Kelora also argues that the invoices and attorney declaration supplied by Office Depot lack sufficient detail. To the contrary, the invoices supplied by Office Depot are the ***actual*** invoices that it ***actually*** paid for e-discovery, and thus those invoices are "[a]ppropriate documentation" to support Office Depot's requested costs. *See supra* Part III.C, pp. 13–16.

Moreover, Office Depot submitted several invoices that include line items for specific costs that Kelora does not specifically dispute, but nevertheless, requests the Court to disallow in their entirety. For example, the 21108071 Invoice includes a line item for "Convert tagged documents to TIFF images." Ex. N. It is improper for Kelora to request disallowance of such costs in their entirety, when even Kelora does not dispute such costs. *See* Case No. 11-1548, ECF No. 521, at 7:20–8:17.

### 10. <u>Target</u>

Target supported its Bill of Costs with a declaration from its attorney attaching the actual invoices from Target's e-discovery vendor. *See* Ex. O. Kelora's arguments specific to Target's Bill of Costs are found at Case No. 11-1548, ECF No. 515, at 7:16–8:11. Most of Kelora's arguments are addressed in the common sections of this Opposition explaining why e-discovery costs are recoverable, including any costs associated with documents that ultimately were not actually produced to Kelora (*see supra* Part III.B.3, pp. 7–8), costs (e.g., for "Process Data – Output (Images)") necessary to comply with Kelora's requested document production format (*see supra* Part II.B, pp. 3–4; Part III.B.4, pp. 8–9), and costs (e.g., for "deduplication") incurred by e-discovery vendors for "physical preparation" (*see supra* Part III.B.2, pp. 5–7). Kelora also argues that the invoices and attorney declaration supplied by Target lack sufficient detail. To the contrary, the invoices supplied by Target are the ***actual*** invoices that it ***actually*** paid for e-discovery, and thus those invoices are "[a]ppropriate documentation" to support Target's requested costs. *See supra* Part III.C, pp. 13–16.

## IV. <u>CONCLUSION</u>

For all of these reasons, Kelora's motions to review the Clerk's taxation of costs should be DENIED, with the exception that Newegg concedes that the costs taxed in its favor should be reduced by $225.20, as set forth in the proposed order.

-25-

DEFENDANTS' OPPOSITION TO KELORA'S MOTIONS RE: COSTS
Nos. 10-4947-CW-LB, 11-1398-CW-LB, 11-1548-CW-LB

Dated:  October 24, 2012                    By:  /s/ Richard A. Cederoth
                                                 _____

                                            David T. Pritikin (*pro hac vice*)
                                                <dpritikin@sidley.com>
                                            Richard A. Cederoth (*pro hac vice*)
                                                <rcederoth@sidley.com>
                                            SIDLEY AUSTIN LLP
                                            One South Dearborn Street
                                            Chicago, Illinois  60603
                                            Telephone:    (312) 853-7000
                                            Facsimile:    (312) 853-7036

                                            Sandra S. Fujiyama (Bar No. 198125)
                                                <sfujiyama@sidley.com>
                                            Theodore W. Chandler (Bar No. 219456)
                                                <tchandler@sidley.com>
                                            SIDLEY AUSTIN LLP
                                            555 West Fifth Street, Suite 4000
                                            Los Angeles, California  90013
                                            Telephone:    (213) 896-6000
                                            Facsimile:    (213) 896-6600

                                            <Kelora-Microsoft-eBay@sidley.com>

                                            *Counsel for Plaintiff and Counterclaim-*
                                            *Defendant eBay Inc.*

By: /s/ Richard A. Cederoth

David T. Pritikin (*pro hac vice*)
&lt;dpritikin@sidley.com&gt;
Richard A. Cederoth (*pro hac vice*)
&lt;rcederoth@sidley.com&gt;
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

Sandra S. Fujiyama (Bar No. 198125)
&lt;sfujiyama@sidley.com&gt;
Theodore W. Chandler (Bar No. 219456)
&lt;tchandler@sidley.com&gt;
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

&lt;Kelora-Microsoft-eBay@sidley.com&gt;

David E. Killough (Bar No. 110719)
&lt;davkill@microsoft.com&gt;
MICROSOFT CORPORATION
One Microsoft Way, 8/2076
Redmond, Washington 98052
Telephone: (425) 703-8865
Facsimile: (425) 869-1327

*Counsel for Plaintiff and Counterclaim-Defendant Microsoft Corporation*

1

By:  /s/ Gregory P. Sitrick
_____

2

Gregory P. Sitrick (*pro hac vice*)
  <<gregory.sitrick@quarles.com>>

3

QUARLES & BRADY LLP
One Renaissance Square

4

Two North Central Avenue

5

Phoenix, Arizona  85004
Telephone:    (602) 229-5200

6

Facsimile:     (602) 420-5198

7

Jeffrey L. Fillerup (Bar No. 120543)
  <<jfillerup@mckennalong.com>>

8

MCKENNA LONG & ALDRIDGE LLP

9

Rincon Center II
121 Spear Street, Suite 200

10

San Francisco, California  94105
Telephone:    (415) 356-4600

11

Facsimile:     (415) 356-4610

12

*Attorneys for Plaintiff and Counterclaim-Defendant Cabela's Inc.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: /s/ Richard S. Zembek

Dan D. Davison (*pro hac vice*)
    <ddavison@fulbright.com>
Robert L. Greeson (*pro hac vice*)
    <rgreeson@fulbright.com>
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas  75201
Telephone:    (214) 855-8000
Facsimile:     (214) 855-8200

Richard S. Zembek (*pro hac vice*)
    <rzembek@fulbright.com>
Daniel S. Leventhal (*pro hac vice*)
    <dleventhal@fulbright.com>
FULBRIGHT & JAWORSKI L.L.P.
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas  77010
Telephone:    (713) 651-5151
Facsimile:     (713) 651-5246

Gilbert A. Greene (*pro hac vice*)
    <ggreene@fulbright.com>
FULBRIGHT & JAWORSKI L.L.P.
600 Congress Avenue, Suite 2400
Austin, Texas  78701
Telephone:    (512) 474-5201
Facsimile:     (512) 536-4598

John A. O'Malley (Bar No. 101181)
    <jomalley@fulbright.com>
Aaron D. Gopen (Bar No. 268451)
    <agopen@fulbright.com>
FULBRIGHT & JAWORSKI L.L.P.
555 South Flower Street, 41st Floor
Los Angeles, California  90071
Telephone:    (213) 892-9200
Facsimile:     (213) 892-9494

*Attorneys for Defendants and
Counterclaim-Plaintiffs Target
Corporation; Amazon.com, Inc.; Office
Depot, Inc.; Costco Wholesale
Corporation; Hewlett-Packard Company;
Audible, Inc.; and Zappos.com, Inc.*

By: /s/ Joseph A. Micallef

Joseph A. Micallef (DC Bar No. 443679)
   <jmicallef@sidley.com>
Michael R. Franzinger (Bar No. 222155)
   <mfranzinger@sidley.com>
Scott M. Border (*pro hac vice*)
   <sborder@sidley.com>
Wonjoo Suh (Bar No. 269500)
   <wsuh@sidley.com>
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
Telephone:    (202) 736-8000
Facsimile:    (202) 736-8711

Theodore W. Chandler (Bar No. 219456)
   <tchandler@sidley.com>
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone:    (213) 896-6000
Facsimile:    (213) 896-6600

Kimball R. Anderson (*pro hac vice*)
   <kanderson@winston.com>
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Telephone:    (312) 558-5600
Facsimile:    (312) 558-5700

Howard I. Shin (*pro hac vice*)
   <hshin@winston.com>
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Telephone:    (212) 294-6700
Facsimile:    (212) 294-4700

David S. Bloch (State Bar No. 184530)
   <dbloch@winston.com>
WINSTON & STRAWN LLP
101 California Street
San Francisco, California 94111
Telephone:    (415) 591-1000
Facsimile:    (415) 591-1400

*Attorneys for Defendant and Counterclaim-
Plaintiff Dell, Inc.*

By: /s/ Kent E. Baldauf, Jr.

Kent E. Baldauf, Jr. (*pro hac vice*)
<kbaldaufjr@webblaw.com>
Bryan P. Clark (*pro hac vice*)
<bclark@webblaw.com>
THE WEBB LAW FIRM
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, Pennsylvania 15222
Telephone:     (412) 471-8815
Facsimile:     (412) 471-4094

Phillip F. Shinn (State Bar No. 112051)
<pshinn@foxrothschild.com>
FOX ROTHSCHILD LLP
235 Pine Street, Suite 1500
San Francisco, California  94104
Telephone:     (415) 364-5558
Facsimile:     (415) 391-4436

*Attorneys for Defendant and Counterclaim-Plaintiff Newegg Inc.*

## SIGNATURE ATTESTATION

Pursuant to General Order No. 45(X)(B), I hereby certify that concurrence in the filing of this document has been obtained from each of the other signatories shown above.


_____/s/ Theodore W. Chandler_____

DEFENDANTS' OPPOSITION TO KELORA'S MOTIONS RE: COSTS
Nos. 10-4947-CW-LB, 11-1398-CW-LB, 11-1548-CW-LB

Ex. A:    Model E-Discovery Order adopted by the Federal Circuit Advisory Council (2011), *available at* <http://www.cafc.uscourts.gov/the-court/advisory-council.html>

Ex. B:    Kelora's Requests for Production Nos. 1–93 to eBay (Apr. 25 to May 13, 2011)

Ex. C:    Kelora's Requests for Production Nos. 1–53 to Dell (May 20, 2011)

Ex. D:    *eBay*:  Declaration of Bill Gallivan in support of eBay's Bill of Costs (June 6, 2012), *available at* Chandler Decl. Ex. E-1 (June 6, 2012) [Case No. 10-4947, ECF No. 161 at Pages 115–17]

Ex. E:    *eBay/Microsoft*:  Excerpts from the Declaration of Theodore W. Chandler in support of eBay and Microsoft's Bills of Costs (June 6, 2012) [Case No. 10-4947, ECF No. 161]

Ex. F:    *Microsoft*:  Declaration of Peter Uhlenhake in support of Microsoft's Bill of Costs (Aug. 6, 2012)

Ex. G:    *Cabela's*:  Declaration of Gregory P. Sitrick in support of Cabela's Bill of Costs (Aug. 13, 2012) [Case No. 11-1398, ECF Nos. 142–49]

Ex. H:    *Dell*:  Excerpts from the Declaration of Wonjoo Suh in support of Dell's Bill of Costs (June 6, 2012) [Case No. 11-1548, ECF No. 487]

Ex. I:    *Dell*:  Declaration of Peter Uhlenhake in support of Dell's Bill of Costs (Aug. 6, 2012)

Ex. J:    *Newegg*:  Excerpts from the Declaration of Kent E. Baldauf, Jr. in support of Newegg's Bill of Costs (June 6, 2012) [Case No. 11-1548, ECF No. 488]

Ex. K:    *Amazon, Audible, Zappos*:  Excerpts from the Declaration of Dan D. Davison in support of Amazon.com, Audible.com, and Zappos.com's Bills of Costs (June 6, 2012) [Case No. 11-1548, ECF No. 489]

Ex. L:    *Costco*:  Excerpts from the Declaration of Dan D. Davison in support of Costco's Bill of Costs (June 6, 2012) [Case No. 11-1548, ECF No. 490]

Ex. M:    *HP*:  Excerpts from the Declaration of Dan D. Davison in support of HP's Bill of Costs (June 6, 2012) [Case No. 11-1548, ECF No. 491]

Ex. N:    *Office Depot*:  Excerpts from the Declaration of Dan D. Davison in support of Office Depot's Bill of Costs (June 6, 2012) [Case No. 11-1548, ECF No. 492]

Ex. O:    *Target*:  Excerpts from the Declaration of Dan D. Davison in support of Target's Bill of Costs (June 6, 2012) [Case No. 11-1548, ECF No. 493]

Ex. P:    Order on Costs in *LG Elecs., Inc. v. Bizcom Elecs., Inc.*, No. 01-1375, ECF No. 968 (N.D. Cal. July 21, 2005) (Wilken, J.)

Ex. Q:    Brief of Manatt, Phelps & Phillips, LLP (counsel for Kelora in this case) in support of its Bill of Costs in *Parrish v. Manatt, Phelps & Phillips, LLP*, No. 10-3200, ECF No. 97 (N.D. Cal. Mar. 24, 2011)